1  JEROME SCHREIBSTEIN (SBN: 154051)
   LAW OFFICE OF JEROME SCHREIBSTEIN
2  Embarcadero Center West
   275 Battery Street, Eighteenth Floor
3  San Francisco, CA 94111
   Telephone: (415) 875-3355
4  Facsimile: (415) 358-9885

5  Attorneys for Defendants
   BAYER HEALTHCARE LLC, BAYER
6  CORPORATION AND DAVID PANVELLE

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10

11 DONNIE JONES,                     )    CASE NO. C08-02219 SC
                                     )
12         Plaintiff,                )    **CERTIFICATE OF SERVICE OF**
                                     )    **NOTICE TO ADVERSE PARTY OF**
13         vs.                       )    **REMOVAL TO FEDERAL COURT**
                                     )
14 BAYER HEALTHCARE LLC, BAYER       )
   CORPORATION, DAVID PANVELLE, DOES )
15 1-50, inclusive,                  )
                                     )
16         Defendants.               )
                                     )
17

18     I, Molly Zahner, certify and declare as follows:

19         1.    I am over the age of 18 years and not a party to this action.

20         2.    My business address is 275 Battery Street, 20th Floor, San Francisco, California

21 94111, which is located in the city, county and state where the service described below took

22 place.

23         3.    On April 30, 2008, I caused to be sent via overnite delivery to counsel for plaintiff

24 Donnie Jones, the adverse party, Andrew W. Shalaby, Esq., 7525 Levistan Avenue, El Cerrito,

25 California 94530, a copy of the Notice to Plaintiff and to the Clerk of the Alameda County

26 Superior Court of Removal of Action to Federal Court, and the papers associated therewith, a

27 copy of which is attached to this Certificate.

28

LAW OFFICE OF JEROME SCHREIBSTEIN
ATTORNEYS AT LAW
EMBARCADERO CENTER WEST
275 BATTERY STREET, TWENTIETH FLOOR
SAN FRANCISCO, CA 94111
(415) 875-3355

4.    In connection with the removal of the within Action, the United States District Court issued to the removing defendants the following materials: (a) "U.S. District Court – ECF Registration Information Handout," (b) Order Setting Initial Case Management Conference and ADR Deadlines, (c) Notice of Availability of Magistrate Judge to Exercise Jurisdiction, and (d) "Welcome to the U.S. District Court, San Francisco . . .," a copy of which have been served on Andrew W. Shalaby, Esq., 7525 Levistan Avenue, El Cerrito, California 94530 on May 1, 2008 via U.S. Mail.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on May 1, 2008 in San Francisco, California.

Molly Zahner

LAW OFFICE OF JEROME SCHREIBSTEIN
ATTORNEYS AT LAW
EMBARCADERO CENTER WEST
275 BATTERY STREET, TWENTIETH FLOOR
SAN FRANCISCO, CA 94111
(415) 875-3355

CERTIFICATE OF SERVICE OF NOTICE TO ADVERSE PARTY OF REMOVAL TO FEDERAL COURT; CASE NO. C08-02219 SC

1  JEROME SCHREIBSTEIN (SBN: 154051)
LAW OFFICE OF JEROME SCHREIBSTEIN
2  Embarcadero Center West
275 Battery Street, Eighteenth Floor
3  San Francisco, CA 94111
Telephone: (415) 875-3355
4  Facsimile: (415) 358-9885

5  Attorneys for Defendants
BAYER HEALTHCARE LLC, BAYER
6  CORPORATION AND DAVID PANVELLE

7

8  **SUPERIOR COURT OF CALIFORNIA**

9  **COUNTY OF ALAMEDA**

10

11  DONNIE JONES,                              CASE NO. RG 08380328

12          Plaintiff,                    **NOTICE TO PLAINTIFF AND TO THE**
                                          **CLERK OF THE ALAMEDA COUNTY**
13      vs.                               **SUPERIOR COURT OF REMOVAL OF**
                                          **ACTION TO FEDERAL COURT**
14  BAYER HEALTHCARE LLC, BAYER
CORPORATION, DAVID PANVELLE, DOES
15  1-50, inclusive,

16          Defendants.

17

18  TO PLAINTIFF DONNIE JONES AND HIS ATTORNEYS OF RECORD AND TO THE

19  CLERK OF THE ALAMEDA COUNTY SUPERIOR COURT:

20          PLEASE TAKE NOTICE that, on April 29, 2008, defendants Bayer HealthCare LLC and

21  Bayer Corporation (collectively, "defendants") filed their Notice of Removal to Federal Court

22  pursuant to 28 U.S.C. § 1141(b) ("Notice of Removal") in the Office of the Clerk of the United

23  States District Court for the Northern District of California under United States District Court

24  Case No. CV 082219 SC.

25

26

27

28

- 1 -

**NOTICE TO PLAINTIFF AND TO THE CLERK OF THE ALAMEDA COUNTY SUPERIOR COURT**

1        A copy of the Notice of Removal and the other papers filed by defendants in support

2    thereof is attached hereto as Exhibit A.

3    Dated: April 30, 2008                LAW OFFICE OF JEROME SCHREIBSTEIN

4

5                    By: _____

6                          Jerome Schreibstein
                Attorneys for Defendants

7                    BAYER HEALTHCARE LLC, BAYER
                CORPORATION and DAVID PANVELLE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICE OF JEROME SCHREIBSTEIN
ATTORNEYS AT LAW
EMBARCADERO CENTER WEST
275 BATTERY STREET, TWENTIETH FLOOR
SAN FRANCISCO, CA 94111
(415) 875-3355

NOTICE TO PLAINTIFF AND TO THE CLERK OF THE ALAMEDA COUNTY SUPERIOR COURT
OF REMOVAL OF ACTION TO FEDERAL COURT (CASE NO. CASE NO. RG 08380328)

# EXHIBIT A

**JS 44** (Rev. 12/07) (cand rev 1-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS
Donnie Jones

**DEFENDANTS**
Bayer Healthcare LLC and Bayer Corporation

**(b)** County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Andrew W. Shalaby
7525 Leviston Ave.
El Cerrito, CA 94530
(510) 528-8500

Attorneys (If Known)
Jerome Schreibstein
Law Office of Jerome Schreibstein
275 Battery Street, 18th Floor, San Francisco, CA 94111
(415) 875-3355

*E-filing*

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [X] 3 Federal Question (U.S. Government Not a Party)
- [X] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                          and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [X] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State. | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [X] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury— Med. Malpractice | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal 28 USC 157 | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 365 Personal Injury — Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881 | | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 630 Liquor Laws | **PROPERTY RIGHTS** | [ ] 450 Commerce |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | [ ] 640 R.R. & Truck | [ ] 820 Copyrights | [ ] 460 Deportation |
| [ ] 151 Medicare Act | [ ] 340 Marine | **PERSONAL PROPERTY** | [ ] 650 Airline Regs. | [ ] 830 Patent | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 345 Marine Product Liability | [ ] 370 Other Fraud | [ ] 660 Occupational Safety/Health | [ ] 840 Trademark | [ ] 480 Consumer Credit |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | [ ] 690 Other | | [ ] 490 Cable/Sat TV |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | [ ] 810 Selective Service |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | [ ] 710 Fair Labor Standards Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 195 Contract Product Liability | | | [X] 720 Labor/Mgmt. Relations | [ ] 862 Black Lung (923) | [ ] 875 Customer Challenge 12 USC 3410 |
| [ ] 196 Franchise | | | [ ] 730 Labor/Mgmt.Reporting & Disclosure Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 740 Railway Labor Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motions to Vacate Sentence | [ ] 790 Other Labor Litigation | [ ] 865 RSI (405(g)) | [ ] 892 Economic Stabilization Act |
| [ ] 220 Foreclosure | [ ] 442 Employment | **Habeas Corpus:** | [ ] 791 Empl. Ret. Inc. Security Act | | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/ Accommodations | [ ] 530 General | | **FEDERAL TAX SUITS** | [ ] 894 Energy Allocation Act |
| [ ] 240 Torts to Land | [ ] 444 Welfare | [ ] 535 Death Penalty | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 895 Freedom of Information Act |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities – Employment | [ ] 540 Mandamus & Other | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 900 Appeal of Fee Determination Under Equal Access to Justice |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities – Other | [ ] 550 Civil Rights | [ ] 462 Naturalization Application | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 440 Other Civil Rights | [ ] 555 Prison Condition | [ ] 463 Habeas Corpus - Alien Detainee | | |
| | | | [ ] 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- [ ] 1 Original Proceeding
- [X] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Labor Management Relations Act, 29 USC § 185, Section 301.

Brief description of cause:
Suit for violation of collective bargaining contract.

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)

- [X] SAN FRANCISCO/OAKLAND
- [ ] SAN JOSE

DATE  4/29/08

SIGNATURE OF ATTORNEY OF RECORD

American LegalNet, Inc.
www.FormsWorkflow.com

ORIGINAL
FILED

'08 APR 29 PH 3: 53

RICHARD W. WILKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1   JEROME SCHREIBSTEIN (SBN: 154051)
    LAW OFFICE OF JEROME SCHREIBSTEIN
2   Embarcadero Center West
    275 Battery Street, Eighteenth Floor
3   San Francisco, CA 94111
    Telephone: (415) 875-3355
4   Facsimile: (415) 358-9885

5   Attorneys for Defendants
    BAYER HEALTHCARE LLC, BAYER
6   CORPORATION AND DAVID PANVELLE

E-filing

7

8                  UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

SC

10

11  DONNIE JONES,                          CV      CASE NO.        2219

12                    Plaintiff,       )   PETITION AND NOTICE OF
                                       )   REMOVAL OF ACTION UNDER 28
13          vs.                        )   U.S.C. § 1441(b)
                                       )   (Federal Question and Diversity
14  BAYER HEALTHCARE LLC, BAYER        )   Jurisdiction)
    CORPORATION, DAVID PANVELLE, DOES )
15  1-50, inclusive,                   )
                                       )
16                    Defendants.      )
                                       )
17  ─────────────────────────────────

18          TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE

19  NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND PLAINTIFF'S

20  COUNSEL OF RECORD:

21          PLEASE TAKE NOTICE that defendants Bayer HealthCare LLC (at times, "BHC") and

22  Bayer Corporation (at times, "Bayer") (BHC and Bayer are referred to collectively herein, at

23  times, as "defendants") hereby remove to this Court the state court action described below.

24                          **STATE COURT ACTION**

25          1.      On April 7, 2008, a "Complaint for Wrongful Termination, Breach of Contract,

26  Negligence and Fraud" (the "Complaint for Breach of Contract") was filed and an action was

27  commenced by Donnie Jones ("plaintiff") in the Superior Court of the State of California in and

28  for the County of Alameda, entitled *Donnie Jones, Plaintiff, v. Bayer HealthCare LLC, Bayer*

LAW OFFICE OF JEROME SCHREIBSTEIN
ATTORNEYS AT LAW
EMBARCADERO CENTER WEST
275 BATTERY STREET, TWENTIETH FLOOR
SAN FRANCISCO, CA 94111
(415) 875-3355

- 1 -

1    *Corporation, David Panvelle, and Does 1 through 50, inclusive, Defendants*, Case Number

2    RG08380328 (the "State Court Action"). Attached as Exhibit A is a copy of the Complaint for

3    Breach of Contract.

4         2.     The first date upon which defendants received a copy of or had notice of the

5    Complaint for Breach of Contract was April 8, 2008. Attached as Exhibit B are copies of the

6    Summons, Notice and Acknowledgement of Receipt – Civil, and Alameda Superior Alternative

7    Dispute Resolution Information Package. BHC and Bayer agreed to accept service *via* Notice

8    and Acknowledgment. Exhibits A and B constitute all of the pleadings filed or served on

9    defendants to date in the State Court Action.

10                         **FEDERAL QUESTION**

11         3.     <u>Jurisdiction</u>. Removal of the State Court Action is appropriate in that this is a

12    civil action of which this Court has original jurisdiction under 28 U.S.C. section 1331 and is one

13    which may be removed to this Court by defendants pursuant to the provisions of 28 U.S.C.

14    section 1441(b) in that it arises under the law "of the United States." The statutory basis is the

15    Labor Management Relations Act (29 U.S.C. § 185) ("LMRA") as this is a suit for an alleged

16    violation of a contract between an employer and a member of a labor organization. This

17    preemption is not merely defensive, but gives rise to a federal cause of action. Pursuant to the

18    Civil Local Rules of the United States District Court for the Northern District of California,

19    ("Local Rules"), Local Rule 3-5(a), this identifies the statutory or other basis for federal

20    jurisdiction and facts supporting such jurisdiction.

