1  JEROME SCHREIBSTEIN (SBN: 154051)
   LAW OFFICE OF JEROME SCHREIBSTEIN
2  Embarcadero Center West
   275 Battery Street, Eighteenth Floor
3  San Francisco, CA 94111
   Telephone: (415) 875-3355
4  Facsimile: (415) 358-9885

5  Attorneys for Defendants
   BAYER HEALTHCARE LLC, BAYER
6  CORPORATION AND DAVID PANVELLE

7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

11 DONNIE JONES,                          )  CASE NO. CV 08-2219 SC
                                          )
12           Plaintiff,                   )  **APPENDIX OF CASE WITHOUT**
                                          )  **OFFICIAL CITATION ON**
13      vs.                               )  **DEFENDANTS' MOTION TO DISMISS**
                                          )  **AND MOTION TO STRIKE**
14 BAYER HEALTHCARE LLC, BAYER            )
   CORPORATION, DAVID PANVELLE, DOES )    Date:       July 11, 2008
15 1-50, inclusive,                       )  Time:       10:00 a.m.
                                          )  Courtroom:  1, 17th Floor
16           Defendants.                  )  Judge: Hon. Samuel Conti
                                          )
17 _____

18

19      Defendants Bayer HealthCare LLC, Bayer Corporation and David Panvelle hereby

20 submit their Appendix of Case Without Official Citation Submitted on their Motion to Dismiss

21 and Motion to Strike:

22 *Munoz v. National Homecare Systems*
     1991 U.S. Dist.LEXIS 14987 (N.D.Cal. 1991) ........................................................................A
23

24 Dated: June 6, 2008                        LAW OFFICE OF JEROME SCHREIBSTEIN

25

26                                            By: /S/
                                                  _____
27                                                Jerome Schreibstein
                                                  Attorneys for Defendants
28                                                BAYER HEALTHCARE LLC, BAYER
                                                  CORPORATION and DAVID PANVELLE

LOJS/1050538/5621259v.1

APPENDIX OF CASE WITHOUT OFFICIAL CITATION ON DEFENDANTS' MOTION TO DISMISS
AND MOTION TO STRIKE; CASE NO. CV 08-2219

# EXHIBIT A

LEXSEE

REMEDIOS MUNAR, Plaintiff, v. NATIONAL HOMECARE SYSTEMS, a Div. of Wright Marketing, Inc. et al., Defendants

No. C-91-0366-RFP

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

1991 U.S. Dist. LEXIS 14987

October 3, 1991, Decided
October 3, 1991, Filed

**JUDGES:** [*1] Robert F. Peckham, United States District Judge.

**OPINION BY:** PECKHAM

**OPINION**

ORDER

INTRODUCTION

The parties come before the court on defendants' motion for summary judgment in this matter. Defendants claim that the allegations in the complaint are wholly barred by the statute of limitations.

BACKGROUND

On or about January 16, 1990, *pro se* plaintiff Remedios Munar was terminated by National Homecare Systems ("NHS"). Complaint para. 12(f). Plaintiff claims that she was discharged by NHS for "'lighting candles in a Church' and 'giving a massage' . . . to a client of NHS not assigned to her care by NHS." Munar Decl. in Support of Motion to Remand, at 5.

On January 15, 1991, plaintiff sued NHS and certain individual defendants in state court for breach of contract, tortious breach of the covenant of good faith and fair dealing, intentional infliction of emotional distress, fraud and deceit, tortious inducement of breach of contract, defamation, and specific performance. Plaintiff also sued defendant Hospital and Health Care Worker's Union Local 250 ("Union") and certain individual defendants for breach of contract, tortious breach of the covenant of good faith and fair dealing, intentional infliction [*2] of emotional distress, defamation, and specific performance.

A collective bargaining agreement ("CBA") exists between NHS and the Union. Plaintiff admits that she was a member of the Union. However, plaintiff alleged that she was party to an implied-in-fact contract with NHS for continuous employment, terminable only upon good cause, which was independent of the CBA between the NHS and the Union.

