JEROME SCHREIBSTEIN (SBN: 154051)
LAW OFFICE OF JEROME SCHREIBSTEIN
Embarcadero Center West
275 Battery Street, Eighteenth Floor
San Francisco, CA 94111
Telephone: (415) 875-3355
Facsimile: (415) 358-9885

Attorneys for Defendants
BAYER HEALTHCARE LLC, BAYER
CORPORATION AND DAVIS PANVELLE

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNIE JONES,<br><br>        Plaintiff,<br><br>vs.<br><br>BAYER HEALTHCARE LLC, BAYER CORPORATION, DAVIS PANVELLE, DOES 1-50, inclusive,<br><br>        Defendants. | CASE NO. 08 02219 SC<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE**<br><br>Date:        July 11, 2008<br>Time:       10:00 a.m.<br>Courtroom: 1, 17th Floor<br>Judge:      Hon. Samuel Conti |

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................................1

II. ARGUMENT .....................................................................................................................2

    A.    This Court May Properly Consider Matters, Including the Necessarily Intertwined CBA, as Raised by Plaintiff's Complaint Irrespective of Whether Judicial Notice Is Separately Sought and Bayer now Specifically Seeks Such Notice without Prejudice to Plaintiff.................................................2

    B.    Plaintiff's Argument Regarding Supposed Waiver by Bayer of CBA Grievance Provision Is Non-Sensical, Not Legally Supported .............................5

    C.    Plaintiff's Argument that his Claims Do not Require Interpretation of or Are Not Intertwined with CBA Is Disingenuous...............................................................7

    D.    Plaintiff's Citation to Irrelevant Nineteenth Century Authority Cannot Be Read to Negate Entire Effect of the Governing CBA; Plaintiff's Termination Is Facially Covered by the CBA ..........................................................................9

    E.    Plaintiff Raises No Substantive Argument Which Would Salvage Claims Against Individual Defendant, Mr. Panvelle ....................................................11

    F.    There Is no Stand-Alone Due Process Basis for Denying the Defense Motion..........................................................................................................11

    G.    Plaintiff Should not Be Permitted to Amend; Order of Dismissal Should Be as to All Parties with Prejudice.......................................................................12

    H.    Governing Law Clearly Compels the Striking of Plaintiff's Punitive Damages Plea from his Negligence Claim ...................................................13

III. CONCLUSION................................................................................................................14

- i -

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS AND MOTION TO STRIKE (CASE NO. 08 02219 SC)**

## TABLE OF AUTHORITIES

Page

**Cases**

*Abrego v. Dow Chemical Co.*
443 F.3d 676 (9th Cir. 2006) .................................................................................. 2

*Argento v. Airborne Freight Corp.*
933 F.Supp. 373 (S.D.N.Y.1996) ........................................................................... 2

*Armstrong v. Meyers*
964 F.2d 948 (9th Cir. 1992) .................................................................................. 11

*Barber v. Burrows*
51 Cal. 404 (1876) .................................................................................................. 10

*Beliveau v. Caras*
873 F.Supp. 1393 (C.D.Cal. 1995) ......................................................................... 7

*Branch v. Tunnell*
14 F.3d 449 (9th Cir. 1994) .................................................................................... 3

*Carreon v. Capital Cities*
111 F.3d 137, 1997 U.S. App. LEXIS 6694 (9th Cir. 1997) ................................. 13

*Cooperativa de Ahorro y Credito Aguada v. Kidder, Peabody & Co.*
993 F.2d 269 (1st Cir. 1993) ................................................................................... 4

*Cotter v. Daimler Chrysler*
87 F.Supp.2d 746 (E.D. Mich. 2000) ..................................................................... 8

*Del Costello v. Intl. Brd. of Teamsters*
462 U.S. 151 (1983) ............................................................................................... 12

*Faust v. RCA*
657 F.Supp. 614 (M.D.Pa. 1986) ............................................................................ 8

*Galbraith v. County of Santa Clara*
307 F.3d 1119 (9th Cir. 2002) ................................................................................ 3

*Garley v. Sandia Corp.*
236 F.3d 1200 (10th Cir. 2001) .............................................................................. 2

*Hines v. Anchor Motor Freight, Inc.*
424 U.S. 554 (1976) ............................................................................................... 9

*In re Delorean Motor Co.*
991 F.2d 1236 (6th Cir. 1993) ................................................................................ 7

*In re: Unumprovident Corp. Securities Litigation*
396 F.Supp.2d 858 (E.D.Tenn. 2005) ..................................................................... 3

*Jackson v. Johnson*
5 Cal.App.4th 1350 (1992) ..................................................................................... 13

