1  JEROME SCHREIBSTEIN (SBN: 154051)
   LAW OFFICE OF JEROME SCHREIBSTEIN
2  Embarcadero Center West
   275 Battery Street, Eighteenth Floor
3  San Francisco, CA 94111
   Telephone: (415) 875-3355
4  Facsimile: (415) 358-9885

5  Attorneys for Defendants
   BAYER HEALTHCARE LLC, BAYER
6  CORPORATION AND DAVID PANVELLE

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10

11 DONNIE JONES,                    )  CASE NO. CV 08-2219 SC
                                    )
12            Plaintiff,            )  **REQUEST FOR JUDICIAL NOTICE
                                    )  ON DEFENDANTS' MOTION TO
13    vs.                           )  DISMISS AND MOTION TO STRIKE**
                                    )
14 BAYER HEALTHCARE LLC, BAYER      )  Date:       July 11, 2008
   CORPORATION, DAVID PANVELLE, DOES)  Time:       10:00 a.m.
15 1-50, inclusive,                 )  Courtroom:  1, 17th Floor
                                    )  Judge:      Hon. Samuel Conti
16                                  )
              Defendants.           )
17 _____)

18       Pursuant to Federal Rule of Evidence 201, defendants Bayer HealthCare LLC, Bayer

19 Corporation and David Panvelle ("defendants"), hereby request this Court to take Judicial Notice

20 of this Court's official records.

21       Defendants request judicial notice of the following:

22       1.    The Court records in the matter of *Donnie Jones v. Bayer HealthCare LLC*, *Bayer*

23 *Corporation*, *David Panvelle*, *DOES 1-50*, *inclusive*, Case No. CV 08-2219 SC, removed from

24 Alameda Superior Court on April 29, 2008 to the U.S. District Court, Northern District of

25 California:

26       a.    Declaration of David Panvelle in Support of Petition and Notice of

27 Removal of Action under 28 USC § 1441(b) (Federal Question and Diversity Jurisdiction)

28 (Court Record No. 4); and

                                    - 1 -

1    b.    Declaration of Bob Russey in Support of Petition and Notice of Removal

2    of Action under 28 USC § 1441(b) (Federal Question and Diversity Jurisdiction) (Court Record

3    No. 5).

4    Files of this Court are subject to mandatory judicial notice.  (Fed R. Evid. 201(d); *see,*

5    *also, Mullis v. United States Bankruptcy Court*, 828 F.2d 1385, 1388 n.9 (9th Cir. 1987); *Mack v.*

6    *South Bay Beer Distributors, Inc.*, 798 F. 2d 1279, 1282 (9th Cir. 1986), *abrogated on other*

7    *grounds by Astoria Federal Sav. and Loan Ass'n v. Solimino*, 501 U.S. 104 (1991) (documents

8    from clerk's records are subject to judicial notice under Federal Rule of Evidence 201 and

9    appropriately considered on a motion to dismiss, matter that is properly the subject of judicial

10    notice may be considered along with the Complaint when deciding a motion to dismiss for

11    failure to state a claim); *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)

12    (court may take judicial notice of official records and reports on Rule 12 (b)(6) Motion).)

13    Copies of the documents sought to be noticed are attached to this request as Exhibit A.

14    Dated:  June 27, 2008                    LAW OFFICE OF JEROME SCHREIBSTEIN

15

16                                            By: _____ /s/ _____

17                                                Jerome Schreibstein
                                                 Attorneys for Defendants
18                                                BAYER HEALTHCARE LLC, BAYER
                                                 CORPORATION and DAVID PANVELLE

19

20

21

22

23

24

25

26

27

28

- 2 -

.

.

.

.

.

.

**EXHIBIT A**

.

1  JEROME SCHREIBSTEIN (SBN: 154051)
   LAW OFFICE OF JEROME SCHREIBSTEIN
2  Embarcadero Center West
   275 Battery Street, Eighteenth Floor
3  San Francisco, CA 94111
   Telephone: (415) 875-3355
4  Facsimile: (415) 358-9885

5  Attorneys for Defendants
   BAYER HEALTHCARE LLC, BAYER
6  CORPORATION AND DAVID PANVELLE

7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

11  DONNIE JONES,                        )  CASE NO.
                                         )
12              Plaintiff,               )  DECLARATION OF DAVID
                                         )  PANVELLE IN SUPPORT OF
13       vs.                             )  PETITION AND NOTICE OF
                                         )  REMOVAL OF ACTION UNDER 28
14  BAYER HEALTHCARE LLC, BAYER          )  U.S.C. § 1441(b) (Federal Question and
    CORPORATION, DAVID PANVELLE, DOES )  Diversity Jurisdiction)
15  1-50, inclusive,                     )
                                         )
16              Defendants.              )
                                         )
17

18       I, David Panvelle, declare and state as follows:

19       1.      The below is true and correct of my own personal knowledge or, to the extent

20  indicated, I am informed and believe and on that basis aver it to be true, and, if called upon, I

21  could and would competently testify thereto.