21         4.     The LMRA preempts and displaces any state law claim that is (1) based directly

22    on rights created by a collective bargaining agreement, or (2) substantially dependent on an

23    interpretation of a collective bargaining agreement. (29 U.S.C. §185.) Plaintiff alleges wrongful

24    termination and breach of contract and plaintiff's claims require interpretation of a collective

25    bargaining agreement as an existing collective bargaining agreement governing plaintiff's former

26    employment with BHC contains, *inter alia*, the standards for discharge and the exclusive method

27    for resolution of disputes as to discharges. That collective bargaining agreement, between BHC

28    and International Longshore and Warehouse Union on behalf of its Local #6 ("Union") (the

LAW OFFICE OF JEROME SCHREIBSTEIN
ATTORNEYS AT LAW
EMBARCADERO CENTER WEST
275 BATTERY STREET, TWENTIETH FLOOR
SAN FRANCISCO, CA 94111
(415) 875-3355

PETITION AND NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(b)

1    "CBA") (referred to on the face of the Complaint for Breach of Contract, *see, e.g.*, ¶¶ 7, 11-13),

2    dated 7 September 2005, and remaining in full force and effect to and including August 21,

3    2008, was in full force and effect at the time of plaintiff's termination of employment alleged in

4    his Complaint for Breach of Contract to be September 5, 2007. Plaintiff's position was classified

5    as Code 14 and he was an employee covered by the CBA in the unit defined in the Certification

6    of Representation as issued by the National Labor Relations Board March 26, 1952, Case No.

7    20-RC-1561. (Declaration of Bob Russey in Support of Petition and Notice of Removal of

8    Action under 28 U.S.C. § 1441(b)("Russey DEC"), ¶ 3, Ex. A.)

9         5.        Pursuant to Article I, Section 1 of the CBA, the Union is the exclusive bargaining

10   agent for employees concerning the terms and conditions of the CBA. Article VII of the CBA

11   covers "Discharges and Layoffs" and sets forth the terms and conditions under which a

12   Bargaining Unit employee may be properly terminated for "just cause." (*See* Art. VII, Sections

13   1, 2.) Article XI, "Grievance Procedure," referred to on the face of the Complaint for Breach of

14   Contract (*see* ¶¶ 11-12), is the means for the resolution of differences arising between the

15   Company and the Union, or any of the employees covered by the CBA, relative to any provision

16   of the CBA or its application. (*See* Art. XI, preamble paragraph.) The CBA further states that if

17   the Grievance Procedure is not followed as to a particular discharge or if the grievance as to such

18   discharge is automatically closed in accordance with such procedure, neither the Union nor the

19   individual employee who was discharged shall have the right to challenge such discharge, or the

20   right to any back-pay award or other relief thereunder. (*See* Art. VII, Section 1(e); Art. XI,

21   Section 5(e).) Other than the CBA, there was no other contract governing the terms and

22   conditions (including termination) of Mr. Jones' Bayer employment. (*See* Russey DEC, ¶ 4, Ex.

23   A.)

24        6.        Similarly, plaintiff's state law claims for fraud and negligence are preempted

25   under section 301 of the LMRA as they arise under the same nucleus of facts and require

26   interpretation of a collective bargaining agreement. (*See, e.g.*, *Bale v. General Telephone*

27   *Company of California*, 795 F.2d 775, 780 (9th Cir. 1986).) Plaintiff's claims constitute a

28   grievance involving the interpretation of the application of this CBA.

LAW OFFICE OF JEROME SCHREIBSTEIN
ATTORNEYS AT LAW
EMBARCADERO CENTER WEST
275 BATTERY STREET, TWENTIETH FLOOR
SAN FRANCISCO, CA 94111
(415) 875-3355

- 3 -

7.      Defendant David Panvelle ("Panvelle") has not been served. (Declaration of David Panvelle in Support of Petition and Notice of Removal of Action under 28 U.S.C. § 1441(b) ("Panvelle DEC"), ¶ 5.) Panvelle is thus not required to join in or consent to this Notice of Removal as he has not been served. (*Cf. Salveson v. Western States Bankcard Ass'n*, 731 F.2d 1423, 1429 (9th Cir. 1984) (removal notice defective if it fails to explain absence of co-defendants in consenting to removal).) Additionally, as set forth more fully below, Panvelle is a "sham" defendant. Joinder in the removal petition is not required by persons named as defendants solely to prevent removal. (*Farias v. Bexar County Bd. of Trustees for Mental Health Retardation Services*, 925 F.2d 866, 871-872 (5th Cir. 1991).)

## DIVERSITY OF CITIZENSHIP

8.      <u>Jurisdiction</u>. In addition to jurisdiction under federal question, the basis for removal of the State Court Action is that a complete diversity of citizenship exits between the litigants under 28 U.S.C. section 1332 and 28 U.S.C. section 1441 (b) and the matters in controversy exceed the sum or value of $75,000. BHC is, and was at the time of the filing of the State Court Action, a Delaware corporation, incorporated in Delaware with its principal place of business in New York. Bayer is, and was at the time of the filing of the State Court Action, an Indiana Corporation, incorporated in the State of Indiana, with its principal place of business in the State of Pennsylvania. A corporation shall be deemed to be a citizen of any state by which it has been incorporated and of the state where it has its principal place of business. (28 U.S. C. § 1332 (c).) Defendants are informed and believe that plaintiff is a resident of the State of California.

9.      <u>Sham Defendant</u>. Defendant David Panvelle is a "sham" defendant. Panvelle has not been served. (Panvelle DEC, ¶ 5.) None of plaintiff's claims are valid as against Panvelle, and he has been named only as a "sham" defendant, and therefore his residency should be disregarded with respect to diversity of citizenship.

10.     There is no possibility that plaintiff can prevail on any claims asserted against Panvelle. The causes of action are for "wrongful termination in breach of contract" (first cause of action), "wrongful termination in violation of public policy" (second cause of action),

LAW OFFICE OF JEROME SCHREIBSTEIN
ATTORNEYS AT LAW
EMBARCADERO CENTER WEST
275 BATTERY STREET, TWENTIETH FLOOR
SAN FRANCISCO, CA 94111
(415) 875-3355

PETITION AND NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(b)

LAW OFFICE OF JEROME SCHREIBSTEIN
ATTORNEYS AT LAW
EMBARCADERO CENTER WEST
275 BATTERY STREET, TWENTIETH FLOOR
SAN FRANCISCO, CA 94111
(415) 875-5355

1  "negligence" (third cause of action), and "fraud" (fourth cause of action). California law does

2  not recognize wrongful termination-based theories against individual supervisors who are not the

3  plaintiff's employer. (*Khajavi v. Feather River Anesthesia Medical Group*, 84 Cal.App.4th 32,

4  38 (Cal.App. 2000) ("Only an employer can be liable for the tort of wrongful discharge of an

5  employee").) Panvelle is alleged to have at all times been plaintiff's supervisor. (Complaint for

6  Breach of Contract, ¶ 4.) Plaintiff alleges that his employer was Bayer. (*Id.*, ¶ 6.) Defendant

7  Panvelle was not plaintiff's employer and had no employment agreement with plaintiff. (*See*

8  Panvelle DEC, ¶ 4; Russey DEC, ¶ 5.) Because Panvelle was not plaintiff's employer, and there

9  was no employment agreement between plaintiff and Panvelle, plaintiff's claims for "wrongful

10 termination in breach of contract" and "wrongful termination in violation of public policy"

11 against Panvelle cannot succeed as a matter of law. (*See, e.g., Gaw v. Arthur Gallagher &*

12 *Company*, 2008 U.S. Dist.LEXIS 9188 (N.D.Cal. 2008).) (*See* accompanying Appendix of Case

13 without Official Citation on Petition for Removal.)

14         11.    Under similar circumstances, courts have upheld removal because the individual

15 defendants that would otherwise destroy diversity jurisdiction were found to be "sham"

16 defendants. (*See, e.g., McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)

17 ("*McCabe*") (individual defendant supervisors accused of "wrongful termination" and

18 negligence were "sham" defendants that did not destroy diversity jurisdiction); *LeJeune v. Shell*

19 *Oil Co.*, 950 F.2d 267, 271 (5th Cir. 1992) (state law did not impose vicarious liability on plant

20 manager or supervisor unless they owed a personal duty toward plaintiff so supervisor is an

21 improper defendant).)

22         12.    Similarly, plaintiff cannot establish a cause of action against Panvelle for

23 negligence or fraud. Plaintiff alleges his termination was based on Panvelle's asking him, in the

24 scope of Panvelle's duties, to sign a checklist in order for Panvelle "to protect and preserve

25 [Panvelle's] own employment position." (Complaint for Breach of Contract, ¶ 9.) Plaintiff has

26 also alleged that Panvelle's acts as plaintiff's supervisor were ratified by Bayer. (*Id.*, ¶¶ 4, 22).

27 Allegations that individual defendants induced firing plaintiff "in order to protect themselves and

28 solely in their own self-interest" fail to state causes of action for negligence or fraud against an

- 5 -

1   individual defendant. (*See McCabe*, 811 F.2d at 1339 (joinder of individual defendants was

2   sham that did not destroy diversity); *Sheppard v. Freeman*, 67 Cal.App.4th 339, 347 (Cal.App.

3   1998) (no action against supervisor for conduct that induces employer to terminate employee);

4   *Shoemaker v. Myers*, 52 Cal. 3d 1, 24 (Cal.1990) (supervisor's acts within the scope of their

5   authority are acts of employer and supervisors are not personally liable).)

6       13.    The Complaint for Breach of Contract therefore fails to state a claim for fraud or

7   negligence against defendant Panvelle and his citizenship should therefore be disregarded for

8   purposes of removal on the basis of diversity of citizenship.

9       14.    <u>Fictitious Defendants</u>. For purposes of removal under 28 U.S.C. section 1441 *et*

10  *seq.*, the citizenship of defendants sued under fictitious names shall be disregarded. (28 U.S.C. §

11  1441, subd. (a).) The Does 1 to 50 inclusive named in the Complaint for Breach of Contract

12  should therefore be disregarded for purposes of removal on the basis of diversity of citizenship.

13      15.    Accordingly, there existed at the time of the filing of the State Court Action and

14  continues to exists a complete diversity of citizenship between the parties to the State Court

15  Action.

16      16.    <u>Amount in Controversy</u>. It is apparent from the face of the Complaint for Breach

17  of Contract that the amount in controversy exceeds $75,000. First, plaintiff asserts causes of

18  action for "wrongful termination in breach of contract" (first cause of action), "wrongful

19  termination in violation of public policy" (second cause of action), "negligence" (third cause of

20  action), and "fraud" (fourth cause of action). In his first cause of action, plaintiff alleges he has

21  suffered "loss of income, an inability to pay many of his financial obligations and living

22  expenses, and an impediment to securing further employment elsewhere due to his wrongful

23  termination." (Complaint for Breach of Contract, ¶ 16.) In his second, third and fourth causes of

24  action, plaintiff alleges "actual, general, special, consequential, and punitive damages" "in an

25  amount to be ascertained according to proof at trial." (*Id.*, ¶¶ 18 (prayer), 24 (prayer) and 29

26  (prayer).) Based upon the number of claims, and the potential remedies that plaintiff seeks (none

27  of which defendants concede he is entitled to), it is apparent from the face of the Complaint for

28  Breach of Contract that the amount in controversy exceeds the jurisdictional minimum of

LAW OFFICE OF JEROME SCHREIBSTEIN
ATTORNEYS AT LAW
EMBARCADERO CENTER WEST
275 BATTERY STREET, TWENTIETH FLOOR
SAN FRANCISCO, CA 94111
(415) 875-3355

- 6 -

1    $75,000 specified in 28 U.S.C. section 1332(a) for diversity cases.  (*See White v. FCI USA, Inc.*,

2    319 F.3d 672, 674-676 (5th Cir. 2003) (removal upheld in wrongful termination case where,

3    despite the fact that the complaint failed to specify damages sought, "lengthy list of

4    compensatory and punitive damages" and claim for attorneys' fees made it facially apparent that

5    amount in controversy exceeded $75,000).)

                        **REMOVAL IS TIMELY**

7        17.    This action is being timely removed as defendants are removing within 30 days

8    from their notice of a pleading setting forth a removable claim.  (*See* 28 U.S.C. § 1446(b).)

                      **INTRADISTRICT ASSIGNMENT**

10        18.    Pursuant to the Civil Rules, Rule 3-5(b), this identifies the basis for assignment to

11    a particular location or division of the Court pursuant to Local Rule 3-2 (c).  Pursuant to Local

12    Rule 3-2 (c), all civil actions shall be assigned to a courthouse serving the County in which the

13    action arises.  Under Local Rule 3-2 (d), actions arising in the county of Alameda, as does this

14    one, may be assigned to San Francisco or Oakland.  This matter should therefore be assigned to

15    the San Francisco or Oakland Division pursuant to Local Rules 3-1, 3-2(c), (d).

16        19.    All proper defendants in this action consent to this Petition and Notice of

17    Removal.

18        20.    A copy of this Petition and Notice of Removal is being filed with the Clerk of the

19    Superior Court of the State of California in and for the County of Alameda.

20        21.    A copy of this Petition and Notice of Removal is being served on plaintiff.