Plaintiff moved to remand the action to state court. We denied this motion, on the ground that the plaintiff's claims were "artfully pleaded" to allege state law violations, when in fact the allegations were preempted by Section 301 of the Labor Management Relations Act ("LMRA"), *29 U.S.C. § 185 (1982).* [1]

1 Section 301(a) of the LMRA provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce, as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

[*3] Defendants now move for summary judgment on the ground that plaintiff's claims are barred by the statute of limitations.

DISCUSSION

A. Statute of Limitations

Suits by an employee against an employer and the union, alleging that the employer had breached a provision of a CBA, and the union had breached its duty of fair representation by mishandling the ensuing griev-

ance-and-arbitration proceedings, are held to the 6-month limitations period taken from Section 10(b) of the National Labor Relations Act, *29 U.S.C. § 160(b)*. *Del Costello v. Teamsters, 462 U.S. 151 (1983)*.

B. Breach of the CBA under Section 301

Munar's claim is a "hybrid section 301 and fair representation claim" of the type that is governed by *Del Costello*. See *Stallcop v. Kaiser Foundation Hospitals, 820 F.2d 1044, 1047 (9th Cir. 1987), cert. denied, 484 U.S. 986 (1987)* (6-month statute of limitations applicable to hybrid section 301 and fair representation claims). As discussed above, we ruled previously against remand, finding that the claims against NHS were, at least in part, governed by section 301, and that the allegations against the Union amounted to [*4] a claim of breach of the duty of fair representation.

All that is required under section 301 is that the suit be based on an alleged breach of contract between an employer and a labor organization and that the resolution of the lawsuit be focused upon and governed by the terms of the contract. *Painting and Decorating Contractors Ass'n v. Painters and Decorators Joint Comm., 707 F.2d 1067, 1071 (9th Cir. 1983), cert. denied, 466 U.S. 927 (1984)*. The preemptive force of Section 301 is so powerful as to displace entirely any state claim which depends on an analysis of the terms of the agreement. *Laws v. Calmat, 852 F.2d 430, 432 (9th Cir. 1988); Stallcop v. Kaiser Foundation Hosp., 820 F.2d at 1048*. The district court's responsibility is to look "beyond the face of the complaint to determine whether the contract claim was in fact a section 301 claim for breach of a collective bargaining agreement 'artfully pleaded' to avoid federal jurisdiction." Order at 4; *Young v. Anthony's Fish Grottos, Inc., 830 F.2d 993, 997 (9th Cir. 1987); Olguin v. Inspiration Consol. Copper Co., 740 F.2d 1468, 1473 (9th Cir. 1984);* [*5] *Laws v. Calmat, 852 F.2d at 432* (if employee attempts to escape Section 301 by alleging only state law violations, employee subject to "artful pleading" doctrine which requires that state law complaint be recharacterized as one arising under the CBA).

Munar alleged that her job was not covered by the CBA, but was governed by a separate employment agreement with NHS. However, the Ninth Circuit has been clear that, where the subject matter of a labor contract is a job position covered by the CBA, any independent agreement of employment can be effective only as a part of the CBA, and a determination of plaintiff's claims necessarily requires an interpretation of that CBA. *Olguin, 740 F.2d at 1474;* accord *Stallcop, 820 F.2d at 1048*. Thus, the CBA controlled and the contract claims were preempted. We found it unnecessary to decide whether each of the other claims against NHS was preempted since pendent jurisdiction was proper. See *Young, 830 F.2d at 999*.