- ii -

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS AND MOTION TO STRIKE (CASE NO. 08 02219 SC)**

## TABLE OF AUTHORITIES
### (continued)

Page

*Jackson v. Torrence*
  83 Cal. 521 (1890) .................................................................................................... 10

*Jones v. Omnitrans*
  125 Cal.App.4th 273 (2004) ...................................................................................... 11

*Kettner v. Albertsons, Inc.*
  839 F.Supp.1432 (D.Ore.1993) .................................................................................. 2

*Las Vegas Ice & Cold Storage Co. v. Far West Bank*
  893 F.2d 1182 (10th Cir. 1990) ................................................................................. 13

*Olson v. Lovell*
  91 Cal. 506 (1891) ..................................................................................................... 10

*Pareto v. FDIC*
  139 F.3d 696 (9th Cir. 1998) ....................................................................................... 9

*Parino v. FHP, Inc.*
  146 F.3d 699 (9th Cir. 1998) ....................................................................................... 2

*Republic Steel Corp. v. Maddox*
  379 U.S. 650 (1965) .................................................................................................... 6

*Ritza v. International Longshoremen's and Warehousemen's Union*
  837 F.2d 365 (9th Cir. 1988) ................................................................................. 3, 6

*Romani v. Shearson Lehman Hutton*
  929 F.2d 875 (1st Cir. 1991) ................................................................................12, 13

*Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.*
  806 F.2d 1393 (9th Cir. 1986) ................................................................................... 12

*Stauffer Chemical Co. v. Food & Drug Administration*
  670 F2d 106 (9th Cir. 1982) ........................................................................................ 3

*Steelworkers v. Warrior & Gulf Navigation Co.*
  363 U.S. 574 (1960) .................................................................................................... 8

*Taylor v. FDIC*
  132 F.3d 753 (D.C.Cir. 1997) ..................................................................................... 7

*Tewksbury v. O'Connell*
  21 Cal. 60 (1862) ...................................................................................................... 10

*Transphase Systems, Inc. v. Southern Calif. Edison*
  839 F.Supp. 711 (C.D.Cal. 1993) ............................................................................... 7

*Vaca v. Sipes*
  386 U.S. 171 (1967) .................................................................................................... 8

- iii -

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS AND MOTION TO STRIKE (CASE NO. 08 02219 SC)**

## TABLE OF AUTHORITIES
### (continued)

Page

**Statutes**

29 U.S.C. § 157..................................................................................................................9

29 U.S.C. § 159................................................................................................................10

29 U.S.C. § 185.........................................................................................................1, 14

Fed. R. Civ. Proc. 11........................................................................................................12

Fed. R. Evid. 201(d) ..........................................................................................................4

Fed. R. Evid. 201(f) ...........................................................................................................4

**Other Authorities**

*J. Moore, W. Tagger, J. Wicker*
   Moore's Federal Practice, § 56.03 (2d ed. 1987) ..........................................................3

*Schwarzer, Tashima, Wagstaffe*
   Federal Civil Procedure before Trial (2008) § 9:212.2 ................................................3

- iv -

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS AND MOTION TO STRIKE (CASE NO. 08 02219 SC)**

# I. INTRODUCTION

Before this Court are facts alleged in the Complaint[1] and those necessarily implicated by Complaint reference that establish plaintiff's employment with defendant Bayer HealthCare LLC ("Bayer") were, at the time of his termination, subject to a Collective Bargaining Agreement (herein, the "CBA") between Bayer and the International Longshore & Warehouse Union ("ILWU"), Local #6 ("Union") which governed all of the terms and conditions of plaintiff's employment, including the "just cause" termination that plaintiff protests herein. That CBA also contains a grievance procedure which Bayer and plaintiff's Union (and plaintiff perforce) agreed would be the exclusive means for settling disputes arising out of the CBA, including for "Discharges and Layoffs." Decades of jurisprudence under the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, thus call for the exhaustion by plaintiff of such grievance procedures which manifestly he has not accomplished.

Plaintiff's protestations concerning whether the CBA is properly invoked by defendants' Motion are without merit; his own Complaint allegations belie such contention with specific reference to his Union membership and his written contract assuring only "just cause" termination. Plaintiff's other arguments are equally unavailing – (a) there has been no waiver of the CBA grievance exclusivity provision by Bayer's declination of plaintiff's post-suit offer to stipulate to private arbitration, (b) there is no manner for this Court to adjudicate plaintiff's claims without reference to and interpretation of the CBA, (c) plaintiff's Union was empowered and authorized to enter into the CBA notwithstanding that it would affect certain of plaintiff's rights (this is not a matter of due process – but fair representation which claim for breach, if any, plaintiff has not timely pursued against his Union), and (d) there is no stand-alone type of termination claim that plaintiff may pursue against individual defendant Mr. Panvelle. Because this matter is barred legally by the LMRA and because plaintiff has not articulated any manner in which his claims may be properly salvaged, the action should be dismissed with prejudice and without leave.