22       2.      I began employment for Bayer HealthCare LLC ("Bayer") on or about October

23  16, 2006. I am employed as a Manufacturing Supervisor and am responsible for overseeing day-

24  to-day operations in the Media/Fermentation Department housed in Building 55 of Bayer's

25  Berkeley, California facility.

26       3.      I am not an owner or operator of Bayer or member of any Board of Directors. I

27  have no ownership interest in Bayer. I do not have the authority to hire and fire Bayer

28  employees and I did not terminate the employment of Donnie Jones, the plaintiff in this matter. I

                                    - 1 -
   DECLARATION OF DAVID PANVELLE IN SUPPORT OF PETITION AND NOTICE OF REMOVAL

1  am informed and believe that the termination was executed by Bayer Human Resources in

2  conjunction with senior management.

3      4.    I never had any contractual relationship with Mr. Jones and I never entered into

4  any contract with him in relation to his Bayer employment.  At no time was Mr. Jones ever my

5  employee and I was never Mr. Jones' employer.

6      5.    I have never been formally served with a Summons and Complaint in this lawsuit.

7      I declare under penalty of perjury that the foregoing is true and correct.  Executed this

8  28th day of April, 2008 in Berkeley, California.

9

10                                            _David Panvelle_____

11                                            David Panvelle

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICE OF JEROME SCHREIBSTEIN
ATTORNEY'S AT LAW
EMBARCADERO CENTER WEST
275 BATTERY STREET, TWENTIETH FLOOR
SAN FRANCISCO, CA 94111
(415) 875-3355

- 2 -

DECLARATION OF DAVID PANVELLE IN SUPPORT OF PETITION AND NOTICE OF REMOVAL
OF ACTION UNDER 28 U.S.C. § 1441(b)

1    JEROME SCHREIBSTEIN (SBN: 154051)
     LAW OFFICE OF JEROME SCHREIBSTEIN
2    Embarcadero Center West
     275 Battery Street, Eighteenth Floor
3    San Francisco, CA 94111
     Telephone: (415) 875-3355
4    Facsimile: (415) 358-9885

5    Attorneys for Defendants
     BAYER HEALTHCARE LLC, BAYER
6    CORPORATION AND DAVID PANVELLE

7

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10

11   DONNIE JONES,                    )    CASE NO.
                                      )
12                  Plaintiff,        )    DECLARATION OF BOB RUSSEY IN
                                      )    SUPPORT OF PETITION AND
13          vs.                       )    NOTICE OF REMOVAL OF ACTION
                                      )    UNDER 28 U.S.C. § 1441(b) (Federal
14   BAYER HEALTHCARE LLC, BAYER      )    Question and Diversity Jurisdiction)
     CORPORATION, DAVID PANVELLE, DOES)
15   1-50, inclusive,                 )
                                      )
16                  Defendants.       )
                                      )
17

18          I, Bob Russey, declare and state as follows:

19          1.      I began working for Bayer Corporation at its Berkeley, California manufacturing

20   facility in 1984. The Company has gone through several name changes since I started and is

21   currently operating in Berkeley under the name Bayer HealthCare LLC (herein, "Bayer"). The

22   below is true and correct of my own personal knowledge or, to the extent indicated, I am

23   informed and believe and on that basis aver it to be true, and, if called upon, I could and would

24   competently testify thereto.

25          2.      I began my Bayer career as a plasma production operator and a member of the

26   Bargaining Unit. I held this position for approximately nine years and participated as a member

27   of the Union negotiating team on two different iterations of the Collective Bargaining

28   Agreements with Bayer. In 1993, I was made a Plasma Production Supervisor. In 2003, I

LAW OFFICE OF JEROME SCHREIBSTEIN
ATTORNEYS AT LAW
EMBARCADERO CENTER WEST
275 BATTERY STREET, TWENTIETH FLOOR
SAN FRANCISCO CA 94111
(415) 875-3355

- 1 -

LAW OFFICE OF JEROME SCHREIBSTEIN
ATTORNEYS AT LAW
EMBARCADERO CENTER WEST
275 BATTERY STREET, TWENTIETH FLOOR
SAN FRANCISCO, CA 94111
(415) 875-3355

1    became a Human Resources Consultant and had certain of the manufacturing workers – the

2    Bargaining Unit employees responsible for the actual production of the medicine – in my client

3    group.  In 2005, I was named Labor Relations Manager at the Bayer Berkeley Site.  In this role, I

4    am the lead HR oversight person involved in executing all human resources functions relative to

5    the Bargaining Unit employees.