21    Dated: April 29, 2008         LAW OFFICE OF JEROME SCHREIBSTEIN

23                                  By: _____

24                                        Jerome Schreibstein
                                    Attorneys for Defendants
25                                  BAYER HEALTHCARE LLC, BAYER
                                    CORPORATION and DAVID PANVELLE

LAW OFFICE OF JEROME SCHREIBSTEIN
ATTORNEYS AT LAW
EMBARCADERO CENTER WEST
275 BATTERY STREET, TWENTIETH FLOOR
SAN FRANCISCO, CA 94111
(415) 875-5355

PETITION AND NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(b)

# EXHIBIT A

1  Andrew W. Shalaby [SBN 206841]
   7525 Leviston Ave
2  El Cerrito, CA 94530
   tel. 510-528-8500, fax 510-528-2412
3  ashalaby@shalabylaw.net

4
   Attorney for Plaintiff Donnie Jones
5

6

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA
               IN AND FOR THE COUNTY OF ALAMEDA
9                       UNLIMITED JURISDICTION

10
   DONNIE JONES,                          Case Number    R G 0 8 3 8 0 3 2 8
11
                          Plaintiff,
12 v.                                     COMPLAINT FOR WRONGFUL
                                          TERMINATION, BREACH OF
13                                        CONTRACT, NEGLIGENCE, and
   BAYER HEALTHCARE LLC; BAYER            FRAUD
14 CORPORATION; DAVID PANVELLE;
   Does 1 to 50 Inclusive,
15
                          Defendants.
16

17                        GENERAL ALLEGATIONS

18      1.    Defendant, BAYER HEALTHCARE LLC, was a limited liability

19 company and/or corporation at all times relevant herein. BAYER HEALTHCARE

20 LLC is a world-wide healthcare company, advancing leading-edge technologies from

21 innovative diagnositcs to veterinary medicines.  BAYER HEALTHCARE LLC

22 comprises of four divisions: Animal Health, Consumer Care, Diabetes Care, and

23 Pharmaceuticals.  BAYER HEALTHCARE LLC has approximately 33,800

24 employees worldwide.

25      2.    Defendant BAYER CORPORATION was a corporation organized under

26 the laws of the States of California and Indiana at all times relevant herein.

27      3.    Both defendants specified above were believed to be agents and

28
   **Initial Complaint**                              Case No.

                                    -1-

ENDORSED
FILED
ALAMEDA COUNTY

APR 0 7 2008

CLERK OF THE SUPERIOR COURT
By
        Molly J. Kautz

1  subsidiaries of one-another, or otherwise in effect one contiguous entity at all times

2  relevant herein.   Hereinafter "BAYER" shall be used to refer to both BAYER

3  HEALTHCARE LLC and BAYER CORPORATION as one and the same entity and

4  employer of Plaintiff DONNIE JONES (hereinafter "Plaintiff").

5        4.      Defendant DAVID PANVELLE (hereinafter "PANVELLE") WAS

6  Plaintiffs' supervisor at BAYER at all times relevant herein.

7        5.      The true names and capacities, whether individual, corporate, associate

8  or otherwise of Defendants sued herein as DOES 1 through 50 inclusive, are unknown

9  to Plaintiff, who therefore sues said Defendants by such fictitious names, and Plaintiff

10 will seek leave of the court to amend this complaint when the true names and

11 capacities have been ascertained.

12                    **STATEMENT OF THE FACTS**

13        6.      Plaintiff was an individual employed by BAYER approximately in the

14 year 1998.  BAYER terminated Plaintiff on September 5, 2007.  At the time of

15 Plaintiff's termination he was a laboratory technician and "sub supervisor."

16        7.      An employment contract existed between BAYER and Plaintiff.  The

17 general terms of the contract were written. Additional contractual terms were verbal,

18 some of which were developed during the course of Plaintiff's employment. Further

19 contractual terms were implied through conduct and practices of BAYER.   The

20 essential terms of the written contract were that Plaintiff would maintain his

21 employment with BAYER as long as he performed satisfactorily, and would only be

22 terminated for just cause.   Such were also the terms of the verbal and / or implied

23 contract as well.

24        8.      During the approximate nine years of Plaintiff's employment with

25 BAYER the body of Plaintiff's work was very much to BAYER's satisfaction, and he

26 received excellent annual employment reviews.

27        9.      On July 11, 2007 Plaintiff was trapped and/or otherwise tricked into a

28

**Initial Complaint**                                          **Case No.**

1  purported violation of one of BAYER's procedural policies in relation to delivery of
2  a BAYER product sample by his immediate supervisor at BAYER, one DAVID
3  PANVELLE (hereinafter "PANVELLE").    At approximately 11:30 a.m. that day
4  PANVELLE asked Plaintiff to deliver certain samples of a BAYER product sample,
5  which PANVELLE gave to Plaintiff at a point of delivery which was referred to as a
6  "pass-through." PANVELLE further handed Plaintiff a checklist for the sample and
7  had plaintiff sign the checklist in his presence. Plaintiff then proceeded to complete
8  the delivery. Approximately 3 hours later PANVELLE called plaintiff to a meeting.
9  A shop steward was present at the meeting along with a BAYER manager known as
10 "SAULYE."    At the meeting PANVELLE advised plaintiff that Plaintiff had
11 committed a major breach of BAYER's procedural policy for delivery of the sample
12 a few hours earlier.  Specifically PANVELLE alleged that it was strictly against
13 BAYER's sample delivery policy to sign the checklist before the delivery had been
14 completed. Plaintiffs was astounded as he had clearly been entrapped and mislead by
15 PANVELLE into signing the product checklist in PANVELLE's presence. The
16 meeting was followed by a letter dated August 2, 2007 advising Plaintiff that he
17 would be suspended for three days and would no longer be performing the job of "Sub
18 Supervisor" and was to receive a reduction in his pay.  Indeed Plaintiffs was
19 suspended, his badge was taken, and he was escorted out of the building by BAYER
20 security in a most humiliating manner. Based on information and belief, Plaintiff
21 alleges that PANVELLE himself had been questioned about the delivery procedure
22 by his supervisors, and in order to protect and preserve his own employment position,
23 PANVELLE blamed and reprimanded Plaintiff harshly and wrongfully.
24      10.    A second incident occurred on August 11, 2007, just one week after
25 Plaintiff returned from work following his suspension, and resulting in Plaintiff's
26 termination of employment by an angry PANVELLE, clearly in retaliation for having
27 himself been reprimanded for the July 11, 2007 incident.    This second incident
28

Initial Complaint                                              Case No.

1  entailed allegations by PANVELLE that Plaintiff allegedly committed a procedural

2  error in relation to the batching of an Insulin product.  Mr. Jones had been working

3  with two other individuals on the Insulin product on August 11, 2007, both allegedly

4  equally implicated in the alleged procedural nonconformity with Plaintiffs in relation

5  to the batching of the specified Insulin product.  In relation to this alleged procedural

6  breach, Plaintiff was terminated effective September 5, 2007, while the other two

7  employees implicated in the incident were not terminated.  On a termination letter

8  dated September 5, 2007 PANVELLE revealed that he used the July 11, 2007 incident

9  wherein he had himself entrapped Plaintiffs as a "prior offense" used to justify

10  Plaintiff's termination, his letter stating in relevant part -

11         "This action is deemed appropriate in light of the recent workplace
           incident wherein you acknowledged failing to comply with Bayer
12         Corporation policy by submitting signed a documentation attesting to the
           performance of an activity which had not been accomplished."
13
   PANVELLE's stated reason was false because PLAINTIFF never "acknowledged
14
   failing to comply with Bayer Corporation policy," but instead vehemently denied any
15
   wrongdoing and objected that PANVELLE had himself entrapped and tricked him,
16
   as detailed above.  PANVELLE's letter amply reveals that PANVELLE used his own
17
   instance of trickery and entrapment on July 11, 2007 to ultimately terminate Plaintiff's
18
   employment without just cause.
19
         11.    At the time of Plaintiff's termination he was a member of a union, the
20
   "INTERNATIONAL LONGSHOREMENS WAREHOUSEMENS UNION," Local
21
   6.  Plaintiff filed a grievance with the union.  On November 14, 2007 the union
22
   advised Plaintiff that it was unable to proceed with his grievance.  On December 6,
23
   2007 Plaintiff's counsel spoke with the union representative to ascertain whether or
24
   not the union could proceed further with the grievance.  The union representative
25
   advised Plaintiff's counsel that it believed Plaintiff's termination was the product of
26
   trickery and entrapment by PANVELLE, but that its grievance policies and
27
   procedures had limitations and did not extend to entrapment matters, and/or were
28

---

**Initial Complaint**                                           **Case No.**

-4-

otherwise limited in scope. Several additional details of the grievance were discussed and reviewed by Plaintiff's counsel, all leading to the conclusion that despite the union's opinion that the termination was wrongful and the product of trickery and entrapment, the union itself could process the grievance no further, hence there was no ascertainable breach of the union's responsibilities.

12.    On March 21, 2008 Plaintiff's counsel spoke with the National Labor Relations Board to ascertain that the union owed Plaintiff no further responsibility or obligation to handle his grievance, and ascertained same.    The National Labor Relations Board confirmed that the union had done all that it was lawfully obligated to do, and that no identifiable basis for liability against the union existed. This action therefore proceeds in State Court in absence of any ascertainable predominant Federal Question (if any). All possible remedies with the union as well as the National Labor Relations Board  have been exhausted, and the action does not fall within the scope of California Fair Housing and Employment matters.

### FIRST CAUSE OF ACTION FOR WRONGFUL TERMINATION IN BREACH OF CONTRACT

Plaintiff incorporates by reference all of the general allegations and factual recitals contained above, and pleads as and for a FIRST cause of action as follows:

13.    BAYER's above-described contract mandated a good cause for termination of Plaintiff's employment.

14.    Plaintiff performed all duties expected of him under his employment contract with BAYER, but for performances which were otherwise excused by way of BAYER's policies and practices, and/or otherwise excused as a matter of law.

15.    BAYER and PANVELLE wrongfully terminated Plaintiff's employment on September 5, 2007 in breach of contract.

16.    Plaintiff has suffered loss of income, an inability to pay many of his financial obligations and living expenses, and an impediment to securing further

Initial Complaint                                                    Case No.

employment elsewhere due to his wrongful termination.

WHEREFORE, Plaintiff prays for a judgment for all actual, general, special, and consequential damages against BAYER and PANVELLE for his wrongful termination, in an amount to be ascertained according to proof at trial.

## SECOND CAUSE OF ACTION FOR WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

Plaintiff incorporates by reference all of the general allegations and factual recitals contained above, and pleads as and for a SECOND cause of action as follows:

17.   Plaintiff's above-described termination by way of trickery and entrapment violates long-established public policy, and constitutes a wrongful termination in violation of public policy.

18.   Punitive damages are warranted because the wrongful acts of PANVELLE and BAYER were fraudulent and oppressive, and exceeded all bounds of decency established by contemporary standards.

WHEREFORE, Plaintiff prays for a judgment for all actual, general, special, consequential, and punitive damages against BAYER and PANVELLE for his wrongful termination, in an amount to be ascertained according to proof at trial.

## THIRD CAUSE OF ACTION FOR NEGLIGENCE

Plaintiff incorporates by reference all of the general allegations and factual recitals contained above, and pleads as and for a THIRD cause of action as follows:

19.   PANVELLE and BAYER were bound by California Civil Code section 1708, without contract, to abstain from injuring Plaintiff, or infringing upon any of his rights.

20.   PANVELLE breached his duty owed Plaintiff by tricking and entrapping Plaintiff into the alleged procedural violation incident of July 11, 2007 described above.

21.   PANVELLE breached his duty owed Plaintiff by terminating Plaintiff based on his above-described instance of trickery and entrapment.

Initial Complaint                                                                   Case No.

-6-

22.    BAYER breached its duty owed Plaintiff by failing to properly investigate the matter of PANVELLE's entrapment of Plaintiff and by ratifying Plaintiff's wrongful termination of employment.

23.    As a result of the above-described wrongful and negligent acts of PANVELLE and BAYER, Plaintiff lost his job with BAYER after nine years of employment, lost his status as "sub supervisor" and its corresponding rate of pay, suffered a loss of income and impediment to securing future employment, and suffered severe general damages in the form of emotional injury as would be typically experienced by the person of ordinary prudence, similarly-situated.

24.    Punitive damages are warranted because the wrongful acts of PANVELLE and BAYER were fraudulent and oppressive, and exceeded all bounds of decency established by contemporary standards.

WHEREFORE, Plaintiff prays for a judgment for all actual, general, special, consequential, and punitive damages against BAYER and PANVELLE arising from their negligence as described above, in an amount to be ascertained according to proof at trial.