C. Duty of Fair Representation

In essence, plaintiff accuses the Union of a breach of the duty of fair representation. Plaintiff describes the suit filed against [*6] the Union as one alleging that the Union "breached its duty of fair representation". Memo of Points and Authorities in Opposition to Summary Judgment, at 1. A union has a statutory duty fairly to represent all of the employees in its enforcement of the CBA. *Vaca v. Sipes, 386 U.S. 171 (1967)*. A discharged employee's complaint in a state court alleging that a union has arbitrarily, capriciously, and without just or reasonable cause refused to take her grievance to arbitration alleges a breach by the union of the duty grounded in federal statutes, and her cause of action is governed by federal law. *Id.* Under federal law, the only way to support a claim for any damages outside the contract remedies provided by a CBA is by showing breach of the duty of fair representation. *Scott v. Machinists Automotive Trades D. Lodge 190, 827 F.2d 589, 592 (9th Cir. 1987)* (citing *Vaca v. Sipes, 386 U.S. 171, 181-83 (1967)*).

Munar alleges that NHS violated the CBA by terminating her in January 1990, and that the Union failed, among other things to provide full, proper and reasonable representation in all grievance meetings with NHS in January [*7] 1990. "Defendant [Union] breached its duty of fair representation from January 16, 1990 onward." Memo. of Points & Authorities in Opposition to the Motion for Summary Judgment, at 1. However, the state suit was not filed until January 1991. Thus, Munar's claims of breach of the CBA and breach of the duty of fair representation are barred under *Stallcop* and *Del Costello*.

D. Tort Claims

For each claim that is preempted, summary judgment is proper because the claims are time-barred. See *Stallcop, 820 F.2d at 1049*. However, the tort claims must be reviewed separately to determine whether they are preempted, and thus barred by the six-month statute of limitations. If the separate tort claims are not preempted, the court must determine the individual statutes of limitation.

Section 301 of the LMRA preempts claims founded directly on rights created by CBA's, and also claims which are substantially dependent on analysis of a CBA. *Hyles v. Mensing, 849 F.2d 1213, 1215-16 (9th Cir. 1988)*. To determine whether Section 301 preempts a state tort claim, we do not look to how the complaint is cast. Rather, we inquire whether "the claim can be resolved [*8] only by referring to the terms of the CBA."

*Id.* at *1216* (citing *Young v. Anthony's Fish Grottos, Inc., 830 F.2d 993, 999 (9th Cir. 1987)*). If the state tort action confers nonnegotiable state-law rights on employers or employees independent of any right established by contract, the claim is not preempted. *Id.* A state law claim is independent for purposes of Section 301 if "resolution of [it] does not require construing the CBA." *Id.* However, if "evaluation of the toot claim is inextricably intertwined with consideration of the terms of the labor contract," it is preempted. . . " *Id.*

Section 301 does not preempt every public policy claim brought by an employee covered by a collective bargaining agreement. *Young v. Anthony's Fish Grottos, Inc., 830 F.2d 993, 1001 (9th Cir. 1987).* A claim is not preempted if it poses no significant threat to the collective bargaining process and furthers a state interest in protecting the public transcending the employment relationship. *Id.*

Thus, in *Paige v. Henry J. Kaiser Co., 826 F.2d 857, 863 (9th Cir. 1987), cert. denied 486 U.S. 1054 (1988),* [*9] the Ninth Circuit found that an employee's cause of action for wrongful discharge, stemming from his discharge for raising complaints about workplace safety, was not preempted by the LMRA. Similarly, in *Tellez v. Pacific Gas & Elect., 817 F.2d 536 (9th Cir.), cert. denied, 484 U.S. 908 (1987),* the Ninth Circuit decided that where the CBA was silent on work conditions and vague on disciplinary formalities, and did not regulate suspension letters, examination or interpretation of the agreement would not help to resolve Tellez's claim of defamation through a suspension letter. Thus, Tellez's claim was not preempted. Finally, in *Eldridge v. Felec Servs., 920 F.2d 1434 (9th Cir. 1990),* the Ninth Circuit refused to preempt a claim for breach of the implied covenant of good faith where Eldridge claimed that he was discharged in retaliation for filing a worker's compensation claim.