---

[1] The "Complaint" herein refers to plaintiff Donnie Jones' Complaint for Wrongful Termination, Breach of Contract, Negligence, and Fraud.

- 1 -
**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS AND MOTION TO STRIKE (CASE NO. 08 02219 SC)**

## II. ARGUMENT

**A. This Court May Properly Consider Matters, Including the Necessarily Intertwined CBA, as Raised by Plaintiff's Complaint Irrespective of Whether Judicial Notice Is Separately Sought and Bayer now Specifically Seeks Such Notice without Prejudice to Plaintiff**

Plaintiff argues, at the threshold, that Bayer has procedurally failed to seek judicial notice of the CBA or to provide the Court with the necessary facts to take such judicial notice.[2] Plaintiff's procedural argument misses the mark.

Where a complaint is pled in such a matter to deliberately exclude documents upon which the matter essentially turns (*i.e.*, "artfully pled"), a district court properly considers such documents, where their authenticity is not disputed, in ruling on a defense Rule 12 motion. (*See, e.g., Parino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded by statute on other grounds as stated in Abrego v. Dow Chemical Co.*, 443 F.3d 676, 681-682 (9th Cir. 2006) (where plaintiff's complaint referred to an "ERISA group plan" and its "cost containment program," but did *not* mention the Plan documents concerning membership and coverage, court properly considered those documents on the defense Rule 12(b)(6) motion where their authenticity was not reasonably subject to dispute); *see, e.g., Garley v. Sandia Corp.*, 236 F.3d 1200, 1210-1211 (10th Cir. 2001) (plaintiff amended his complaint alleging state contract and tort claims, excising any mention of CBA, in attempt to show his complaint was not based on a CBA and therefore preempted; court affirmed grant of motion to dismiss that relied on CBA to hold claims were preempted); *Kettner v. Albertsons, Inc.*, 839 F.Supp.1432, 1433 n.1 (D.Ore.1993) (court looked to the CBA outside the pleadings on motion to dismiss complaint without converting that motion to one for summary judgment); *Argento v. Airborne Freight Corp.*, 933 F.Supp. 373, 376 n.2 (S.D.N.Y.1996) (appropriate to consider the collective bargaining agreement in ruling on a Rule 12(b)(6) motion to dismiss raising issues of LMRA preemption); *Schwarzer, Tashima,*

---

[2] The contention that the Court was not provided adequate facts to determine what defendants refer to as the CBA is absurd. The Declaration of Bob Russey served on defendants' Motion expressly (*see* ¶ 3) refers to the CBA between Bayer and the Union as in force between September 7, 2005 and August 21, 2008 and as attached to Mr. Russey's prior Declaration accompanying defendants' Removal Petition and plaintiff refers to said CBA throughout his opposition to defendants' within Motion.

- 2 -
**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE (CASE NO. 08 02219 SC)**

*Wagstaffe*, <u>Federal Civil Procedure before Trial</u> (2008) ("Civ. Proc. before Trial"), § 9:212.2).)

None of the cases referenced discuss the need to seek judicial notice of the materials in question and even the <u>single</u> case that plaintiff cites to (from the Eastern District of Tennessee) on the issue discusses district courts' consideration of matters on Rule 12 motions outside the pleadings which are "integral to the complaint, matters of public record, *or otherwise appropriate for the taking of judicial notice under Federal Rule of Evidence 201.*" (*In re: Unumprovident Corp. Securities Litigation*, 396 F.Supp.2d 858, 875 (E.D.Tenn. 2005) (emphasis supplied).) Thus, a court's ability to look to documents that are integral to a complaint, but not referenced therein, is a stand-alone doctrinal capability existing independently of a court's power to take judicial notice of certain materials on a Rule 12(b)(6) motion. (*See, generally*, Civ Proc before Trial, §§ 9:212.2, 9:212.15 (discussing separately courts consideration of (a) "documents deliberately not mentioned in complaint" and (b) "[m]atters subject to judicial notice" on defense Rule 12(b)(6) motions).)