6         3.    Mr. Donnie Jones was formerly employed at Bayer beginning in approximately

7    1998.  At all times during his Bayer employment up to and including termination, Mr. Jones was

8    a member of the Bargaining Unit at Bayer.  All of the Bargaining Unit members at Bayer are

9    represented by the International Longshore & Warehouse Union (ILWU), Local # 6 (herein, the

10   "Union").  The terms and conditions of the Bayer Bargaining Unit employees' employment have

11   been governed by a series of collective bargaining agreements as negotiated between the Union

12   and Bayer.  The iteration of the Collective Bargaining Agreement (the "CBA") in force at the

13   time of Mr. Jones' termination has effective dates of September 7, 2005 to August 21, 2008.

14   True and correct copies of the relevant provisions of the CBA as cited to in my within

15   declaration are appended hereto as Exhibit "A."  Plaintiff's position was classified as Code 14

16   and he was an employee covered by the CBA in the unit I am informed and believe and aver is

17   defined in the Certification of Representation as issued by the National Labor Relations Board

18   March 26, 1952, Case No. 20-RC-1561.

19        4.    Pursuant to Article I, Section 1 of the CBA, the Union is the exclusive bargaining

20   agent for employees concerning the terms and conditions of the CBA.  Article VII of the CBA

21   covers "Discharges and Layoffs" and sets forth the terms and conditions under which a

22   Bargaining Unit employee may be properly terminated for "just cause."  (*See* Art. VII, Sections

23   1, 2.)  Article XI, "Grievance Procedure," is the means for the resolution of differences arising

24   between the Company and the Union, or any of the employees covered by the CBA, relative to

25   any provision of the CBA or its application.  (*See* Art. XI, preamble paragraph.)  The CBA

26   further states that if the Grievance Procedure is not followed as to a particular discharge or if the

27   grievance as to such discharge is automatically closed in accordance with such procedure, neither

28   the Union nor the individual employee who was discharged shall have the right to challenge such

DECLARATION OF BOB RUSSEY IN SUPPORT OF PETITION AND NOTICE OF REMOVAL OF
ACTION UNDER 28 U.S.C. § 1441(b)

1   discharge, or the right to any back-pay award or other relief thereunder. (*See* Art. VII, Section

2   1(e); Art. XI, Section 5(e).) Other than the CBA, there was no other contract governing the

3   terms and conditions (including termination) of Mr. Jones' Bayer employment.

4        5.     David Panvelle, as a Manufacturing Supervisor, has no authority to hire and fire

5   Bargaining Unit or any other Bayer employees. All terminations at Bayer must be approved by,

6   among others, Human Resources and senior management. This was the case for Mr. Donnie

7   Jones as well.

8        I declare under penalty of perjury that the foregoing is true and correct. Executed this

9   26th day of April, 2008 in Berkeley, California.

10

11   Bob Russey

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICE OF JEROME SCHREIBSTEIN
ATTORNEYS AT LAW
EMBARCADERO CENTER WEST
275 BATTERY STREET, TWENTIETH FLOOR
SAN FRANCISCO, CA 94111
(415) 875-3355

DECLARATION OF BOB RUSSEY IN SUPPORT OF PETITION AND NOTICE OF REMOVAL OF
ACTION UNDER 28 U.S.C. § 1441(b)

# EXHIBIT A



# AGREEMENT
## B E T W E E N

**Bayer HealthCare LLC**

Berkeley, California Plant

and

**International Longshore
& Warehouse Union Local #6**

**Effective**
September 7, 2005 – August 21, 2008

 Bayer HealthCare

Bayer HealthCare LLC and the International Longshore and Warehouse Union and its Local #6, recognize their respective responsibilities in the area of equal employment opportunity and applicable federal and state laws relating to fair employment practices.

The Company and the Union recognize the moral principles involved in the area of civil rights and have reaffirmed in this Collective Bargaining Agreement their commitment not to discriminate because of race, color, national origin, sex, age, handicap, creed, political beliefs, union activity, nor against disabled veterans or Vietnam era veterans.

This Agreement is made and entered into this seventh (7th) day of September, 2005 between Bayer HealthCare LLC, a Delaware Corporation, for its Berkeley, California Plant located at 800 Dwight Way, Berkeley, California, hereinafter referred to as the Company, and the International Longshore and Warehouse Union on behalf of Local #6, hereinafter referred to as the "Union."