## FOURTH CAUSE OF ACTION FOR FRAUD

Plaintiff incorporates by reference all of the general allegations and factual recitals contained above, and pleads as and for a FOURTH cause of action as follows:

25.    PANVELLE fraudulently deceived Plaintiff into believing it was proper and appropriate for him to sign a checklist of the BAYER product sample he delivered on July 11, 2007 as specified above.

26.    Plaintiff's reliance on PANVELLE in executing the product sample checklist on July 11, 2007 was justified because PANVELLE was his immediate supervisor, and Plaintiff was merely doing what his supervisor required of him in signing the product sample checklist.

27.    According to BAYER, the procedure PANVELLE required of Plaintiff

---

**Initial Complaint**                                                    **Case No.**

1  in signing the BAYER product sample checklist on July 11, 2007 was strictly

2  forbidden by BAYER. As a result, PANVELLE suspended Plaintiff for three days,

3  demoted him, reduced his pay, and ultimately used the incident to justify Plaintiff's

4  termination of employment.

5      28.    BAYER ultimately learned of the trickery and entrapment of Plaintiff as

6  described above, but ratified the wrongful termination of Plaintiff based on these

7  wrongful acts, rendering it a necessary and actual party to the wrongful scheme and

8  wrongful termination accomplished by way of fraud and deception.

9      29.    Punitive damages are warranted because the wrongful acts of

10  PANVELLE and BAYER were fraudulent and oppressive, and exceeded all bounds

11  of decency established by contemporary standards.

12      WHEREFORE, Plaintiff prays for a judgment for all actual, general, special,

13  consequential, and punitive damages against BAYER and PANVELLE for his

14  wrongful termination which herein was the product of fraud and deception, in an

15  amount to be ascertained according to proof at trial.

16

17  Dated: April 5, 2008

18                    Andrew W. Shalaby, Attorney for
                  Plaintiff Donnie Jones

19

20

21

22

23

24

25

26

27

28

---

**Initial Complaint**                             **Case No.**

# EXHIBIT B

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Andrew W. Shalaby sbn 206841 <br> 7525 LEVISTON AVE <br><br> EL CERRITO, CA 94530  TEL. 510-528-8500 <br> TELEPHONE NO.: 510-528-8500　　FAX NO. *(Optional):* 510-528-2412 <br> E-MAIL ADDRESS *(Optional):* <br> ATTORNEY FOR *(Name):* Plaintiff | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
STREET ADDRESS: 1225 FALLON ST.
MAILING ADDRESS: 1225 Fallon St.
CITY AND ZIP CODE: OAKLAND, CA 94612
BRANCH NAME:

PLAINTIFF/PETITIONER: Donnie Jones

DEFENDANT/RESPONDENT: Bayer Healthcare, et al

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER: <br> RG08380328 |
|---|---|

TO *(insert name of party being served):* Jerome Schreibstein, attorney for defendant

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: April 9, 2008

_____
Andrew W. Shalaby, Esq.
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing):*
1. ☒ A copy of the summons and of the complaint.
2. ☒ Other *(specify):* Alternative Dispute Resolution Package

*(To be completed by recipient):*

Date this form is signed:

_____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

▶ _____
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**

CEB

Page 1 of 1

Code of Civil Procedure,
§§ 415.30, 417.10
www.courtinfo.ca.gov

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

ENDORSED
FILED
ALAMEDA COUNTY

APR 0 7 2008

CLERK OF THE SUPERIOR COURT

By _____

Molly J. Kautz

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

BAYER HEALTHCARE LLC; BAYER CORPORATION; DAVID
PANVELLE; Does 1 to 50 Inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

DONNIE JONES

---

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

---

| The name and address of the court is: | CASE NUMBER |
|---|---|
| *(El nombre y dirección de la corte es):* ALAMEDA COUNTY SUPERIOR COURT<br>1225 FALLON ST., RM 109<br>OAKLAND, CA 94612 | *(Número RG* 0 8 3 8 0 3 2 8 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Andrew W. Shalaby sbn 206841
7525 LEVISTON AVE
EL CERRITO, CA 94530    TEL. 510-528-8500

Molly J. Kautz

| DATE: APR 0 7 RECD    Pat S. Sweeten | Clerk, by _____ , Deputy |
|---|---|
| *(Fecha)* | *(Secretario)* *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)      ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| | |
|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. January 1, 2004] | SUMMONS    ©EB | Code of Civil Procedure §§ 412.20, 465 |



## GENERAL INFORMATION ABOUT ADR

### Introduction to Alternative Dispute Resolution

Did you know that most civil lawsuits settle without a trial? And did you know that there are a number of ways to resolve civil disputes without having to sue somebody? These alternatives to a lawsuit are known as alternative dispute resolution (also called ADR). The most common forms of ADR are mediation, arbitration, and neutral evaluation. There are a number of other kinds of ADR as well.

In ADR, trained, impartial persons decide disputes or help parties decide disputes themselves. These persons are called neutrals. In mediation, for example, the neutral is the mediator. Neutrals normally are chosen by the disputing parties or by the court. Neutrals can help parties resolve disputes without having to go to court.

ADR is not new. ADR is available in many communities through court-connected and community dispute resolution programs and private neutrals.

### Advantages of Alternative Dispute Resolution

ADR can have a number of advantages over a lawsuit:

- **ADR can be speedier.** A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.

- **ADR can save money.** Court costs, attorney fees, and expert witness fees can be saved.

- **ADR can permit more participation.** With ADR, the parties may have more chances to tell their side of the story than in court and may have more control over the outcome.

- **ADR can be flexible.** The parties can choose the ADR process that is best for them.

- **ADR can be cooperative.** In mediation, for example, the parties having a dispute may work together with the neutral to resolve the dispute and agree to a remedy that makes sense to them, rather than work against each other.

- **ADR can reduce stress.** There are fewer, if any, court appearances. And because ADR can be speedier, cheaper, and can create an atmosphere in which the parties are normally cooperative, ADR is easier on the nerves. The parties do not have a lawsuit hanging over their heads. For all the above reasons, many people have reported a high degree of satisfaction with ADR.

Because of these advantages, many parties choose ADR to resolve a dispute instead of filing a lawsuit. Even when a lawsuit has been filed, ADR can be used before the parties' positions harden and the lawsuit becomes costly. ADR has been used to resolve disputes even after a trial, when the result is appealed.

### Disadvantages of Alternative Dispute Resolution

ADR may not be suitable for every dispute.

If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure and review for legal error by an appellate court.

There generally is less opportunity to find out about the other side's case with ADR than with litigation. ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.

The neutral may charge a fee for his or her services.

If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

Lawsuits must be brought within specified periods of time, known as statutes of limitations. Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.




## Three Common Types of Alternative Dispute Resolution

This section describes the forms of ADR most often found in the California state courts and discusses when each may be right for a dispute.

### Mediation

In mediation, a neutral (the mediator) assists the parties in reaching a mutually acceptable resolution of their dispute. Unlike lawsuits or some other types of ADR, the mediator does not decide how the dispute is to be resolved; the parties do.

Mediation is a cooperative process in which the parties work together toward a resolution that tries to meet everyone's interests, instead of working against each other where at least one party loses. Mediation normally leads to better relations between the parties and to resolutions that hold up. For example, mediation has been very successful in family disputes, particularly with child custody and visitation.

Mediation is particularly effective when the parties have a continuing relationship, like neighbors or business people. Mediation also is very effective where personal feelings are getting in the way of a resolution. This is because mediation normally gives the parties a chance to let out their feelings and find out how they each see things.

Mediation may not be a good idea when one party is unwilling to discuss a resolution or when one party has been a victim of the other or has unequal bargaining power in the mediation. However, mediation can be successful for victims seeking restitution from offenders. A mediator can meet with the parties separately when there has been violence between them.

### Arbitration

In arbitration, a neutral (the arbitrator) reviews evidence, hears arguments, and makes a decision (award) to resolve the dispute. Arbitration normally is more informal, much quicker, and less expensive than a lawsuit. Often a case that may take a week to try in court can be heard by an arbitrator in a matter of hours, because evidence can be submitted by documents (like medical reports and bills and business records) rather than by testimony.

There are two kinds of arbitration in California:

(1) Private arbitration, by agreement of the parties involved in the dispute, takes place outside of the courts and is normally binding. In most cases, "binding" means that the arbitrator's decision (award) is final and there will not be a trial or an appeal of that decision.

(2) "Judicial arbitration" takes place within the court process and is not binding unless the parties agree at the outset to be bound. A party to this kind of arbitration who does not like a judicial arbitration award may file a request for trial with the court within a specified time. However, if that party does not do better in the trial than in arbitration, he or she may have to pay a penalty.

Arbitration is best for cases where the parties want a decision without the expense of a trial. Arbitration may be better than mediation when the parties have no relationship except for the dispute.

Arbitration may not be a good idea when the parties want to decide on the outcome of their dispute themselves.

### Neutral Evaluation

In evaluation, a neutral (the evaluator) gives an opinion on the strengths and weaknesses of each party's evidence and arguments and makes an evaluation of the case. Each party gets a chance to present his or her side and hear the other side. This may lead to a settlement or at least help the parties prepare to resolve the dispute later on. If the neutral evaluation does not resolve the dispute, the parties may go to court or try another form of ADR.

Neutral evaluation, like mediation, can come early in the dispute and save time and money.

Neutral evaluation is most effective when a party has an unrealistic view of the dispute, when the only real issue is what the case is worth, or when there are technical or scientific questions to be worked out.

Neutral evaluation may not be a good idea when it is too soon to tell what the case is worth or if the dispute is about something besides money, like a neighbor playing loud music late at night.




## Other Types of Alternative Dispute Resolution

There are several other types of ADR besides mediation, arbitration, and neutral evaluation. Some of these are conciliation, settlement conferences, fact-finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR methods. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute.

The selection of a neutral is an important decision. There is no legal requirement that the neutral be licensed or hold any particular certificate. However, some programs have established qualification requirements for neutrals. You may wish to inquire about the qualifications of any neutral you are considering.

Agreements reached through ADR normally are put in writing by the neutral and, if the parties wish, may become binding contracts that can be enforced by a judge.

You may wish to seek the advice of an attorney about your legal rights and other matters relating to the dispute.

## Help Finding an Alternative Dispute Resolution Provider in Your Community

To locate a dispute resolution program or private neutral in your community:

- **Visit the Court's Web site.** The Alameda County Superior Court maintains a list of court-connected mediators, neutral evaluators, and private arbitrators at http://www.alameda.courts.ca.gov/adr/index.html

- **Contact the Small Claims Court Legal Advisor.** The small claims legal advisor for Alameda County is located at the Wiley W. Manuel Courthouse, Self-Help Center. The phone number is 510-268-7665.

- **Visit the California Department of Consumer Affairs' Web site.** The Department of Consumer Affairs (also called the DCA) has posted a list of conflict resolution programs throughout the state. The list can be found at http://www.dca.ca.gov/consumer/mediation_programs.shtml

  You can also call the Department of Consumer Affairs, Consumer Information Center, at 1-800-952-5210.

- **Contact your local bar association.** You can find a list of local bar associations in California on the State Bar Web site at http://members.calbar.ca.gov/search/ba_results.aspx?txtan=&txtln=&County=&District=&ClassTypes=C

  If you cannot find a bar association for your area on the State Bar Web site, check the yellow pages of your telephone book under "Associations."

- **Look in the yellow pages of your telephone book under "Arbitrators" or "Mediators".**

- **Automotive Repair, Smog Check:** The **California Bureau of Automotive Repair** (also known as BAR) offers a free mediation service for consumers who are dissatisfied with an auto repair or a smog check, or who dispute an invoice for such services. BAR registers and regulates California automotive repair facilities and licenses smog, lamp, and brake inspection stations. Learn more at http://www.smogcheck.ca.gov/StdPage.asp?Body=/Geninfo/Otherinfo/Mediation.htm#What%20is%20a%20Media tor or call 800-952-5210.

- **Attorney Fees:** The **State Bar of California** administers a mandatory fee arbitration program to resolve attorney fee disputes between lawyers and their clients. The program is an informal, low-cost forum and is mandatory for a lawyer if a client requests it. Mediation of attorney fees disputes may also be available in some areas of California. Learn more at http://www.calbar.org/2bar/3arb/3arbndx.htm or call 415-538-2020.

Rev. March 2008




## DISPUTE RESOLUTION PROGRAMS IN ALAMEDA COUNTY

**East Bay Community Mediation**
**1968 San Pablo Avenue, Berkeley, CA 94702-1612**

Phone: (510) 548-2377;  Fax: (510) 548-4051

http://www.ebcm.org/

EBCM is a community-based mediation program created by the union of Berkeley Dispute Resolution Service and Conciliation Forums of Oakland. EBCM offers counseling on options and approaches to resolving a dispute, mediation, large-group conflict facilitation, and conflict resolution skills workshops.