1. Tortious Breach of the Covenant of Good Faith

Plaintiff accuses NHS of tortious breach of the covenant of good faith and fair dealing, by alleging that NHS breached her employment contract. Plaintiff alleges that NHS subjected her to differential standards [*10] of conduct from other employees, denied her fair and full opportunity to respond to grievances filed against her, evaluated her performance in an arbitrary and pretextual manner, colluded with others in maintaining a grievance against her, terminated her without cause, and failed to follow its written personnel policies. Since these allegations require a determination of plaintiff's rights under the CBA, the claim is inextricably intertwined with consideration of the CBA, and is preempted.

2. Intentional Infliction of Emotional Distress

Plaintiff also accuses NHS of intentionally inflicting emotional distress upon her by engaging in extreme and outrageous abuse of authority intended to cause severe emotional distress. Complaint para. 23. In particular, defendants are accused of engaging in an intentional and dishonest course of conduct related to her termination, to create a justification for terminating plaintiff. *Id.* These alleged acts included withholding evidence upon which the grievance was based, refusing access to that evidence, giving plaintiff conflicting reasons for her termination, colluding with persons who brought the grievance against plaintiff, failing to make a [*11] fair and reasonable investigation of the grievance brought against plaintiff. *Id.* para. 23.

Plaintiff claims, in essence, that defendant NHS improperly handled the grievance against her by withholding evidence and information concerning the grievance, and conducting an unfair investigation and hearing. These matters are governed by the CBA. CBA § 24. [2] *Compare with Tellez v. Pacific Gas and Elec. Co., Inc., 817 F.2d 536, 537 (9th Cir. 1987)* (intentional infliction of emotional distress claim not preempted by Section 301 because defamation leading to emotional distress not covered by CBA).

> [2]  Section 6 of the CBA provides that the employer shall have the right to discharge any employee for cause. If, in the opinion of the Union, an employee has been unjustifiably discharged, such discharge is subject to the grievance procedure provided in the CBA. Section 24 of the CBA governs grievance procedure and arbitration. The purpose of the Section is to provide the opportunity or discussion of the request or complaint, and to establish a procedure for the processing and settlement of grievances.

[*12] As in *Hyles v. Mensing,* we must find that these allegations are not based on non-negotiable state law rights and are inextricably intertwined with consideration of the terms of the CBA. 849 F.2d at 1216 (finding that emotional distress claims preempted, where plaintiff alleged that defendants failed to process grievance complaints, filed false reports, and terminated him without cause). Since the CBA, rather than a nonnegotiable state law standard defines the defendants' authority and plaintiffs' rights with regard to the conduct complained of, plaintiffs' claims are not independent of the CBA. *Id.*

3. Fraud and Deceit

Munar alleges that NHS engaged in fraud and deceit, in that they represented to plaintiff that she would not be terminated as an employee of NHS as long as her work was satisfactory. In contravention of this, alleges

Munar, NHS relied on suspect and unverified allegations as the basis for her termination. Munar's claim of fraud and deceit is based upon an interpretation of the CBA, in that it would require the court to determine the terms of her employment. As such, the claim is preempted by Section 301. *See Stallcop, 820 F.2d at 1049.* [*13]

4. Tortious Inducement of Breach of Contract

Plaintiff alleges that the individual defendants interfered with the business and contractual relationship, and conspired to wrongfully deprive plaintiff of her employment. [3] Defendants allegedly had knowledge of the contract and intended to induce NHS to breach the contract.