More broadly, federal courts may entertain motions based on failure to exhaust remedies (as here) as closely related to the management of the lawsuit and might generally be characterized as involving matters of judicial administration; the authority to hear these motions lies in the inherent power of a court to regulate actions pending before it. (*Stauffer Chemical Co. v. Food & Drug Administration*, 670 F2d 106, 108 (9th Cir. 1982); *Ritza v. International Longshoremen's and Warehousemen's Union*, 837 F.2d 365, 369 (9th Cir. 1988) ("*Ritza*").) Motions based on failure to exhaust may be construed as governed by the general motion provisions in the federal rules, including Rule 43 (c), which permits the hearing of motions based on facts outside the record on affidavit. In a factual issue arising in connection with a jurisdictional or related type of motion, the court has broad discretion as to the method to be used in resolving the factual dispute. (*J. Moore, W. Tagger, J. Wicker*, <u>Moore's Federal Practice</u>, § 56.03 (2d ed. 1987); *see, also, Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (document is not outside the pleading if the complaint specifically refers to the document and its authenticity is not questioned).)

- 3 -
**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE (CASE NO. 08 02219 SC)**

Here, there is no question but that the Complaint triggers consideration of the relevant CBA where the face of plaintiff's Complaint refers to a written contract governing his employment agreement with Bayer (*see* Complaint, ¶ 7 ("An employment contract existed between BAYER and Plaintiff. The general terms of the contract were written.")); that the written contact provided the employment relationship would be sustained so long as plaintiff "performed satisfactorily" and that the agreement "would only be terminated for just cause" (*id.*); that plaintiff was a Union member of the ILWU, Local No. 6 (Complaint, ¶ 11); that the Union initiated and later withdrew a grievance relative to plaintiff's termination (*id.*); that the withdrawal was because the Union did not believe "that its grievance policies and procedures" extended to the matter implicated by the termination. (*Id.*) It is disingenuous for plaintiff to now suggest in his opposition papers ignorance of any such governing CBA in light of these pleading allegations and the Court is well within its powers to examine the governing CBA on Bayer's Motion.

Also, as plaintiff himself points out, under Federal Rule of Evidence 201(f), a court may take judicial notice at any stage of the proceedings. (Fed. R. Evid. 201(f); plaintiff's Opposition MPA at 2:18.) Indeed, a district court *must* take judicial notice "if requested by a party and supplied with the necessary information." (Fed. R. Evid. 201(d).) Bayer has served herewith a request for judicial notice in relation to the relevant cited portions of the governing CBA already before the Court on defendants' removal and explicitly referenced in defendants' Motion papers. And, there is no prejudice to plaintiff in such procedure where plaintiff has already been served with the relevant documents upon the removal of this matter and refers to them freely and extensively, objecting to same,[3] in his within opposition. (*Cf., Cooperativa de Ahorro y Credito Aguada v. Kidder, Peabody & Co.*, 993 F.2d 269, 273 (1st Cir. 1993) (judicial notice by court not appropriate where party not given opportunity to examine and rebut documents at issue); Fed. R.

---

[3] *See, e.g.*, plaintiff's Opposition MPA at 3:2-11 (arguing CBA not effective as plaintiff was hired before its implementation and that the contract was only between the Union and Bayer, and did not include plaintiff (*but, see*, Complaint at ¶¶ 11-12 (acknowledging plaintiff was a Union member and that plaintiff's counsel conferred with the Union on the issue of whether its "grievances policies and procedures" were implicated by plaintiff's discharge)); *see*, Argument, *infra*, Section II, D, on legal issue as to binding nature of the CBA.

- 4 -

Evid 201(e) (party must be given an opportunity to be heard on matters of judicial notice).)

### B. Plaintiff's Argument Regarding Supposed Waiver by Bayer of CBA Grievance Provision Is Non-Sensical, Not Legally Supported

In a novel and legally unsupported argument, plaintiff contends that Bayer has waived its CBA rights to rely upon the exclusivity of the grievance procedure by (a) removing to federal court the within lawsuit as opposed to assenting to its theoretical federal filing in the first instance, and (b) by its subsequent refusal to circumvent the CBA provisions and stipulate to private arbitration.

First, plaintiff, in his opposition, points to correspondence between counsel for the parties where plaintiff offered to file a then contemplated lawsuit in federal court as some sort of support for the denial of the current defense Rule 12(b)(6) Motion. Plaintiff fails to indicate in his argument how this correspondence bears on the issues raised by defendants' within Motion and his pre-lawsuit offer to file in federal court (albeit equivocal), if anything, belies plaintiff's current contention that his claims are not preempted by section 301 of the LMRA.