## PURPOSE

The general purpose of this Agreement is to promote the mutual interests of the Company and its employees, and to provide for the operation of the plant under methods which will further, to the fullest extent possible, the welfare of the employees, economy and efficiency of operation, elimination of waste, realization of maximum quantity and quality of output, cleanliness of plant, and protection of property.

# INDEX

Any reference in this Agreement made to either the masculine or feminine gender (he, she) shall refer to both genders.

## ARTICLES                                                    Page

| | | |
|---|---|---|
| Article I | Recognition, Union Security and Management Responsibilities | 1 |
| Article II | Hours of Work and Overtime | 5 |
| Article III | Rates of Pay and Changes in Classification | 11 |
| Article IV | Holidays | 13 |
| Article V | Vacations | 16 |
| Article VI | Seniority | 22 |
| Article VII | Discharges and Layoffs | 24 |
| Article VIII | Promotions and Transfers | 28 |
| Article IX | Hiring and Rehiring | 34 |
| Article X | Leaves of Absence | 37 |
| Article XI | Grievance Procedure | 39 |
| Article XII | Business Agent | 46 |
| Article XIII | Severance Pay | 47 |
| Article XIV | Strikes and Lockouts | 51 |
| Article XV | Effective Date | 52 |
| Article XVI | Duration of Agreement | 53 |

## SUPPLEMENTAL ATTACHMENTS

| | | |
|---|---|---|
| Supplemental Attachment No. 1 | Basic Rates of Pay | 56 |
| Supplemental Attachment No. 2 | Job Classification Schedule | 58 |

Supplemental
Attachment No. 3     Company's Last Offer ........................62

Supplemental
Attachment No. 4     Compensable Illness...........................62

Supplemental
Attachment No. 5     Plasma Processing Dept Overtime ......64

Supplemental          Plant and Department Shutdowns -
Attachment No. 6     Christmas and Other Slack Times .......65

Supplemental
Attachment No. 7     Flextime................................................66

Supplemental
Attachment No. 8     New Hire Orientation............................66

Supplemental
Attachment No. 9     Shift Change .......................................67

Supplemental
Attachment No. 10    Group Benefits....................................69

Supplemental
Attachment No. 11    Pension Plan .......................................125

Supplemental
Attachment No. 12    Bayer Savings Plan .............................144

Supplemental
Attachment No. 13    Maintenance Trainee Program .............145

Supplemental          Memorandum of Understanding
Attachment No. 14    Freeze-Drying Agreement ....................148

Supplemental          Understanding Regarding
Attachment No. 15    Subcontracting.....................................150

Supplemental
Attachment No. 16    Family and Medical Leave Act.............150

Supplemental
Attachment No. 17    Americans with Disabilities Act............152

Supplemental
Attachment No. 18    Substance Abuse.................................152

# ARTICLE I

## RECOGNITION, UNION SECURITY AND MANAGEMENT RESPONSIBILITIES

**Section 1** - The Company recognizes the Union as the exclusive bargaining agent for the purpose of representing all employees covered by this Agreement in negotiations pertaining to hours of work, rates of pay, and working conditions incidental to their employment by the Company. The employees covered by this Agreement are all the employees in the unit defined in the Certification of Representation issued by the National Labor Relations Board under date of March 26, 1952, in Case No. 20-RC-1561, namely, all production and maintenance employees of the Company at its Berkeley, California plant including regular part-time employees, but excluding executives, administrative employees, confidential employees, professional employees, office clerical employees, salesmen, watchmen, guards, and supervisors as defined in the National Labor Relations Act, as amended.

**Section 2** - Neither the Union nor the Company may assign jurisdiction over any section or group of the employees herein covered to any third party or parties.

**Section 3** - The Company agrees that it will not interfere with, restrain, or coerce said employees because of membership or lawful activity in the Union nor will it attempt to discourage membership in the Union by discrimination in respect to hiring, tenure of employment or any other term or condition of employment.

**Section 4** - The Union may appoint Shop Stewards for the purpose of carrying out Article XI. The Stewards shall be allowed reasonable time to spend on the handling of grievances. The Union shall furnish the Company with a list of its Shop Stewards and other Chapter Officers, and notify the Company of all

1

changes which may occur from time to time. The Union agrees that neither it nor any of its officers or members will engage in Union activity or Union business during working hours except as specifically provided for by the terms of this Section, or by mutual agreement. The Company agrees to allow the Union to conduct Union business upon Company property provided such business is in accordance with the letter from the Union dated September 20, 1967 and is conducted outside of working hours and does not inter¬fere with plant operations or create discord.