**Catholic Charities of the East Bay: Oakland – Main Office**
**433 Jefferson Street, Oakland, CA 94607**

Phone: (510) 768-3100;  Fax: (510) 451-6998

http://www.cceb.org/

Mediators are responsible for mediation sessions involving the youth, victim and family members to work towards a mutually agreeable restitution agreement. Also, provide free workshops in anger management and mediation.

**Center for Community Dispute Settlement**
**291 McLeod Street, Livermore, CA 94550**

Phone: (925) 373-1035; Fax:  (925) 449-0945

http://www.trivalleymediation.com/

Provides services in Tri-Valley for all of Alameda County. Program goals are to increase the number of court cases resolved, mediating small claims cases four days per week, and training youth in listening and conflict resolution skills.



# ALAMEDA COUNTY SUPERIOR COURT
## ADR PROGRAM

**ADR Program Administrator**

Pursuant to California Rules of Court, rule 10.783, the presiding judge of the Superior Court of California, County of Alameda designated the Court Executive Officer to serve as ADR program administrator.

A Plaintiff may elect, the parties may stipulate, or a judge may refer a case to Judicial Arbitration. The Judicial Arbitration Program Coordinator may be contacted during regular court business hours at (510) 690-2705.

**The Judicial Arbitration Process**

    **Appointment of Arbitrator (must be appointed within 30 days after referral per CRC 3.815(c)(2)).**

    ⇒  Parties mailed list of five names from which to select (list mailed within 5-10 business days after receipt of referral).

    ⇒  Each party may reject one of the names listed (10 calendar days per CRC 3.815(b)(3)).

    ⇒  The administrator randomly appoints the arbitrators from the names remaining on the list or if one name remains then that name is deemed appointed (CRC 3.815(4)).

    **Assignment of Case (CRC 3.817)**

    ⇒  Within 15 days of notice of the appointment, the arbitrator shall contact parties in writing about time, date, and place of the hearing. The parties shall receive at least 30 days notice prior to the hearing.

    **Hearings (CRC 3.817)**

    ⇒  Must be scheduled to be completed not more than 90 days from the date the arbitrator was assigned. For good cause shown, a Judge may continue the case beyond this 90-day period.

    **Award of Arbitrator**

    ⇒  The arbitrator must file an award within 10 days of the conclusion of the arbitration hearing. The arbitrator may apply to the court for an additional 20 days in cases of unusual length or complexity (CRC 3.825(b)).

    ⇒  Within 30 days of the filing of the award, a party may file a request for trial (CRC 3.826(a)).

    ⇒  The clerk must immediately enter the arbitration award as a judgment if no party has served and filed a request for trial during the 30-day period after the award is filed (CRC 3.827).

    **Return of Case to Court**

    ⇒  Upon the filing of a request for trial, the action must proceed as provided under an applicable case management order or, if there is no pending order, promptly set for a case management conference. (CRC 3.826(b)).

    ⇒  When a judgment is entered, the clerk will notify all parties who have appeared in the case including the judge to whom the case is assigned if there is one (CRC 3.827(b)).

    ⇒  If a case is settled then each plaintiff or other party must notify the arbitrator and the court as required under California Rules of Court, rule 3.1385 (CRC 3.829).




## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

| ☐ Berkeley Courthouse<br>2000 Center Street, 2nd Fl., Berkeley, CA 94704 | ☐ Fremont Hall of Justice<br>39439 Paseo Padre Parkway, Fremont, CA 94538 | ☐ Gale/Schenone Hall of Justice<br>5672 Stoneridge Drive, Pleasanton, CA 94588 |
|---|---|---|
| ☐ George E. McDonald Hall of Justice<br>2233 Shoreline Drive, Alameda, CA 94501 | ☐ Hayward Hall of Justice<br>24405 Amador Street, Hayward, CA 94544 | ☐ René C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612 |
| | ☐ Wiley W. Manuel Courthouse<br>661 Washington Street, Oakland, CA 94607 | |

Case No.:

Plaintiff

vs.

**STIPULATION FOR ALTERNATIVE
DISPUTE RESOLUTION (ADR)**

Defendant

The parties by and through their attorneys of record hereby stipulate to submit the within

controversy to the following Alternative Dispute Resolution process:

_____

_____

_____

### ORDER

The foregoing stipulation having been read and considered and good cause appearing, now therefore, IT

IS SO ORDERED.

IT IS FURTHER ORDERED that the matter be set for Order to Show Cause Hearing RE:

Dismissal on _____ at _____ a.m./p.m. in Department _____

Dated:

_____
JUDGE OF THE SUPERIOR COURT

(SEAL)

Rev. March 2008

1   JEROME SCHREIBSTEIN (SBN: 154051)
    LAW OFFICE OF JEROME SCHREIBSTEIN
2   Embarcadero Center West
    275 Battery Street, Eighteenth Floor
3   San Francisco, CA 94111
    Telephone: (415) 875-3355
4   Facsimile: (415) 358-9885

5   Attorneys for Defendants
    BAYER HEALTHCARE LLC, BAYER
6   CORPORATION AND DAVID PANVELLE

7

8                   UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11  DONNIE JONES,                          CASE NO.

12              Plaintiff,                  DECLARATION OF BOB RUSSEY IN
                                            SUPPORT OF PETITION AND
13        vs.                               NOTICE OF REMOVAL OF ACTION
                                            UNDER 28 U.S.C. § 1441(b) (Federal
14  BAYER HEALTHCARE LLC, BAYER             Question and Diversity Jurisdiction)
    CORPORATION, DAVID PANVELLE, DOES
15  1-50, inclusive,

16              Defendants.

17

18        I, Bob Russey, declare and state as follows:

19        1.      I began working for Bayer Corporation at its Berkeley, California manufacturing

20  facility in 1984. The Company has gone through several name changes since I started and is

21  currently operating in Berkeley under the name Bayer HealthCare LLC (herein, "Bayer"). The

22  below is true and correct of my own personal knowledge or, to the extent indicated, I am

23  informed and believe and on that basis aver it to be true, and, if called upon, I could and would

24  competently testify thereto.

25        2.      I began my Bayer career as a plasma production operator and a member of the

26  Bargaining Unit. I held this position for approximately nine years and participated as a member

27  of the Union negotiating team on two different iterations of the Collective Bargaining

28  Agreements with Bayer. In 1993, I was made a Plasma Production Supervisor. In 2003, I

LAW OFFICE OF JEROME SCHREIBSTEIN
ATTORNEYS AT LAW
EMBARCADERO CENTER WEST
275 BATTERY STREET, TWENTIETH FLOOR
SAN FRANCISCO, CA 94111
(415) 875-3355

- 1 -

DECLARATION OF BOB RUSSEY IN SUPPORT OF PETITION AND NOTICE OF REMOVAL OF

LAW OFFICE OF JEROME SCHREIBSTEIN
ATTORNEYS AT LAW
EMBARCADERO CENTER WEST
275 BATTERY STREET, TWENTIETH FLOOR
SAN FRANCISCO, CA 94111
(415) 875-3355

1  became a Human Resources Consultant and had certain of the manufacturing workers – the

2  Bargaining Unit employees responsible for the actual production of the medicine – in my client

3  group.  In 2005, I was named Labor Relations Manager at the Bayer Berkeley Site.  In this role, I

4  am the lead HR oversight person involved in executing all human resources functions relative to

5  the Bargaining Unit employees.

6       3.     Mr. Donnie Jones was formerly employed at Bayer beginning in approximately

7  1998.  At all times during his Bayer employment up to and including termination, Mr. Jones was

8  a member of the Bargaining Unit at Bayer.  All of the Bargaining Unit members at Bayer are

9  represented by the International Longshore & Warehouse Union (ILWU), Local # 6 (herein, the

10 "Union").  The terms and conditions of the Bayer Bargaining Unit employees' employment have

11 been governed by a series of collective bargaining agreements as negotiated between the Union

12 and Bayer.  The iteration of the Collective Bargaining Agreement (the "CBA") in force at the

13 time of Mr. Jones' termination has effective dates of September 7, 2005 to August 21, 2008.

14 True and correct copies of the relevant provisions of the CBA as cited to in my within

15 declaration are appended hereto as Exhibit "A."  Plaintiff's position was classified as Code 14

16 and he was an employee covered by the CBA in the unit I am informed and believe and aver is

17 defined in the Certification of Representation as issued by the National Labor Relations Board

18 March 26, 1952, Case No. 20-RC-1561.

19       4.     Pursuant to Article I, Section 1 of the CBA, the Union is the exclusive bargaining

20 agent for employees concerning the terms and conditions of the CBA.  Article VII of the CBA

21 covers "Discharges and Layoffs" and sets forth the terms and conditions under which a

22 Bargaining Unit employee may be properly terminated for "just cause."  (See Art. VII, Sections

23 1, 2.)  Article XI, "Grievance Procedure," is the means for the resolution of differences arising

24 between the Company and the Union, or any of the employees covered by the CBA, relative to

25 any provision of the CBA or its application.  (See Art. XI, preamble paragraph.)  The CBA

26 further states that if the Grievance Procedure is not followed as to a particular discharge or if the

27 grievance as to such discharge is automatically closed in accordance with such procedure, neither

28 the Union nor the individual employee who was discharged shall have the right to challenge such

DECLARATION OF BOB RUSSEY IN SUPPORT OF PETITION AND NOTICE OF REMOVAL OF

1    discharge, or the right to any back-pay award or other relief thereunder.  (*See* Art. VII, Section

2    1(e); Art. XI, Section 5(e).)  Other than the CBA, there was no other contract governing the

3    terms and conditions (including termination) of Mr. Jones' Bayer employment.

4          5.      David Panvelle, as a Manufacturing Supervisor, has no authority to hire and fire

5    Bargaining Unit or any other Bayer employees.  All terminations at Bayer must  be approved by,

6    among others, Human Resources and senior management.  This was the case for Mr. Donnie

7    Jones as well.

8          I declare under penalty of perjury that the foregoing is true and correct.  Executed this

9    26th day of April, 2008 in Berkeley, California.

10

11                                                                    Bob Russey

12

LAW OFFICE OF JEROME SCHREIBSTEIN
ATTORNEYS AT LAW
EMBARCADERO CENTER WEST
275 BATTERY STREET, TWENTIETH FLOOR
SAN FRANCISCO, CA 94111
(415) 875-3355

- 3 -

DECLARATION OF BOB RUSSEY IN SUPPORT OF PETITION AND NOTICE OF REMOVAL OF

# EXHIBIT A



# AGREEMENT
## B·E·T·W·E·E·N

**Bayer HealthCare LLC**
Berkeley, California Plant
and
**International Longshore
& Warehouse Union Local #6**

**Effective**
September 7, 2005 – August 21, 2008



Bayer HealthCare LLC and the International Longshore and Warehouse Union and its Local #6, recognize their respective responsibilities in the area of equal employment opportunity and applicable federal and state laws relating to fair employment practices.

The Company and the Union recognize the moral principles involved in the area of civil rights and have reaffirmed in this Collective Bargaining Agreement their commitment not to discriminate because of race, color, national origin, sex, age, handicap, creed, political beliefs, union activity, nor against disabled veterans or Vietnam era veterans.

This Agreement is made and entered into this seventh (7th) day of September, 2005 between Bayer HealthCare LLC, a Delaware Corporation, for its Berkeley, California Plant located at 800 Dwight Way, Berkeley, California, hereinafter referred to as the Company, and the International Longshore and Warehouse Union on behalf of Local #6, hereinafter referred to as the "Union."

## PURPOSE

The general purpose of this Agreement is to promote the mutual interests of the Company and its employees, and to provide for the operation of the plant under methods which will further, to the fullest extent possible, the welfare of the employees, economy and efficiency of operation, elimination of waste, realization of maximum quantity and quality of output, cleanliness of plant, and protection of property.