> 3   We have supplemental jurisdiction over these additional parties. *28 U.S.C. § 1367(a).*

To determine whether defendants wrongfully interfered with plaintiff's employment or caused her discharge, a determination would have to be made as to whether NHS could rightfully discharge plaintiff under the CBA. *Johnson v. Anheuser Busch, Inc., 876 F.2d 620, 624 (9th Cir. 1989).* "Discharge for just cause is a subject governed by the [CBA]. This count is inextricably intertwined with the [CBA] and is preempted by section 301." Id.; *see also, Baylis v. Marriott Corp., 906 F.2d 874, 877 (2nd Cir. 1990)* (since plaintiffs could not establish that defendant tortiously induced [*14] employer to breach without establishing the meaning of the [CBA], their claims of tortious inducement of breach are preempted by the RLA); *Lumber Prod. Indus. v. W. Coast Indust. Rel., 775 F.2d 1042, 1049 (9th Cir. 1985)* (claim that labor consultants' improper interference with bargaining of CBA caused termination of the CBA preempted by NLRA).

5. Defamation

Plaintiff finally alleges that defendant NHS defamed her and that "she is under the cloud of calumny and is known as the a [sic] person who was fired for taking advantage of an old man for monetary gain because defendants and each of them made the charge and caused it to be spread despite the fact that plaintiff was at all material times a competent, honest worker." Complaint para. 38. It appears that Munar's claim is simply that the act of termination, and the reasons given for that termination were defamatory. Since the termination necessitates interpretation of the CBA, the defamation claim in this case is preempted by Section 301.

The instant case is similar to *Scott v. Machinists Automotive Trade D. Lodge 190, 827 F.2d at 594*, in which the Ninth Circuit determined that Scott's defamation [*15] claim was based on facts inextricably intertwined with the grievance machinery of the CBA. *Scott* relied upon *Green v. Hughes Aircraft, 630 F.Supp. 423, 426-27 (S.D.Cal. 1985).*

In a case factually similar to the instant case, a district court held that actions based on allegedly defamatory statements made in the context of disciplinary investigations are automatically preempted by section 301. *Green v. Hughes Aircraft Co., 630 F.Supp. 423, 426-27 (S.D.Cal. 1985).* In *Green* an employee was suspended from her job based on a suspicion that she had stolen a sandwich but investigation led her reinstatement and an apology from the company. *Id. at 426.* She filed a defamation action which was removed to federal court. *Id.* The district court held her claim preempted because the defamatory statements were uttered and published within the context of the incident's initial report and subsequent investigation and thus were central to the rights and procedures under the CBA. *Id.*

Likewise in *Scott,* the allegedly defamatory statements were made in the course of a counseling session and the prearbitration meetings and [*16] investigative hearings. The defamation claim could thus not be evaluated apart from the grievance procedure provided by the CBA, and was properly preempted by section 301.

The instant case is not like *Tellez v. Pacific Gas and Elec. Co., Inc., 817 F.2d 536 (9th Cir. 1987),* in which the Ninth Circuit refused to preempt the defamation claim. In that case, the employer suspended Tellez for purchasing cocaine, and distributed the suspension letter to eleven other managers. The CBA did not provide for such a suspension letter, and determining plaintiff's rights regarding the defamatory letter did not require interpretation of the CBA. Since plaintiff could not pursue a defamation claim under the CBA, the court did not preempt the defamation claim under Section 301.

For all of the above reasons, plaintiff's claims against NHS are all preempted by Section 301, and time-barred. Likewise, plaintiff's claims against the Union amount to an allegation of breach of the duty of fair representation, and are time-barred.

D. The Question of Tolling

Plaintiff argues that her claims are not barred by the six month statute of limitations because the time limitation is tolled where [*17] material facts or evidence are fraudulently withheld.

Plaintiff appears to assert that a TRO issued against her, upon which NHS based her termination, was maliciously withheld for the purpose of denying her access to material facts and information important to her defense of the charges leading to her termination. This "fraud", Munar asserts, was not discovered until January 10,

Case 3:08-cv-02219-SC Document 10-2 Filed 06/06/2008 Page 6 of 7

Page 5

1991 U.S. Dist. LEXIS 14987, *

1991, and thus, she argues, the statute should be tolled until this date.