Similarly, plaintiff's post-suit filing offer to arbitrate this mater is of no consequence in this analysis. The principal legal basis for Bayer's Motion is that the CBA grievance procedure is the exclusive method for plaintiff to contest the "just cause" nature of his termination. More particularly, the CBA, Article XI, "Grievance Procedure," is the means for the resolution of differences arising between the Company and the Union, or any of the employees covered by the CBA, relative to any provision of the CBA or its application. (CBA, Art. XI, preamble paragraph; *see* accompanying Request for Judicial Notice, Ex. A, Declaration of Bob Russey, Ex. A.) The grievance procedure provides for a four-step procedure: oral and written grievances, pre-arbitration and culminates in arbitration. It gives the Union the power to withdraw any grievance. (*Id.*, Art. XI, § 3(e).)

The CBA grievance procedure is mandatory: "If the Grievance Procedure is not followed as to a particular discharge or if the grievance as to such discharge is automatically closed in accordance with such procedure, neither the Union nor the individual employee who was discharged shall have the right to challenge such discharge, or the right to any back-pay award or

other relief thereunder." (CBA, Art. VII, Section 1(e); Art. XI, Section 5(e); *see* accompanying Request for Judicial Notice, Ex. A, Declaration of Bob Russey, Ex. A.) Plaintiff's contention that Bayer has somehow waived this provision post the filing of plaintiff's barred civil claims by not agreeing to private arbitration makes no logical sense and is not supported by any legal authority.

As stated in *Republic Steel Corp. v. Maddox*, 379 U.S. 650 (1965):

> Union interest in prosecuting employee grievances is clear. Such activity complements the union's status as exclusive bargaining representative by permitting it to participate actively in the continuing administration of the contract. In addition, conscientious handling of grievance claims will enhance the union's prestige with employees. Employer interests, for their part, are served by limiting the choice of remedies available to aggrieved employees. And it cannot be said, in the normal situation, that contract grievance procedures are inadequate to protect the interests of an aggrieved employee until the employee has attempted to implement the procedures and found them so.
>
> A contrary rule which would permit an individual employee to completely sidestep available grievance procedures in favor of a lawsuit has little to commend it. In addition to cutting across the interests already mentioned, it would deprive employer and union of the ability to establish a uniform and exclusive method for orderly settlement of employee grievances. If a grievance procedure cannot be made exclusive, it loses much of its desirability as a method of settlement. A rule creating such a situation 'would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements.' (*Republic Steel v. Maddox*, 379 U.S. at 654 (internal citation omitted).)[4]

A result where a plaintiff could file a civil suit without exhausting and then offer to engage in private arbitration post such a filing and claim waiver where the defendant employer declined such option is equally as inimical to the interests protected by the exclusive nature of a CBA grievance procedure, as here, bargained for between Bayer and plaintiff's Union. Thus, plaintiff's offer to enter into such a private arbitration arrangement – and Bayer's rejection of the offer – are not facts which are relevant to the disposition of Bayer Motion.

---

[4] *See* additional legal authorities, including *Ritza, supra*, 837 F.2d at 368-369, establishing requirement of exhaustion of *contractual* remedies as a predicate to a claim of futility and civil suit as cited to in Argument, C, of the defense Motion.

- 6 -

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE (CASE NO. 08 02219 SC)**

### C. Plaintiff's Argument that his Claims Do not Require Interpretation of or Are Not Intertwined with CBA Is Disingenuous

Plaintiff argues that (1) there is no evidence he was aware of any CBA between his Union and Bayer, and (2) accordingly, he cannot be found to have attempted to artfully plead around the CBA. Plaintiff states that this Court must accept as true that which he has pled and his claims exist independent of any CBA. But, plaintiff overstates the liberality with which his pleading is to be construed here and the allegations on the face of the Complaint, and the CBA those allegations materially invoke, foreclose plaintiff's claims entirely.

Plaintiff argues that he has a legal right to plead for relief and claims outside of the CBA but, as detailed in the defense moving papers, each of his claims is premised upon the allegation that his employment was terminated without "just cause." Plaintiff's Complaint refers to, but does not attach, an ostensible written contract that contained a promise that his Bayer employment would be terminated only for "just cause." (Complaint, ¶ 7.) As is its right, Bayer has referenced that presumptive contract – *viz.*, the CBA – in its Rule 12(b)(6) Motion and directed this Court to extensive authority allowing for the consideration of such materials on such a motion.