**Section 5** - The Company agrees to deduct Union membership dues from the wages of all employees covered by this Agreement who have heretofore executed or who may hereafter execute and deliver to the Company a written authorization for such deduction. Such authorization for the deduction of monthly membership dues may be revoked by the employee signing it by submitting written notice to the Company and the Union at any time within sixty (60) days prior to the date which is twelve (12) months after the execution thereof, but if the employee fails to exercise his right of revocation within such period, the authorization shall be deemed renewed for a period of one year and shall be irrevocable during said period or until the termination date of this Agreement, whichever occurs sooner, and shall be terminable and renew¬able for like periods of one year (12 months) and under the same conditions as are set forth above.

For the purposes of this Agreement, Union membership dues are defined as follows:

(a) Dues to obtain membership (initiation fee).

(b) Dues to maintain membership in good standing (monthly dues).

**Section 6** - The Company agrees to deduct from the wages and turn over to the Secretary-Treasurer of the Union, initiation fee and dues of such members of the Union as individually and voluntarily certify in writing that they authorize such deductions. The authorization shall be in the following form:

2

# AUTHORIZATION FOR DEDUCTION
# OF UNION MEMBERSHIP DUES
## (Monthly & Initiation Fee)

### Bayer HealthCare LLC
### Berkeley, California Plant

I, the undersigned employee of Bayer HealthCare LLC, hereby author¬ize and direct the said Company to deduct, on my first payday of each month, from any wages now or hereinafter, and pay to Warehouse Union Local #6, ILWU, my membership dues and Initiation as a member of that organization. I agree to hold the Company harmless from loss from any judgment of a court of competent jurisdiction and from any order of the Labor Commissioner or other agency or govern¬ment in connection with or arising from any deductions made pursuant to this assignment. No other assignment or order exists in connection with this transaction. This assignment shall be irrevocable for a period of one year from the signing thereof and shall be continued thereafter from year to year, on an annual basis, unless revoked by me by notice in writing to the Company and the Union submitted at least sixty (60) days prior to the one year anniversary date of this signing, or sixty (60) days prior to any succeeding anniversary year of this signing.

Date _____ Signature _____

The Union shall hold the Company harmless against any claim that may be made by reason of the deduction of Union dues pursuant to this Agreement.

**Section 7** - The Company agrees to give each new employee a copy of this Agreement. The Company shall advise each new employee covered by this Agreement of the name of his Union Steward.

**Section 8** - The Company agrees to provide space on Bulletin Boards to the Union for posting material. The Union agrees that in the event the Company objects to material posted by the Union

and such objection is not resolved through mutual agreement, the Company will have the right to revoke the Union's Bulletin Board privileges.

**Section 9** - On and after the thirtieth (30th) day after the date of execution of this Agreement, membership in good standing in the Union shall be a condition of employment for all employees in the Bargaining Unit. Eligible employees hired after such date of execution must become members of the Union thirty (30) days after date of hire, and failure to join the Union within such time shall be cause for the employee's dismissal. The Union may waive, deny, or terminate membership as to any eligible employee without prejudice to the continued employment of such employee and in the event that the Union waives, denies, or terminates membership as to any employee for reasons other than the failure of the employee to tender membership dues as defined in this Agreement, such waiver, denial, or termination of membership shall be deemed to be without prejudice to continued employment.

**Section I0** - Company Responsibilities
It is agreed that the industrial relations concept of "Reserved Management Rights" is hereby incorporated into this Agreement for the purpose of reserving to the Company any and all rights with respect to decision-making which is attendant with ownership and the management of the business not otherwise clearly limited by expressed terms contained in this Agreement and intended by the parties for that exact purpose.

**Section 11** - The work to be performed by each employee and his qualifications and ability to perform that work shall be determined by the Company with application to all provisions of this Agreement. Complaints that the Company has exercised this responsibility unfairly may be taken up through the grievance and arbitration provisions of this Agreement.

4

# ARTICLE VII

## DISCHARGES AND LAYOFFS

Section 1 - No employee with seniority shall be discharged except for just cause. The provisions of this Section shall not apply to personnel reductions for lack of work or to effect economies.

In the event an employee with seniority is discharged without just cause, he shall be reinstated without loss of pay, seniority, or other benefit, subject to the following limitations:

(a) The Union must within two (2) weeks of the discharge file the grievance at the Third Step of the grievance procedure of Article XI or the grievance shall be automatically closed.