# INDEX

Any reference in this Agreement made to either the masculine or feminine gender (he, she) shall refer to both genders.

| | **ARTICLES** | **Page** |
|---|---|---|
| Article I | Recognition, Union Security and Management Responsibilities | 1 |
| Article II | Hours of Work and Overtime | 5 |
| Article III | Rates of Pay and Changes in Classification | 11 |
| Article IV | Holidays | 13 |
| Article V | Vacations | 16 |
| Article VI | Seniority | 22 |
| Article VII | Discharges and Layoffs | 24 |
| Article VIII | Promotions and Transfers | 28 |
| Article IX | Hiring and Rehiring | 34 |
| Article X | Leaves of Absence | 37 |
| Article XI | Grievance Procedure | 39 |
| Article XII | Business Agent | 46 |
| Article XIII | Severance Pay | 47 |
| Article XIV | Strikes and Lockouts | 51 |
| Article XV | Effective Date | 52 |
| Article XVI | Duration of Agreement | 53 |

## SUPPLEMENTAL ATTACHMENTS

| Supplemental Attachment No. 1 | Basic Rates of Pay | 56 |
|---|---|---|
| Supplemental Attachment No. 2 | Job Classification Schedule | 58 |

Supplemental Attachment No. 3    Company's Last Offer .........................62

Supplemental Attachment No. 4    Compensable Illness...........................62

Supplemental Attachment No. 5    Plasma Processing Dept Overtime ......64

Supplemental Attachment No. 6    Plant and Department Shutdowns - Christmas and Other Slack Times .......65

Supplemental Attachment No. 7    Flextime...............................................66

Supplemental Attachment No. 8    New Hire Orientation............................66

Supplemental Attachment No. 9    Shift Change .......................................67

Supplemental Attachment No. 10    Group Benefits ....................................69

Supplemental Attachment No. 11    Pension Plan ......................................125

Supplemental Attachment No. 12    Bayer Savings Plan ............................144

Supplemental Attachment No. 13    Maintenance Trainee Program ............145

Supplemental Attachment No. 14    Memorandum of Understanding Freeze-Drying Agreement ...................148

Supplemental Attachment No. 15    Understanding Regarding Subcontracting.....................................150

Supplemental Attachment No. 16    Family and Medical Leave Act.............150

Supplemental Attachment No. 17    Americans with Disabilities Act............152

Supplemental Attachment No. 18    Substance Abuse................................152

# ARTICLE I

## RECOGNITION, UNION SECURITY AND MANAGEMENT RESPONSIBILITIES

**Section 1** - The Company recognizes the Union as the exclusive bargaining agent for the purpose of representing all employees covered by this Agreement in negotiations pertaining to hours of work, rates of pay, and working conditions incidental to their employment by the Company. The employees covered by this Agreement are all the employees in the unit defined in the Certification of Representation issued by the National Labor Relations Board under date of March 26, 1952, in Case No. 20-RC-1561, namely, all production and maintenance employees of the Company at its Berkeley, California plant including regular part-time employees, but excluding executives, administrative employees, confidential employees, professional employees, office clerical employees, salesmen, watchmen, guards, and supervisors as defined in the National Labor Relations Act, as amended.

**Section 2** - Neither the Union nor the Company may assign jurisdiction over any section or group of the employees herein covered to any third party or parties.

**Section 3** - The Company agrees that it will not interfere with, restrain, or coerce said employees because of membership or lawful activity in the Union nor will it attempt to discourage membership in the Union by discrimination in respect to hiring, tenure of employment or any other term or condition of employment.

**Section 4** - The Union may appoint Shop Stewards for the purpose of carrying out Article XI. The Stewards shall be allowed reasonable time to spend on the handling of grievances. The Union shall furnish the Company with a list of its Shop Stewards and other Chapter Officers, and notify the Company of all

1

changes which may occur from time to time. The Union agrees that neither it nor any of its officers or members will engage in Union activity or Union business during working hours except as specifically provided for by the terms of this Section, or by mutual agreement. The Company agrees to allow the Union to conduct Union business upon Company property provided such business is in accordance with the letter from the Union dated September 20, 1967 and is conducted outside of working hours and does not inter¬fere with plant operations or create discord.

**Section 5** - The Company agrees to deduct Union membership dues from the wages of all employees covered by this Agreement who have heretofore executed or who may hereafter execute and deliver to the Company a written authorization for such deduction. Such authorization for the deduction of monthly membership dues may be revoked by the employee signing it by submitting written notice to the Company and the Union at any time within sixty (60) days prior to the date which is twelve (12) months after the execution thereof, but if the employee fails to exercise his right of revocation within such period, the authorization shall be deemed renewed for a period of one year and shall be irrevocable during said period or until the termination date of this Agreement, whichever occurs sooner, and shall be terminable and renew¬able for like periods of one year (12 months) and under the same conditions as are set forth above.

For the purposes of this Agreement, Union membership dues are defined as follows:

(a) Dues to obtain membership (initiation fee).

(b) Dues to maintain membership in good standing (monthly dues).

**Section 6** - The Company agrees to deduct from the wages and turn over to the Secretary-Treasurer of the Union, initiation fee and dues of such members of the Union as individually and voluntarily certify in writing that they authorize such deductions. The authorization shall be in the following form:

## AUTHORIZATION FOR DEDUCTION
## OF UNION MEMBERSHIP DUES
### (Monthly & Initiation Fee)

### Bayer HealthCare LLC
### Berkeley, California Plant

I, the undersigned employee of Bayer HealthCare LLC, hereby author¬ize and direct the said Company to deduct, on my first payday of each month, from any wages now or hereinafter, and pay to Warehouse Union Local #6, ILWU, my membership dues and Initiation as a member of that organization. I agree to hold the Company harmless from loss from any judgment of a court of competent jurisdiction and from any order of the Labor Commissioner or other agency or govern¬ment in connection with or arising from any deductions made pursuant to this assignment. No other assignment or order exists in connection with this transaction. This assignment shall be irrevocable for a period of one year from the signing thereof and shall be continued thereafter from year to year, on an annual basis, unless revoked by me by notice in writing to the Company and the Union submitted at least sixty (60) days prior to the one year anniversary date of this signing, or sixty (60) days prior to any succeeding anniversary year of this signing.

Date _____ Signature _____

The Union shall hold the Company harmless against any claim that may be made by reason of the deduction of Union dues pursuant to this Agreement.

**Section 7** - The Company agrees to give each new employee a copy of this Agreement.  The Company shall advise each new employee covered by this Agreement of the name of his Union Steward.

**Section 8** - The Company agrees to provide space on Bulletin Boards to the Union for posting material. The Union agrees that in the event the Company objects to material posted by the Union

3

and such objection is not resolved through mutual agreement, the Company will have the right to revoke the Union's Bulletin Board privileges.

**Section 9** - On and after the thirtieth (30th) day after the date of execution of this Agreement, membership in good standing in the Union shall be a condition of employment for all employees in the Bargaining Unit. Eligible employees hired after such date of execution must become members of the Union thirty (30) days after date of hire, and failure to join the Union within such time shall be cause for the employee's dismissal. The Union may waive, deny, or terminate membership as to any eligible employee without prejudice to the continued employment of such employee and in the event that the Union waives, denies, or terminates membership as to any employee for reasons other than the failure of the employee to tender membership dues as defined in this Agreement, such waiver, denial, or termination of membership shall be deemed to be without prejudice to continued employment.

**Section 10** - Company Responsibilities
It is agreed that the industrial relations concept of "Reserved Management Rights" is hereby incorporated into this Agreement for the purpose of reserving to the Company any and all rights with respect to decision-making which is attendant with ownership and the management of the business not otherwise clearly limited by expressed terms contained in this Agreement and intended by the parties for that exact purpose.

**Section 11** - The work to be performed by each employee and his qualifications and ability to perform that work shall be determined by the Company with application to all provisions of this Agreement. Complaints that the Company has exercised this responsibility unfairly may be taken up through the grievance and arbitration provisions of this Agreement.

# ARTICLE VII

## DISCHARGES AND LAYOFFS

Section 1 - No employee with seniority shall be discharged except for just cause. The provisions of this Section shall not apply to personnel reductions for lack of work or to effect economies.

In the event an employee with seniority is discharged without just cause, he shall be reinstated without loss of pay, seniority, or other benefit, subject to the following limitations:

(a) The Union must within two (2) weeks of the discharge file the grievance at the Third Step of the grievance procedure of Article XI or the grievance shall be automatically closed.

(b) If settlement at this level is not reached within one week, the matter must be submitted to arbitration upon the request of the Union, which request must be made in writing to the Company within said week, or the grievance shall be automatically closed.

(c) If the matter is submitted to arbitration, the parties shall select the arbitrator in accordance with the procedure set forth in Article XI, and make a good faith effort to place the matter on the arbitrator's schedule, for decision, all within a period of 30 days from the date of the request for arbitration. This period of 30 days may be extended by mutual agreement.

(d) In case of reinstatement, the total back-pay award allowable shall be limited to the full-time regular pay of the employee for the period he was off the payroll or for the period ending thirty (30) days after the arbitration hearing, whichever period is shorter, less any gross earnings or unemployment compensation received or earned during such period.

The employee shall make every reasonable effort to minimize his damages by seeking and obtaining gainful employment during

the period he is off the payroll, and any back-pay award shall not include any time during which the employee has failed to meet this obligation. If the employee is disabled by sickness or injury during any part of such period, his rights during such period of disability shall be limited to the disability benefits to which he would have been entitled if he had remained on the payroll.

(e) If the procedure above outlined is not followed as to a particular discharge or if the grievance as to such discharge is automatically closed in accordance with such procedure, neither the Union nor the individual employee who was discharged shall have the right to challenge such discharge, or the right to any back-pay award or other relief hereunder.

(f) The arbitrator shall have latitude to modify a discharge to a layoff, for which no compensation shall be awarded.

**Section 2** - The Company agrees that no employee with seniority shall be demoted or discharged for general inefficiency or low standard of work unless he has been warned of his shortcomings in advance of such demotion/discharge to afford him a reasonable opportunity to correct his performance to a level that meets written expectations. This limitation shall not prevent the Company from exercising it's right to discipline any employee for just cause, up to and including termination.

The Company will review the issue of the discharge with the Union in advance of the discharge meeting. The discharge letter will state the specific reason for the termination. The employee, Chief Steward and Business Agent will be provided with a copy of the discharge letter. The employee's previous record of disciplinary action, if applicable, will be included with the letter.

Reprimand letters more than two (2) years old shall not be used in discharge arbitration cases.

**Section 3** - Except in cases mentioned in the preceding Section, an employee whose name is on the seniority list shall be given


written notice on dismissal, stating the reasons for his termination two (2) weeks before the termination of his pay. A copy of any such notice shall be delivered to the Union without delay.

**Section 4** - When the Company, for any reason, elects to reduce the number of employees in any job classification, department or shift and to then either reassign those affected to other work or to effect a layoff from the plant, the following rules shall apply:

(a) Certain jobs requiring special skills, training and/or experience have been identified as (RB) (Restricted Bumping) jobs. Employees holding title to these jobs will be restricted from being bumped by others unless they too possess the full skills and range of abilities to perform that work by virtue of their past experience and work in the same classification(s).

Not withstanding the above, the employee may bump the least senior employee in any Code 09 (RB) classification of their choice, if he/she has the appropriate seniority and qualifications. If there are no employees in a Code 09 classification the least senior employee in a Code 10 (RB) classification of their choice may be bumped, if the employee exercising the option has the appropriate seniority and qualifications. The maximum number of employees that may be bumped in an RB classification shall be twenty percent (20%) of a section/department.

(b) Other than (RB) jobs, seniority, and qualifications, as contained in the job descriptions shall be the primary consideration in classification reductions, layoffs from the plant, and the bumping process.

For maintenance positions that are non-(RB), seniority shall be the primary consideration in classification reductions, layoff from the plant, and the bumping process consistent with the understanding that an employee must possess the necessary ability and qualifications to perform any job to which they elect to move.

Employees who are reduced or bumped in a reduction in force will first bump within the employee's own job classification and department. If the employee cannot so bump, then the employee may exercise his/her seniority plant wide, provided that should the employee elect to bump into a classification and department where there is more than one position, he/she may bump only the least senior employee in that classification and department.

(c) Recall from layoff will be in reverse order subject to other applicable provisions governing recall, such as the severance pay provision of Article XIII.

The above provisions serve to outline the broad manner in which general staffing adjustments are to be made. However, should business conditions necessitate a significant reduction in the number of employees, and the "bumping" procedures as outlined above would materially affect the company's ability to produce critical products, the Company and Union agree to meet and confer. The purpose of these discussions would be to develop alternative solutions that would allow the company more flexibility to continue to produce it's critical products. Both parties recognize their commitments to seniority and the qualifications needed to continue producing the critical products.

**Section 5** - Employees who claim a dependency related to drugs or alcohol during the disciplinary procedure will be eligible to participate in rehabilitation in accordance with current practices but may be accountable for their job performance or violation of company rules. Such accountability may subject him/her to discipline up to and including termination.

# ARTICLE XI

## GRIEVANCE PROCEDURE

Should differences arise between the Company and the Union, or any of the employees covered by this Agreement relative to any provision of this Agreement or its application, an earnest effort shall be made to settle such differences in the following manner:

### Section 1 - (Step 1 Oral)

An employee believing he has cause for a grievance shall discuss the matter with his supervisor. At the employee's option, his Union Steward may be requested to participate in such discussion and a meeting will be set for that purpose as soon as it is reasonable and practical to do so. Upon notification by the supervisor, the Steward will be relieved from his regular duties to take part in the discussion of the grievance. Every reasonable effort shall be made to settle problems promptly at this point through discussions.

### Section 2 - (Step 2 Written)

(a) If the matter is not disposed of in the oral first step discussion, the grievance may be reduced to writing on an "Employee Grievance" form. Such written grievance must state with reasonable clarity the nature of the grievance and the basis for the claimed contractual violation and the remedy requested. Written grievances at the Second Step must be signed by the aggrieved employee(s) and presented to the Plant Human Resources Office within ten (10) days from the date the employee(s) should have known about the event giving rise to the claim.