The six month period generally begins to run when an employee knows or should know of the alleged breach of duty of fair representation by a union. *Gardner v. Intern. Telegraph Employees Local No. 9, 850 F.2d 518, 523 (9th Cir. 1988)* (citing *Galindo v. Stoody Co., 793 F.2d 1502, 1509 (9th Cir. 1986))*. In general, the Section 10(b) limitations period begins to run when the employee "discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged [violation]." *Galindo, 793 F.2d at 1509* (quoting *Howard v. Lockheed-Georgia Co., 742 F.2d 612, 614 (11th Cir. 1984)* (quoting *NLRB v. Don Burgess Construction Co., 596 F.2d 378, 382* [*18] (9th Cir.), cert. denied, 444 U.S. 940 (1979))*.

With regard to NHS, Munar knew or should have known that the contract was breached when she was terminated, allegedly without cause. That was on January 16, 1990.

With regard to the Union, it is generally the case that the six-month period begins to accrue when the employee learns or should have learned of the Union's decision not to file a grievance. *Galindo, 793 F.2d at 1509*. The period will also begin to accrue at any point that the plaintiff knew or should have known of a breach of the duty.

A concise fact summary of this case does not exist. However, plaintiff Munar admits that in February, 1990 the Union withdrew the grievance of plaintiff against National, writing "your termination does not merit arbitration." Memo of Points and Authorities in Opposition to Summary Judgment at 3. Thus, plaintiff's claim against the Union accrued from at least this date.

The statute will toll while good faith attempts are made to resolve that claim through grievance procedures, in cases where the fair representation claim is not based on how a grievance is presented to an arbitrator. Where the fair representation [*19] claim is based on how a grievance is presented to an arbitrator, the statute time accrues when the employee learns of the arbitrator's decision. *Galindo, 793 F.2d at 1510*. This appears to be a case where plaintiff Munar complains of a breach of the duty fair representation based on a failure of the Union to provide her with "full proper and reasonable representation in all grievance meetings with NHS which she attended on January 16 and 25. . . " Complaint para. 60(C). It appears that Munar was engaged in grievance hearings only for a few days in January, 1990. Thus, whether the statute tolls during this period, or accrues after the outcome of the hearings, the statute of limitations still operates as a bar to plaintiff's claims, since any proceedings were completed in January of 1990.

E. Discrimination

Plaintiff does not allege in a straightforward manner in her Complaint that defendants are guilty of any Constitutional violation. However, plaintiff does allege that emotional distress was intentionally inflicted upon her when defendants took "advantage of the fact that English is plaintiff's second language." Complaint para. 23(D). Plaintiff also alleges that [*20] defendants denied her the "constitutional right to expound her religious beliefs and practice her religion," *id.* para. 12(C), and the "right to freely associate with persons of her ethnic, cultural, and religious background." *Id.* para. 12(E). In her Motion to Remand, plaintiff wrote that she was stating a claim under *Section 8, Article 1 of the California Constitution*.

The CBA contains a prohibition against NHS from committing any discriminatory acts. However, we do not preempt the Constitutional claim, since the claim poses no significant threat to the collective bargaining process and furthers a state interest in protecting the public transcending the employment relationship. *Young, 830 F.2d at 1001)*. Since this is the only remaining claim in this suit, we remand to the state court for adjudication of this issue.

CONCLUSION

Plaintiff's claims of a breach of the CBA, the torts requiring an interpretation of the CBA, and a breach of the duty of fair representation, are governed by a six-month statute of limitations, and are time-barred.

Plaintiff has stated a claim for a violation of the California Constitution. The case is hereby remanded to state court [*21] for adjudication of the remaining state claim.

IT IS SO ORDERED.

107F91

\*\*\*\*\*\*\*\*\*\* Print Completed \*\*\*\*\*\*\*\*\*\*

Time of Request: Thursday, May 15, 2008    13:57:13 EST

Print Number:     1862:92883087
Number of Lines: 282
Number of Pages:

Send To:  NOLTE, MATT
          GORDON & REES
          275 BATTERY ST FL 20
          SAN FRANCISCO, CA 94111-3336