Plaintiff does not, in opposition to the defense Motion, dispute the authenticity of the CBA, or identify a different written contract that would ostensibly govern the issues. Instead, plaintiff clings to the notion that this Court must accept as true his pled allegations of (1) a written contract (exclusive of the CBA) containing such a "just cause" termination provision, and (2) that plaintiff has exhausted all necessary Union grievance procedures as a predicate to bringing the within civil suit. But, this is not so. This Court need not accept as true conclusory allegations or legal characterizations. Nor need it accept unreasonable inferences or unwarranted deductions of fact. (*See In re Delorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993); *Taylor v. FDIC*, 132 F.3d 753, 762 (D.C.Cir. 1997); *Transphase Systems, Inc. v. Southern Calif. Edison*, 839 F.Supp. 711, 718 (C.D.Cal. 1993); *Beliveau v. Caras*, 873 F.Supp. 1393, 1395-1396 (C.D.Cal. 1995).)

Plaintiff's conclusory Complaint allegations of his written employment contract, Union

membership and exhaustion necessarily trigger a review of the CBA that exists between Bayer and the ILWU as stated at the outset. This Court need not accept plaintiff's conclusory allegations of a non-existent, non-specified and unattached written employment contract with a "just cause" termination clause or that all necessary contractual grievance procedures have been exhausted. The Court, as detailed in the defense opening argument above, is entitled to go beyond the four corners of the Complaint and to review the provisions of the CBA between Bayer and the Union to which plaintiff admits membership. Such a review belies plaintiff's contentions of a stand-alone agreement between he and Bayer concerning the terms of his employment relationship and this Court properly rejects such conclusory allegations in ruling on the within Motion.

Additionally, exhaustion is not established merely because plaintiff claims the Union and the NLRB told his attorney that there was nothing further the Union could or needed to do here. (*See, e.g., Faust v. RCA*, 657 F.Supp. 614 (M.D.Pa. 1986) (where plaintiff's union withdrew his grievance short of arbitration, he failed to exhaust his contractual remedies and failed to exhaust remedies against his union, which had the power to reactivate his grievance); *Cotter v. Daimler Chrysler*, 87 F.Supp.2d 746 (E.D. Mich. 2000) (despite that grievance procedure provided additional steps for review, plaintiff's union withdrew grievance, failing to exhaust his contractual and intra-union remedies).)

Plaintiff cannot sidestep his exclusive and binding remedy under the CBA's grievance procedure by suing in court. The Union, as his representative, agreed that a neutral arbitrator would be responsible for uniformly interpreting the meaning of the contract (*i.e.*, the CBA) between Bayer and the Union. To allow plaintiff to bring his grievance as a suit in court would bring havoc to the central role of arbitration in the "system of industrial self-government" and violate national labor policy. (*Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581 (1960).)

A failure to exhaust contractual remedies may be excused if the worker establishes that the union breached its duty of fair representation in the processing of the grievance by showing the union's conduct towards a member of the collective bargaining unit was arbitrary,

discriminatory or in bad faith. (*Vaca v. Sipes*, 386 U.S. 171, 190 (1967); *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 570-571 (1976).) If plaintiff disagreed with the Union's decision to withdraw his grievance here, plaintiff's remedy was against his Union. Plaintiff's allegation that his counsel concluded that his Union breached no duty should be disregarded as a legal conclusion. (*Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).) Plaintiff has not brought the requisite claim for breach of duty of fair representation against his Union in order to assert a breach of contract against Bayer. Thus, again, this Court need not accept the conclusory allegation that plaintiff has exhausted his remedies here.[5]

### D. Plaintiff's Citation to Irrelevant Nineteenth Century Authority Cannot Be Read to Negate Entire Effect of the Governing CBA; Plaintiff's Termination Is Facially Covered by the CBA

Plaintiff objects that the CBA is ineffective because it was executed many years after plaintiff was initially hired, he was not a party to it, there is no evidence that he was ever aware the CBA existed and had been executed between Bayer and the Union or that he individually consented to the terms of the CBA. In this regard, plaintiff principally cites to several nineteenth century cases for the proposition that two parties may not contract away the rights of a third.

This is a "red herring" argument. It is beyond dispute that employees may organize collectively and designate a union as their exclusive bargaining agent. (*See*, 29 U.S.C. § 157 (employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection).) On its face, the governing CBA, between Bayer and the Union in which plaintiff pleads membership, provides that the Union is the exclusive bargaining agent and specifies conditions on terminations, such as plaintiff's, occurring between September 7, 2005 and August 21, 2008. (CBA, Art. I, § 1, Art. XI, preamble paragraph; *see* accompanying Request for Judicial Notice, Ex. A, Declaration of Bob Russey, Ex. A.)

---

[5] As an apparent after-thought, plaintiff states this suit should be remanded to State Court if this Court agrees with plaintiff "that there in no LMRA preemption." (*See* Opposition MPA at 6:23-24.) Plaintiff did not timely seek the remand of this action and disregards that the action was removed on the alternate basis of the diversity of citizenship of the proper parties to the action.