(b) If settlement at this level is not reached within one week, the matter must be submitted to arbitration upon the request of the Union, which request must be made in writing to the Company within said week, or the grievance shall be automatically closed.

(c) If the matter is submitted to arbitration, the parties shall select the arbitrator in accordance with the procedure set forth in Article XI, and make a good faith effort to place the matter on the arbitrator's schedule, for decision, all within a period of 30 days from the date of the request for arbitration. This period of 30 days may be extended by mutual agreement.

(d) In case of reinstatement, the total back-pay award allowable shall be limited to the full-time regular pay of the employee for the period he was off the payroll or for the period ending thirty (30) days after the arbitration hearing, whichever period is shorter, less any gross earnings or unemployment compensation received or earned during such period.

The employee shall make every reasonable effort to minimize his damages by seeking and obtaining gainful employment during

24

Case 3:08-cv-02219-SC   Document 14-2   Filed 06/27/2008   Page 40 of 27

the period he is off the payroll, and any back-pay award shall not include any time during which the employee has failed to meet this obligation. If the employee is disabled by sickness or injury during any part of such period, his rights during such period of disability shall be limited to the disability benefits to which he would have been entitled if he had remained on the payroll.

(e) If the procedure above outlined is not followed as to a particular discharge or if the grievance as to such discharge is automatically closed in accordance with such procedure, neither the Union nor the individual employee who was discharged shall have the right to challenge such discharge, or the right to any back-pay award or other relief hereunder.

(f) The arbitrator shall have latitude to modify a discharge to a layoff, for which no compensation shall be awarded.

**Section 2** - The Company agrees that no employee with seniority shall be demoted or discharged for general inefficiency or low standard of work unless he has been warned of his shortcomings in advance of such demotion/discharge to afford him a reasonable opportunity to correct his performance to a level that meets written expectations. This limitation shall not prevent the Company from exercising it's right to discipline any employee for just cause, up to and including termination.

The Company will review the issue of the discharge with the Union in advance of the discharge meeting. The discharge letter will state the specific reason for the termination. The employee, Chief Steward and Business Agent will be provided with a copy of the discharge letter. The employee's previous record of disciplinary action, if applicable, will be included with the letter.

Reprimand letters more than two (2) years old shall not be used in discharge arbitration cases.

**Section 3** - Except in cases mentioned in the preceding Section, an employee whose name is on the seniority list shall be given



written notice on dismissal, stating the reasons for his termination two (2) weeks before the termination of his pay. A copy of any such notice shall be delivered to the Union without delay.

**Section 4** - When the Company, for any reason, elects to reduce the number of employees in any job classification, department or shift and to then either reassign those affected to other work or to effect a layoff from the plant, the following rules shall apply:

(a) Certain jobs requiring special skills, training and/or experience have been identified as (RB) (Restricted Bumping) jobs. Employees holding title to these jobs will be restricted from being bumped by others unless they too possess the full skills and range of abilities to perform that work by virtue of their past experience and work in the same classification(s).

Not withstanding the above, the employee may bump the least senior employee in any Code 09 (RB) classification of their choice, if he/she has the appropriate seniority and qualifications. If there are no employees in a Code 09 classification the least senior employee in a Code 10 (RB) classification of their choice may be bumped, if the employee exercising the option has the appropriate seniority and qualifications. The maximum number of employees that may be bumped in an RB classification shall be twenty percent (20%) of a section/department.

(b) Other than (RB) jobs, seniority, and qualifications, as contained in the job descriptions shall be the primary consideration in classification reductions, layoffs from the plant, and the bumping process.

For maintenance positions that are non-(RB), seniority shall be the primary consideration in classification reductions, layoff from the plant, and the bumping process consistent with the understanding that an employee must possess the necessary ability and qualifications to perform any job to which they elect to move.

26

Employees who are reduced or bumped in a reduction in force will first bump within the employee's own job classification and department. If the employee cannot so bump, then the employee may exercise his/her seniority plant wide, provided that should the employee elect to bump into a classification and department where there is more than one position, he/she may bump only the least senior employee in that classification and department.

(c) Recall from layoff will be in reverse order subject to other applicable provisions governing recall, such as the severance pay provision of Article XIII.

The above provisions serve to outline the broad manner in which general staffing adjustments are to be made. However, should business conditions necessitate a significant reduction in the number of employees, and the "bumping" procedures as outlined above would materially affect the company's ability to produce critical products, the Company and Union agree to meet and confer. The purpose of these discussions would be to develop alternative solutions that would allow the company more flexibility to continue to produce it's critical products. Both parties recognize their commitments to seniority and the qualifications needed to continue producing the critical products.