(b) Within five (5) working days from the date of this appeal exclusive of Saturdays, Sundays and holidays, a meeting shall be held to discuss such grievance(s).

(c) This meeting will normally be attended by the Chief Steward, Assistant Chief Steward or a member of the Union Grievance Committee, Department Steward, the aggrieved employee,

39



the department supervisor, the Labor Relations Manager, and one (1) other representative of the Company or their designated representatives.

(d) The Company shall present the Chief Steward and Business Agent with a written disposition within five (5) working days exclusive of Saturdays, Sundays and holidays from the date of the Second Step meeting.

## Section 3 - (Step 3 Pre-Arbitration)

(a) If the Union is not satisfied with the Company's Second Step disposition, it may appeal the grievance to the Third Step.

(b) Such appeal must be in writing to the Manager Labor Relations, or designee, within five (5) days from the date of the Company's Second Step disposition, exclusive of Saturdays, Sundays and holidays.

(c) Within five (5) working days exclusive of Saturdays, Sundays and holidays from the date of written appeal a meeting shall be held to discuss such grievance(s).

(d) This meeting will normally be attended by the Business Agent, Chief Steward, Assistant Chief Steward, up to three (3) additional members of the Union's Grievance Committee, the Department Steward, the aggrieved employee, the department supervisor, the Labor Relations Manager, the Department Head and up to two (2) other representatives of the Company or their designated representatives.

(e) The Union's Grievance Committee shall have the power to withdraw any grievance and the Company's Committee the power to adjust any grievance.

(f) The Company shall give its decision in writing to the Chief Steward and Business Agent within five (5) working days exclusive of Saturdays, Sundays and holidays from the date of the Third Step meeting.

## Mediation

Prior to arbitration, either party may request to meet with a mediator. Where mediation is mutually agreed to by the parties, both parties must agree to submit the specific issue(s) and all relevant information and documents. The Company and the Union will share any cost for such mediation equally.

## Section 4 (Step 4 - Arbitration)

If any grievance as defined in Section 1 of the grievance procedure is not satisfactorily settled in the first three (3) steps of the grievance procedure, the Union may within thirty (30) calendar days following the date of the Company's Third Step disposition, or any mutually agreed upon extension, give written notice to the Labor Relations Manager of its desire to arbitrate. Such notice will state the specific issue(s) which are to be arbitrated. The Union may request that the grievance be considered in either the Regular or Expedited Arbitration Procedure, and the grievance shall then be referred to an arbitrator whose decision shall be final and binding upon the parties as follows:

## Regular Arbitration

(a) A neutral Arbitrator shall be chosen by one of the following methods:

  1. Mutual agreement between the parties.

  2. The Company and the Union shall jointly request the American Arbitration Association to submit a panel of seven (7) arbitrators in accordance with its rules and practices. Either the Union or Company may reject this panel of arbitrators and may request another panel of seven arbitrators from the American Arbitration Association. The Arbitrator will be chosen by alternate elimination by one of the parties striking a name followed by the other party until one remains. That person shall be the Arbitrator and the first striking shall be determined by lot.



(b) Only grievances on behalf of the Union and its members and claiming relief for violations of specific provisions of this Agreement may be appealed by the Union to arbitration. The Company may submit an issue to arbitration for the purpose of agreement clarification or to seek relief and appropriate remedy for violations of specific provisions of this Agreement.

(c) The arbitration shall be conducted and administered pursuant to the voluntary rules of the American Arbitration Association.

(d) All salaries and expenses as may be incurred by the Arbitrator shall be borne equally by the parties.

(e) Any dispute as to whether or not a grievance or issue is properly before the Arbitrator shall be determined by the Arbitrator.

(f) The Arbitrator shall have no power to amend, add, alter, ignore, change or in any way modify any provision(s) of this Agreement. His decision shall not exceed the expressed terms of this Agreement.

(g) Within these limitations, the Arbitrator may award to either party the remedy and relief he considers appropriate to the circumstances.

**Expedited Arbitration**

(a) The Company shall have three (3) calendar days to consider the Union's request for Expedited Arbitration and to either agree to proceed in that manner or to deny that request and divert the grievance to the Regular Arbitration process.

(b) Where expedited arbitration is mutually agreed to by the parties, the following hearing procedures and rules shall apply:

    1. The parties (Plant Labor Relations and Local 6 Business Agent) will attempt to agree upon the selection of the Arbitrator. Failure to reach agreement will result in the

42

Arbitrator being appointed by the American Arbitration Association in accordance with its expedited rules and procedures.

2. The hearing will be scheduled no later than thirty (30) days following the date of submission.

3. The hearing shall be informal.

4. No briefs shall be filed or transcripts made.

5. The Company's case shall be presented by a representative designated by the Company, and the Union's case by a representative designated by the local Union.

6. The arbitrator shall have no power to amend, add, alter, ignore, change or modify any provision of the Collective Bargaining Agreement. His decision shall in no way exceed the authority granted him by the expressed provisions contained in this Agreement, but within this limitation the arbitrator shall have the power to award to either party the remedies he considers appropriate to the circumstances.

(c) The arbitrator may issue a bench decision at the hearing but in any event he shall render his decision within fifteen (15) calendar days after the conclusion of the hearing. His decision shall be based on the record developed by the parties before and at the hearing and shall include a brief written explanation of the basis for his conclusion. The arbitrator's decision shall be final and binding on the parties.

(d) Salaries and expenses which may be incurred by the impartial arbitrator and the administrative fees of the American Arbitration Association for coordinating this procedure, shall be equally borne by the Company and the Union.

(e) The American Arbitration Association shall coordinate and fix a mutually convenient time and place for the holding of the



hearing, the notice of which must be given at least twenty-four (24) hours in advance. Such notice may be given orally.

(f) Any grievance appealed to this Expedited Labor Arbitration procedure must be confined to issues which do not involve novel problems and which have limited contractual significance or complexities.

(g) Decisions by the arbitrator in this Expedited Labor Arbitration Procedure shall be applicable to the settlement of that grievance only and shall not establish precedent for any subsequent grievance activity nor contractual obligation. These decisions will not be cited nor considered pertinent to the later resolution of any subsequent grievance or arbitration matter.

(h) All other questions pertaining to this procedure shall be governed in accordance with the American Arbitration Association Expedited Arbitration rules.

**Section 5 (Miscellaneous Grievance Procedure Rules)**

(a) Settlements reached at either the First or Second Steps of the procedure shall be applicable to only that grievance and shall not in any way be binding upon the parties with respect to precedent setting considerations.

(b) Third Step dispositions shall be final and binding upon the parties unless specifically stated to be made "without prejudice."

(c) The retroactive adjustment of any grievance covering any period prior to its presentation at Step 1 shall be by mutual agreement only.

(d) In the case of an overpayment by the Company of which the employee was unaware, the Company will attempt to work out a mutually acceptable repayment schedule prior to invoking

legal deductions. The repayment schedule will be agreed to in writing by the Company and the employee.

(e) Any grievance not appealed by the Union to the next step of the procedure within the prescribed time limits shall be deemed settled on the basis of the Company's last disposition.

(f) Failure by the Company to meet the time limits prescribed for dispositions shall result in that grievance(s) automatically progressing to the next step of the procedure.

(g) The time limits applicable to each step of the grievance procedure may be extended at any time by mutual agreement.

(h) Witnesses may be called to participate in Second and Third Step discussions for the purpose of furthering the parties understanding of the case at hand.

(i) It is understood that the Union's Business Agent may participate at Second and Third Step meetings.

(j) In cases involving disciplinary layoff, suspension or discharge, the Company shall notify the Chief Steward or his designated representative of the circumstances surrounding such case(s).

(k) Grievances involving discharge may be initiated by the Union directly at the Third Step of the procedure.



1   JEROME SCHREIBSTEIN (SBN: 154051)
    LAW OFFICE OF JEROME SCHREIBSTEIN
2   Embarcadero Center West
    275 Battery Street, Eighteenth Floor
3   San Francisco, CA 94111
    Telephone: (415) 875-3355
4   Facsimile: (415) 358-9885

5   Attorneys for Defendants
    BAYER HEALTHCARE LLC, BAYER
6   CORPORATION AND DAVID PANVELLE

7

8              UNITED STATES DISTRICT COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10

11  DONNIE JONES,                    )  CASE NO.
                                     )
12            Plaintiff,             )  DECLARATION OF DAVID
                                     )  PANVELLE IN SUPPORT OF
13       vs.                         )  PETITION AND NOTICE OF
                                     )  REMOVAL OF ACTION UNDER 28
14  BAYER HEALTHCARE LLC, BAYER      )  U.S.C. § 1441(b) (Federal Question and
    CORPORATION, DAVID PANVELLE, DOES)  Diversity Jurisdiction)
15  1-50, inclusive,                 )
                                     )
16            Defendants.            )
                                     )
17

18       I, David Panvelle, declare and state as follows:

19       1.    The below is true and correct of my own personal knowledge or, to the extent

20  indicated, I am informed and believe and on that basis aver it to be true, and, if called upon, I

21  could and would competently testify thereto.

22       2.    I began employment for Bayer HealthCare LLC ("Bayer") on or about October

23  16, 2006. I am employed as a Manufacturing Supervisor and am responsible for overseeing day-

24  to-day operations in the Media/Fermentation Department housed in Building 55 of Bayer's

25  Berkeley, California facility.

26       3.    I am not an owner or operator of Bayer or member of any Board of Directors. I

27  have no ownership interest in Bayer. I do not have the authority to hire and fire Bayer

28  employees and I did not terminate the employment of Donnie Jones, the plaintiff in this matter. I

                            - 1 -
    DECLARATION OF DAVID PANVELLE IN SUPPORT OF PETITION AND NOTICE OF REMOVAL



1   am informed and believe that the termination was executed by Bayer Human Resources in

2   conjunction with senior management.

3           4.      I never had any contractual relationship with Mr. Jones and I never entered into

4   any contract with him in relation to his Bayer employment.  At no time was Mr. Jones ever my

5   employee and I was never Mr. Jones' employer.

6           5.      I have never been formally served with a Summons and Complaint in this lawsuit.

7           I declare under penalty of perjury that the foregoing is true and correct.  Executed this

8   28th day of April, 2008 in Berkeley, California.

9

10                                                  David Panvelle
                                                    David Panvelle
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICE OF JEROME SCHREIBSTEIN
ATTORNEYS AT LAW
EMBARCADERO CENTER WEST
275 BATTERY STREET, TWENTIETH FLOOR
SAN FRANCISCO, CA 94111
(415) 875-3355

- 2 -

**DECLARATION OF DAVID PANVELLE IN SUPPORT OF PETITION AND NOTICE OF REMOVAL**
OF ACTION UNDER 28 U.S.C. § 1441(b)

ORIGINAL
FILED

08 APR 29 PH 3: 54

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1  JEROME SCHREIBSTEIN (SBN: 154051)
   LAW OFFICE OF JEROME SCHREIBSTEIN
2  Embarcadero Center West
   275 Battery Street, Eighteenth Floor
3  San Francisco, CA 94111
   Telephone: (415) 875-3355
4  Facsimile: (415) 358-9885

E-filing

5  Attorneys for Defendants
   BAYER HEALTHCARE LLC, BAYER
6  CORPORATION AND DAVID PANVELLE

SC

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10                  CV 08          2219

11  DONNIE JONES,                  )  CASE NO.
                                   )
12              Plaintiff,         )  **APPENDIX OF CASE WITHOUT**
                                   )  **OFFICIAL CITATION ON PETITION**
13      vs.                        )  **AND NOTICE OF REMOVAL OF**
                                   )  **ACTION UNDER 28 U.S.C. § 1441(b)**
14  BAYER HEALTHCARE LLC, BAYER    )  **(Federal Question and Diversity**
    CORPORATION, DAVID PANVELLE, DOES )  **Jurisdiction)**
15  1-50, inclusive,               )
                                   )
16              Defendants.        )
                                   )
17  _____)

18      Defendants Bayer HealthCare LLC and Bayer Corporation hereby submits their

19  Appendix of Case Without Official Citation Submitted on Petition and Notice of Removal of

20  Action under 28 U.S.C. § 1441(B):

21
    *Gaw v. Arthur Gallagher & Company*
22    2008 U.S. Dist.LEXIS 9188 (N.D.Cal. 2008) ..............................................................A

23
    Dated: April 29, 2008      LAW OFFICE OF JEROME SCHREIBSTEIN
24

25

26                             By
                                  Jerome Schreibstein
27                             Attorneys for Defendants
                               BAYER HEALTHCARE LLC, BAYER
28                             CORPORATION and DAVID PANVELLE

LAW OFFICE OF JEROME SCHREIBSTEIN
ATTORNEYS AT LAW
EMBARCADERO CENTER WEST
275 BATTERY STREET, TWENTIETH FLOOR
SAN FRANCISCO, CA 94111
(415) 875-3355

LOJS/1050538/5621259v.1

# EXHIBIT A



LEXSEE

TAMMY GAW, Plaintiff, v. ARTHUR J. GALLAGHER & COMPANY, et al., Defendants.