- 9 -

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE (CASE NO. 08 02219 SC)

Plaintiff argues there is no evidence that he knew of, saw, received or consented to the CBA but has not pled or supplied facts to indicate to the contrary (*i.e.*, that he never saw nor received the CBA). Of course, there is no requirement that plaintiff have individually consented to the CBA as the agreement may bind him if approved by the requisite majority of Union members (*see* 29 U.S.C. § 159) and thus plaintiff's citation to antiquated and distinguishable authorities pertaining to individual contracts is misplaced. (*See, e.g., Tewksbury v. O'Connell*, 21 Cal. 60 (1862) (agreement to partition land held by parties as tenants-in-common not valid unless assented to by all so affected); *Barber v. Burrows*, 51 Cal. 404 (1876) (legal instrument drafted to be signed to release contractors and sureties could not be enforced without execution by all sureties); *Jackson v. Torrence*, 83 Cal. 521 (1890) (real estate sale voided where subject property was owned, in part, as community property by husband and wife and wife never executed sale contract or deed of conveyance); *Olson v. Lovell*, 91 Cal. 506 (1891) (sale of property owned by seller and another individual void where other individual never assented to sale).)

Moreover, it is not incumbent upon Bayer to demonstrate that the plaintiff saw, received or consented to the CBA to establish LMRA pre-emption. The pled and otherwise proper facts before this Court establish all that is needed in this regard: (1) plaintiff was a member of the ILWU, and (b) the ILWU was plaintiff's exclusive bargaining agent on his Bayer employment terms and conditions, including terminations and grievances pertaining to the "just cause" nature of same.

Finally, in this regard, plaintiff argues that his claims do not reside within the scope of the exclusive bargaining provision (*i.e.*, as relating to "hours of work, rates of pay, and *working conditions incidental to their employment by the Company*" (CBA, Art. I, § 1; *see* accompanying Request for Judicial Notice, Ex. A, Declaration of Bob Russey, Ex. A (emphasis supplied).) But, of course, among the many working conditions covered by the CBA are the conditions pertaining to "Discharges and Layoffs" and the "Grievance Procedure" as the exclusive means of settling such matters. (*Id.*, Art. VII, XI.) Thus, plaintiff's own pleading reveals that plaintiff grieved his termination and the Union processed and subsequently settled same. Again, if plaintiff had an

issue with the handling of his grievance or matters concerning the propriety of the CBA or its dissemination, his remedy would have been a claim against the Union (now time-barred, *see*, Argument G, *infra*).

E.  **Plaintiff Raises No Substantive Argument Which Would Salvage Claims Against Individual Defendant, Mr. Panvelle**

In the defense Motion, defendants established (a) that plaintiff's claims as against individual defendant Mr. Panvelle would necessarily fall to the extent they were found LMRA section 301 pre-empted, *and* (b) that each such claim was otherwise substantively barred, *viz.*:

- o  Because an individual supervisor cannot have contractual liability where not a direct party to an employment contract
- o  An individual supervisor cannot have liability for breach of public policy where the alleged policy (though none is alleged here) governs the actions of the employer, not the supervisor, and
- o  Tort claims did not embrace Mr. Panvelle where there was no legal duty alleged or breached.

Plaintiff does not even address in his opposition these substantive deficiencies in his claims as ostensibly stated against Mr. Panvelle. Accordingly, these claims should be dismissed insofar as Mr. Panvelle is concerned on this additional basis along with the preemption issues as raised by Bayer and equally applicable to Mr. Panvelle.

F.  **There Is no Stand-Alone Due Process Basis for Denying the Defense Motion**

Plaintiff argues that "traditional notions of fair play and substantial justice" require that he "be permitted his day in Court." (*See* Opposition MPA at 8.) But, plaintiff points to no stand-alone due process basis for over-riding the decades of jurisprudence on section 301 LMRA preemption and this argument should be disregarded by this Court. Courts have long upheld that workers are afforded sufficient due process where only a workers' union could request arbitration in a grievance process. (*See, e.g., Armstrong v. Meyers*, 964 F.2d 948 (9th Cir. 1992) (due process satisfied by a CBA that affords the employee notice, an opportunity to be heard and the opportunity for arbitration of his dismissal, including where employee's union has the sole authority to request the arbitration hearing, as long as the union is acting under a duty of fair representation); *Jones v. Omnitrans*, 125 Cal.App.4th 273, 280- 282 (Cal.App. 2004) (Union

declined to take matter to arbitration, satisfying the requirements of due process).)