**Section 5** - Employees who claim a dependency related to drugs or alcohol during the disciplinary procedure will be eligible to participate in rehabilitation in accordance with current practices but may be accountable for their job performance or violation of company rules. Such accountability may subject him/her to discipline up to and including termination.

# ARTICLE XI

## GRIEVANCE PROCEDURE

Should differences arise between the Company and the Union, or any of the employees covered by this Agreement relative to any provision of this Agreement or its application, an earnest effort shall be made to settle such differences in the following manner:

### Section 1 - (Step 1 Oral)

An employee believing he has cause for a grievance shall discuss the matter with his supervisor. At the employee's option, his Union Steward may be requested to participate in such discussion and a meeting will be set for that purpose as soon as it is reasonable and practical to do so. Upon notification by the supervisor, the Steward will be relieved from his regular duties to take part in the discussion of the grievance. Every reasonable effort shall be made to settle problems promptly at this point through discussions.

### Section 2 - (Step 2 Written)

(a) If the matter is not disposed of in the oral first step discussion, the grievance may be reduced to writing on an "Employee Grievance" form. Such written grievance must state with reasonable clarity the nature of the grievance and the basis for the claimed contractual violation and the remedy requested. Written grievances at the Second Step must be signed by the aggrieved employee(s) and presented to the Plant Human Resources Office within ten (10) days from the date the employee(s) should have known about the event giving rise to the claim.

(b) Within five (5) working days from the date of this appeal exclusive of Saturdays, Sundays and holidays, a meeting shall be held to discuss such grievance(s).

(c) This meeting will normally be attended by the Chief Steward, Assistant Chief Steward or a member of the Union Grievance Committee, Department Steward, the aggrieved employee,

39

the department supervisor, the Labor Relations Manager, and one (1) other representative of the Company or their designated representatives.

(d) The Company shall present the Chief Steward and Business Agent with a written disposition within five (5) working days exclusive of Saturdays, Sundays and holidays from the date of the Second Step meeting.

## Section 3 - (Step 3 Pre-Arbitration)

(a) If the Union is not satisfied with the Company's Second Step disposition, it may appeal the grievance to the Third Step.

(b) Such appeal must be in writing to the Manager Labor Relations, or designee, within five (5) days from the date of the Company's Second Step disposition, exclusive of Saturdays, Sundays and holidays.

(c) Within five (5) working days exclusive of Saturdays, Sundays and holidays from the date of written appeal a meeting shall be held to discuss such grievance(s).

(d) This meeting will normally be attended by the Business Agent, Chief Steward, Assistant Chief Steward, up to three (3) additional members of the Union's Grievance Committee, the Department Steward, the aggrieved employee, the department supervisor, the Labor Relations Manager, the Department Head and up to two (2) other representatives of the Company or their designated representatives.

(e) The Union's Grievance Committee shall have the power to withdraw any grievance and the Company's Committee the power to adjust any grievance.

(f) The Company shall give its decision in writing to the Chief Steward and Business Agent within five (5) working days exclusive of Saturdays, Sundays and holidays from the date of the Third Step meeting.

40

## Mediation

Prior to arbitration, either party may request to meet with a mediator. Where mediation is mutually agreed to by the parties, both parties must agree to submit the specific issue(s) and all relevant information and documents. The Company and the Union will share any cost for such mediation equally.

## Section 4 (Step 4 - Arbitration)

If any grievance as defined in Section 1 of the grievance procedure is not satisfactorily settled in the first three (3) steps of the grievance procedure, the Union may within thirty (30) calendar days following the date of the Company's Third Step disposition, or any mutually agreed upon extension, give written notice to the Labor Relations Manager of its desire to arbitrate. Such notice will state the specific issue(s) which are to be arbitrated. The Union may request that the grievance be considered in either the Regular or Expedited Arbitration Procedure, and the grievance shall then be referred to an arbitrator whose decision shall be final and binding upon the parties as follows:

## Regular Arbitration

(a) A neutral Arbitrator shall be chosen by one of the following methods:

  1. Mutual agreement between the parties.

  2. The Company and the Union shall jointly request the American Arbitration Association to submit a panel of seven (7) arbitrators in accordance with its rules and practices. Either the Union or Company may reject this panel of arbitrators and may request another panel of seven arbitrators from the American Arbitration Association. The Arbitrator will be chosen by alternate elimination by one of the parties striking a name followed by the other party until one remains. That person shall be the Arbitrator and the first striking shall be determined by lot.

41

(b) Only grievances on behalf of the Union and its members and claiming relief for violations of specific provisions of this Agreement may be appealed by the Union to arbitration. The Company may submit an issue to arbitration for the purpose of agreement clarification or to seek relief and appropriate remedy for violations of specific provisions of this Agreement.