No. C 07-5105 SI

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

*2008 U.S. Dist. LEXIS 9188*

January 9, 2008, Decided
January 9, 2008, Filed

**COUNSEL:** [*1] For Tammy Gaw, Plaintiff: Robert Herbert Bohn Snr., LEAD ATTORNEY, Bohn & Bohn LLP, San Jose, CA.

For Arthur J. Gallagher & Co., Joseph Inge, Daniel J. McNamara, Defendants: Eden Edwards Anderson, LEAD ATTORNEY, Kari Erickson Levine, Seyfarth Shaw LLP, San Francisco, CA.

**JUDGES:** SUSAN ILLSTON, United States District Judge.

**OPINION BY:** SUSAN ILLSTON

**OPINION**

**ORDER DENYING PLAINTIFF'S MOTION FOR REMAND**

On December 21, 2007, the Court held a hearing on plaintiff's motion for remand. After consideration of the parties' papers and arguments, the Court DENIES plaintiff's motion.

**BACKGROUND**

On July 31, 2007, plaintiff Tammy Gaw filed a complaint in San Francisco Superior Court against her former employer, Arthur J. Gallagher & Company ("Gallagher"), and two Gallagher employees, Joseph Inge and Daniel McNamara. Plaintiff amended the complaint on August 22, 2007, and defendants filed a notice of removal within 30 days of service of the amended complaint.

Plaintiff alleges three causes of action under California law: (1) retaliation against all defendants; (2) wrongful termination against Gallagher; and (3) intentional infliction of emotional distress against all defen-

dants. Plaintiff alleges that during the course of her employment [*2] with Gallagher, she witnessed her supervisor, defendant Inge, engaging in unethical and illegal business practices in securing new accounts and handling client accounts for Gallagher, including but not limited to violations of *California Insurance Code § 791 et seq.* First Amended Complaint P 11. Plaintiff alleges that she reported Inge's unethical and illegal business practices to defendant McNamara, and that in response McNamara informed plaintiff that if she did not resign, her employment would be terminated immediately. *Id.* PP 13-14. Plaintiff alleges that she was forced to resign her employment. *Id.* P 15.

Defendants removed this action on the basis of diversity jurisdiction. Gallagher is an Illinois corporation, while defendants Inge and McNamara are California residents. Defendants contend that plaintiff has fraudulently joined Inge and McNamara. Plaintiff has moved to remand this case to state court, and also seeks fees and costs associated with the remand motion.

**LEGAL STANDARD**

A suit filed in state court may be removed to federal court if the federal court would have had original subject matter jurisdiction over that suit. *28 U.S.C. § 1441(a); Snow v. Ford Motor Co., 561 F.2d 787, 789 (9th Cir. 1977).* [*3] A motion to remand is the proper procedure for challenging removal. Remand to state court may be ordered either for lack of subject matter jurisdiction or for any defect in removal procedure. *See 28 U.S.C. § 1447(c).* The court may remand *sua sponte* or on motion of a party, and the party who invoked the federal court's removal jurisdiction has the burden of establishing federal jurisdiction. *See Emrich v. Touche Ross & Co., 846 F.2d 1190, 1195 (9th Cir. 1988)* (citing *Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97, 42 S. Ct. 35; 66 L.*


*Ed. 144 (1921))*. The removal statute is strictly construed against removal jurisdiction and any doubt is resolved in favor of remand. *Boggs v. Lewis, 863 F.2d 662, 663 (9th Cir. 1988); Libhart v. Santa Monica Dairy Co., 592 F.2d 1062, 1064 (9th Cir. 1979)*.

While considering a motion to remand, "[a] district court may disregard a non-diverse party named in the state court complaint and retain federal jurisdiction if the non-diverse party is joined as a sham or if the joinder is fraudulent." *Plute v. Roadway Package System, Inc., 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001)* (citing *Farias v. Bexar County Bd. of Trustees, 925 F.2d 866, 871 (5th Cir. 1991))*. Joinder is considered fraudulent [*4] "'[i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state.'" *Plute, 141 F. Supp. 2d at 1008* (quoting *McCabe v. General Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987))*. There is a presumption against finding fraudulent joinder, and the defendants claiming fraudulent joinder have the burden of persuasion. *Plute, 141 F. Supp. 2d at 1008*.

## DISCUSSION

Plaintiff's first cause of action for "retaliation," alleges that "[t]he retaliatory action taken against Plaintiff by Defendants was in violation of California public policy to protect privacy rights of insureds and to protect the public's need for fairness in insurance information practices pursuant to *Insurance Code § 791 et seq.*" FAC P 18.

Defendants contend that as a matter of law, plaintiff cannot maintain this claim against the individual defendants. [1] To the extent that this claim is analyzed as one for retaliatory termination in violation of public policy, defendants are correct. Plaintiff cites numerous cases for the proposition that an individual can bring a common law claim for retaliatory discharge in violation of public policy. See, [*5] *e.g., Tameny v. Atlantic Richfield Co., 27 Cal. 3d 167, 164 Cal. Rptr. 839, 610 P.2d 1330 (1980); Parada v. City of Colton, 24 Cal. App. 4th 356, 29 Cal. Rptr. 2d 309 (1994); Collier v. Superior Court, 228 Cal. App. 3d 1117, 279 Cal. Rptr. 453 (1991)*. However, as defendants correctly note, none of these cases hold that individual employees may be held liable under such a claim, and instead the cases generally discuss the "employer's" liability for retaliatory discharge. *See Tameny, 27 Cal. 3d at 175*. Furthermore, although plaintiff *does not* allege a claim for statutory retaliatory discharge, the Court notes that such claims may only be brought against an employer. *See Cal. Labor Code § 1102.5*. As the California Supreme Court has noted in a different context, when the statute that gives rise to a claim does not impose individual liability, "[i]t would be absurd to . . . then allow essentially the same action un-

der a different rubric [i.e., under the common law]." *Reno v. Baird, 18 Cal. 4th 640, 664, 76 Cal. Rptr. 2d 499, 957 P.2d 1333 (1998)* (refusing to recognizing common law claim for wrongful termination in violation of public policy against individual defendants where FEHA did not itself impose liability on individual employees for discrimination).

[1] Plaintiff concedes that her claim for intentional [*6] infliction of emotional distress against the individual defendants fails unless she can also assert an employment-related claim against these defendants. *See* Reply at 2 P C; *see also Phillips v. Gemini Moving Specialists, 63 Cal. App. 4th 563, 577, 74 Cal. Rptr. 2d 29 (1998)* (plaintiff's exclusive remedy for work-related emotional distress is through workers' compensation system unless plaintiff has tort cause of action for wrongful termination in violation of public policy or in violation of express statute).

None of the other cases cited by plaintiff holds that an individual may be held liable for retaliatory termination in violation of public policy. *See, e.g., Wyatt v. Union Mortgage Co., 24 Cal.3d 773, 157 Cal. Rptr. 392, 598 P.2d 45 (1979)* (plaintiff brought action against mortgage loan broker, affiliated corporations, principal shareholder and corporations' officers and directors for fraud and breach of fiduciary duties); *United States Liab. Ins. Co. v. Haidinger-Hayes, 1 Cal. 3d 586, 83 Cal. Rptr. 418, 463 P.2d 770 (1970)* (plaintiff corporation sued corporation's general agent and agent's president for negligence); *Walrath v. Sprinkel, 99 Cal. App. 4th 1237, 121 Cal. Rptr. 2d 806 (2002)* (individual supervisor may be held liable under FEHA for retaliation, but not discrimination, because [*7] statute imposed liability on "employer" and "person" for retaliation). These cases discuss individual liability in wholly inapposite contexts, and are of no use to plaintiff here. [2]

[2] At the hearing, the Court questioned plaintiff's counsel regarding whether plaintiff was alleging a claim directly under *California Insurance Code Section 791.06*, which is referenced in the first cause of action. This Section imposes certain obligations on insurance institutions and agents regarding the use and disclosure of personal or privileged information. Plaintiff's counsel stated that plaintiff was not alleging a claim directly under *Section 791.06*, but rather that this Section provides the predicate "tort" for plaintiff's retaliatory discharge claim. Plaintiff has not cited any authority supporting such a claim, and the Court declines to recognize this apparently novel theory.

2008 U.S. Dist. LEXIS 9188, *

Accordingly, the Court concludes that plaintiff has not stated a claim against the individual defendants, and that these defendants must be dismissed from the lawsuit. Because plaintiff has not alleged claims against the individual defendants, defendants properly removed this action on the basis of diversity jurisdiction.

## CONCLUSION

For [*8] the foregoing reasons, the Court hereby DENIES plaintiff's motion for remand. (Docket No. 7). Plaintiff shall file an amended complaint that does not allege claims against the individual defendants no later than **January 18, 2008.**

**IT IS SO ORDERED.**

Dated: January 9, 2008

/s/ Susan Illston

SUSAN ILLSTON

United States District Judge

********** Print Completed **********

Time of Request: Tuesday, April 08, 2008  16:43:41 EST

Print Number:    1823:85976547
Number of Lines: 138
Number of Pages:

119T9N

Send To:   TANCOR, MARIANNE
           MARIANNE TANCOR
           2590 CEDAR ST
           BERKELEY, CA 94708-1932

1 | JEROME SCHREIBSTEIN (SBN: 154051)
LAW OFFICE OF JEROME SCHREIBSTEIN
2 | Embarcadero Center West
275 Battery Street, Eighteenth Floor
3 | San Francisco, CA 94111
Telephone: (415) 875-3355
4 | Facsimile: (415) 358-9885

5 | Attorneys for Defendants
BAYER HEALTHCARE LLC, BAYER
6 | CORPORATION AND DAVID PANVELLE

7

8

### SUPERIOR COURT OF THE STATE OF CALIFORNIA

9

### FOR THE COUNTY OF ALAMEDA

10

11 | DONNIE JONES,                                    )   CASE NO. RG 08380328
                                                    )
12 |                          Plaintiff,             )
                                                    )   **PROOF OF SERVICE**
13 |                                                 )
                                                    )
14 |              vs.                                )
                                                    )
15 | BAYER HEALTHCARE LLC, BAYER                     )
CORPORATION, DAVID PANVELLE, DOES                   )
16 | 1-50, inclusive,                                )
                                                    )
17 |                          Defendants.            )
                                                    )
18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE

**LAW OFFICE OF JEROME SCHREIBSTEIN**
ATTORNEYS AT LAW
EMBARCADERO CENTER WEST
275 BATTERY STREET, TWENTIETH FLOOR
SAN FRANCISCO, CA 94111
(415) 875-3355

ENDORSED
FILED
ALAMEDA COUNTY

APR 30 2008

CLERK OF THE SUPERIOR COURT
BY DOROTHY WILDE

1

## PROOF OF SERVICE

2      I am a resident of the State of California, over the age of eighteen years, and not a party
to the within action. My business address is: Gordon & Rees LLP 275 Battery Street, Suite
3      2000, San Francisco, CA  94111.  On the below-mentioned date, I served the within documents:

4      **NOTICE TO PLAINTIFF AND TO THE CLERK OF THE ALAMEDA COUNTY
SUPERIOR COURT OF REMOVAL OF ACTION TO FEDERAL COURT**

5

6      ☐    by transmitting via facsimile the document(s) listed above to the fax number(s) set
forth below on this date before 5:00 p.m.

7      ☒    by placing a true copy thereof enclosed in a sealed envelope, at a station designated
for collection and processing of envelopes and packages for Overnight Delivery by
8           Federal Express as part of the ordinary business practices of Gordon & Rees LLP
described below, addressed as follows:

9

10     ☐    by placing the document(s) listed above in a sealed envelope with postage thereon
fully prepaid, in United States mail in the State of California at San Francisco,
addressed as set forth below.

11

12     Andrew W. Shalaby
7525 Leviston Ave.
13     El Cerrito, CA 94530
P: (510) 528-8500
14     F: (510) 528-2412

15     I am readily familiar with the firm's practice of collection and processing correspondence
for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same
16     day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on
motion of the party served, service is presumed invalid if postal cancellation date or postage
17     meter date is more than one day after the date of deposit for mailing in affidavit.

18     I declare under penalty of perjury under the laws of the State of California that the above
19     is true and correct.

20     Executed on April 30, 2008, at San Francisco, California.

21

22                                                          Molly Zahner

23

24

25

26

27

28

LAW OFFICE OF JEROME SCHREIBSTEIN
ATTORNEYS AT LAW
EMBARCADERO CENTER WEST
275 BATTERY STREET, TWENTIETH FLOOR
SAN FRANCISCO, CA 94111
(415) 875-3355

CHRS/1043722/5621321v.1

- 2 -