### G. Plaintiff Should not Be Permitted to Amend; Order of Dismissal Should Be as to All Parties with Prejudice

Although leave is liberally granted to a plaintiff to amend, such leave is not permissible where the amendment would be futile. (*See Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986).) Plaintiff should not be permitted leave to amend and file a complaint fashioned in any way on the facts as alleged in his original Complaint.

More particularly, though not directly raised by plaintiff, it would be futile to allow plaintiff leave to now join the Union or add claims for breach of duty of fair representation because the Union advised plaintiff on November 14, 2007 (*see* Complaint, ¶ 11), over seven months ago, that it would pursue plaintiff's grievance no further and thus the statute of limitations on plaintiff's claim against the Union for breach of duty of fair representation has run. (*Del Costello v. Intl. Brd. of Teamsters*, 462 U.S. 151 (1983) (six months statute of limitation on breach of duty of fair representation claim).)

Plaintiff suggests that he now be permitted to allege a claim for race discrimination, but offers no facts which would establish such a claim which is in no manner referenced or even suggested in his original pleading. The decision whether to allow amendment of a pleading is a matter with the discretion of the court. (*Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 880 (1st Cir. 1991).) A plaintiff may be permitted leave to amend upon an offer of proof that establishes a new or different theory as pled in his original complaint, but cannot simply invent or fabricate theories to survive a Rule 12 challenge. (*See, generally*, Fed. R. Civ. Proc. 11.) On the issue of race discrimination, the matters plaintiff has submitted to this Court include his own counsel's statement that his then to-be filed suit would contain "no racial discrimination claim,"[6] and there has been no discovery conducted in this matter. He should not now, when confronted

---

[6] *See* March 10, 2008 email from plaintiff's counsel appended as Exhibit 1 to the Declaration of Andrew W. Shalaby in Support of in Support of (*sic*) Plaintiff's Opposition to Defendants' Motion to Dismiss (the "Shalaby DEC"). (The Shalaby DEC references two Exhibits but only one appears to have been attached to the pleading filed with this Court.)

- 12 -
**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE (CASE NO. 08 02219 SC)**

with the legal impediments to the claims he has alleged, be permitted leave to allege such a theory of discrimination where there is no indication of a good faith basis for so doing. (*See, Romani v. Shearson Lehman Hutton*, 929 F.2d at 880-881 (plaintiff's general opposition to defendant's motion to dismiss, which sought dismissal with prejudice, was inadequate to apprise court of his claimed entitlement to an opportunity to amend); *Las Vegas Ice & Cold Storage Co. v. Far West Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990) (court denied the plaintiff's motion to amend complaint, relied on the plaintiff's untimely assertion of the proposed amendment, noting that the facts underlying the claim were known to the plaintiff at the time suit was instituted); *Carreon v. Capital Cities*, 111 F.3d 137, 1997 U.S. App. LEXIS 6694, * 11-14 (9th Cir. 1997) (denied amendment where request to amend not diligently sought and delay raised questions of good faith of amendment).)

### H. Governing Law Clearly Compels the Striking of Plaintiff's Punitive Damages Plea from his Negligence Claim

Plaintiff seems to take the position that this Court ought to defer adjudication of the defense request to strike the punitive damage plea from his negligence claim stating that "[t]here is uncertainty in the State Judicial system at this time with respect to punitive damages on negligence claims," while, at the same time stating "... *the law clearly leans in favor of abolishing punitive damages on negligence claims*." (*See* Opposition MPA at pp. 7-8 (emphasis supplied).) There is no such uncertainty; it is black-letter law that a plaintiff may not recover punitive damages in California for simple negligence as alleged here. (*See, e.g., Jackson v. Johnson*, 5 Cal.App.4th 1350, 1354 (Cal.App. 1992) ("Simple negligence **cannot** support an award of **punitive** damages.) (emphasis supplied).) Thus, in granting the defense Motion, this Court should additionally strike the punitive damage plea from plaintiff's negligence claim.

### III. CONCLUSION

Plaintiff's Complaint is squarely preempted by the LMRA section 301, 29 U.S.C. § 185, and his manifold obfuscations notwithstanding, this Court has everything before it to make such finding. Because the facts and the law on this may not be re-shaped in any good faith way to enable plaintiff to pursue this matter, the granting of the defense Motion should be with prejudice. This Court should additionally and independently strike the punitive damages allegations from the third claim for relief of plaintiff's Complaint.

Dated: June 27, 2008

LAW OFFICE OF JEROME SCHREIBSTEIN

By: /S/
Jerome Schreibstein
Attorneys for Defendants
BAYER HEALTHCARE LLC, BAYER CORPORATION and DAVID PANVELLE