(c) The arbitration shall be conducted and administered pursuant to the voluntary rules of the American Arbitration Association.

(d) All salaries and expenses as may be incurred by the Arbitrator shall be borne equally by the parties.

(e) Any dispute as to whether or not a grievance or issue is properly before the Arbitrator shall be determined by the Arbitrator.

(f) The Arbitrator shall have no power to amend, add, alter, ignore, change or in any way modify any provision(s) of this Agreement. His decision shall not exceed the expressed terms of this Agreement.

(g) Within these limitations, the Arbitrator may award to either party the remedy and relief he considers appropriate to the circumstances.

## Expedited Arbitration

(a) The Company shall have three (3) calendar days to consider the Union's request for Expedited Arbitration and to either agree to proceed in that manner or to deny that request and divert the grievance to the Regular Arbitration process.

(b) Where expedited arbitration is mutually agreed to by the parties, the following hearing procedures and rules shall apply:

1. The parties (Plant Labor Relations and Local 6 Business Agent) will attempt to agree upon the selection of the Arbitrator. Failure to reach agreement will result in the

42

Arbitrator being appointed by the American Arbitration Association in accordance with its expedited rules and procedures.

2. The hearing will be scheduled no later than thirty (30) days following the date of submission.

3. The hearing shall be informal.

4. No briefs shall be filed or transcripts made.

5. The Company's case shall be presented by a representative designated by the Company, and the Union's case by a representative designated by the local Union.

6. The arbitrator shall have no power to amend, add, alter, ignore, change or modify any provision of the Collective Bargaining Agreement. His decision shall in no way exceed the authority granted him by the expressed provisions contained in this Agreement, but within this limitation the arbitrator shall have the power to award to either party the remedies he considers appropriate to the circumstances.

(c) The arbitrator may issue a bench decision at the hearing but in any event he shall render his decision within fifteen (15) calendar days after the conclusion of the hearing. His decision shall be based on the record developed by the parties before and at the hearing and shall include a brief written explanation of the basis for his conclusion. The arbitrator's decision shall be final and binding on the parties.

(d) Salaries and expenses which may be incurred by the impartial arbitrator and the administrative fees of the American Arbitration Association for coordinating this procedure, shall be equally borne by the Company and the Union.

(e) The American Arbitration Association shall coordinate and fix a mutually convenient time and place for the holding of the

43

hearing, the notice of which must be given at least twenty-four (24) hours in advance. Such notice may be given orally.

(f) Any grievance appealed to this Expedited Labor Arbitration procedure must be confined to issues which do not involve novel problems and which have limited contractual significance or complexities.

(g) Decisions by the arbitrator in this Expedited Labor Arbitration Procedure shall be applicable to the settlement of that grievance only and shall not establish precedent for any subsequent grievance activity nor contractual obligation. These decisions will not be cited nor considered pertinent to the later resolution of any subsequent grievance or arbitration matter.

(h) All other questions pertaining to this procedure shall be governed in accordance with the American Arbitration Association Expedited Arbitration rules.

## Section 5 (Miscellaneous Grievance Procedure Rules)

(a) Settlements reached at either the First or Second Steps of the procedure shall be applicable to only that grievance and shall not in any way be binding upon the parties with respect to precedent setting considerations.

(b) Third Step dispositions shall be final and binding upon the parties unless specifically stated to be made "without prejudice."

(c) The retroactive adjustment of any grievance covering any period prior to its presentation at Step 1 shall be by mutual agreement only.

(d) In the case of an overpayment by the Company of which the employee was unaware, the Company will attempt to work out a mutually acceptable repayment schedule prior to invoking

legal deductions. The repayment schedule will be agreed to in writing by the Company and the employee.

(e) Any grievance not appealed by the Union to the next step of the procedure within the prescribed time limits shall be deemed settled on the basis of the Company's last disposition.

(f) Failure by the Company to meet the time limits prescribed for dispositions shall result in that grievance(s) automatically progressing to the next step of the procedure.

(g) The time limits applicable to each step of the grievance procedure may be extended at any time by mutual agreement.

(h) Witnesses may be called to participate in Second and Third Step discussions for the purpose of furthering the parties understanding of the case at hand.

(i) It is understood that the Union's Business Agent may participate at Second and Third Step meetings.

(j) In cases involving disciplinary layoff, suspension or discharge, the Company shall notify the Chief Steward or his designated representative of the circumstances surrounding such case(s).

(k) Grievances involving discharge may be initiated by the Union directly at the Third Step of the procedure.