United States District Court
For the Northern District of California

1
2
3
4                    UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6
7
                                    )
8    DONNIE JONES,                  )    Case No. 08-2219 SC
                                    )
9              Plaintiff,           )    ORDER GRANTING IN
                                    )    PART AND DENYING IN
10       v.                         )    PART DEFENDANTS'
                                    )    MOTION TO DISMISS
11   BAYER HEALTHCARE LLC, BAYER    )
     CORPORATION, DAVID PANVELLE, and )
12   DOES 1-50, inclusive,          )
                                    )
13             Defendants.          )
                                    )
14   _____)

15
16   **I.    INTRODUCTION**

17        This matter comes before the Court on the Motion to Dismiss

18   and to Strike ("Motion") filed by the defendants Bayer Healthcare

19   LLC, Bayer Corporation (collectively "Bayer") and David Panvelle

20   ("Panvelle," with Bayer, "Defendants").  Docket No. 8.  The

21   plaintiff Donnie Jones ("Plaintiff" or "Jones") submitted an

22   Opposition and Defendants filed a Reply.  Docket Nos. 12, 13.  For

23   the reasons stated herein, Defendants' Motion is GRANTED IN PART

24   and DENIED IN PART.

25
26   **II.   BACKGROUND**

27        Plaintiff filed suit in state court alleging wrongful

28   termination in breach of contract, wrongful termination in

violation of public policy, negligence, and fraud.  Notice of
Removal, Docket No. 1, Ex. A, Compl.  Defendants removed the
action to this Court on the basis of preemption under the Labor
Management Relations Act ("LMRA"), 29 U.S.C. § 185, and, in the
alternative, diversity of citizenship.  Notice of Removal ¶¶ 3-8.
Plaintiff did not challenge the removal.

According to Plaintiff's Complaint, he was employed by Bayer
from 1998 until September 5, 2007, at which point he was
terminated.  Compl. ¶ 6.  Up until near the time he was fired, he
apparently received excellent annual reviews and reached the
positions of laboratory technician and Sub Supervisor.  Id. ¶¶ 6,
8.  At the time of his termination, he was a member of the
International Longshore and Warehouse Union ("ILWU"), Local 6 (the
"Union").  Id. ¶ 11.  Furthermore, according to Plaintiff, his
employment with Bayer was governed by a written contract whereby
Plaintiff could only be terminated for "just cause."  Id. ¶ 7.

On July 11, 2007, Plaintiff was disciplined by Bayer for "a
purported violation of one of Bayer's procedural policies in
relation to delivery of a Bayer product sample."  Id. ¶ 9.
According to Plaintiff, this violation was actually committed by
Plaintiff's immediate supervisor, Panvelle.  Id.  Plaintiff
alleges that Panvelle then shifted the blame to Plaintiff in an
effort to escape any recrimination.  Id.  As a result of this
violation, Plaintiff was suspended for three days, was demoted
from the position of Sub Supervisor, and received a pay reduction.
Id.

On August 11, 2007, just one week after Plaintiff returned to

1   work following his suspension, Panvelle alleged that Plaintiff

2   committed another procedural violation.  Id. ¶ 10.  Although

3   Plaintiff again denied any wrongdoing, he was nonetheless fired.

4   Id.

5       Plaintiff subsequently filed a grievance with his Union.  Id.

6   ¶ 11.  On November 14, 2007, the Union advised Plaintiff that,

7   although it believed Plaintiff's termination was not justified, it

8   was nonetheless unable to process the grievance further.  Id.

9   Plaintiff subsequently filed the present action.

10

11  **III.  LEGAL STANDARD**

12      A Federal Rule of Civil Procedure 12(b)(6) motion to dismiss

13  tests the sufficiency of the complaint.  Dismissal pursuant to

14  Rule 12(b)(6) is appropriate if the plaintiff is unable to

15  articulate "enough facts to state a claim to relief that is

16  plausible on its face."  Bell Atl. Corp. v. Twombly, 127 S. Ct.

17  1955, 1974 (2007).  For purposes of such a motion, the complaint

18  is construed in the light most favorable to the plaintiff and all

19  properly pleaded factual allegations are taken as true.  Jenkins

20  v. McKeithen, 395 U.S. 411, 421 (1969); Everest & Jennings, Inc.

21  v. Am. Motorists Ins. Co., 23 F.3d 226, 228 (9th Cir. 1994).  All

22  reasonable inferences are to be drawn in favor of the plaintiff.

23  Id.  Unreasonable inferences or conclusory legal allegations cast

24  in the form of factual allegations, however, are insufficient to

25  defeat a motion to dismiss.  W. Mining Council v. Watt, 643 F.2d

26  618, 624 (9th Cir. 1981).

27

28                                   3

**United States District Court**
For the Northern District of California

IV.  **DISCUSSION**

A.  **Federal Jurisdiction and Preemption**

"Upon removal, the district court must determine whether it has subject matter jurisdiction . . . ." Dahl v. Rosenfeld, 316 F.3d 1074, 1076 (9th Cir. 2003).  "Federal jurisdiction typically exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Valles v. Ivy Hill Corp., 410 F.3d 1071, 1075 (9th Cir. 2005).  "An exception to the general rule exists, however, when the preemptive force of a [federal] statute is so strong that it completely preempts an area of state law."  Id. (internal quotation marks and alterations omitted).  "In such circumstances, federal law displaces a plaintiff's state-law claim, no matter how carefully pleaded." Id.  "The complete preemption exception . . . is applied primarily under § 301 of the LMRA [Labor Management Relations Act, 28 U.S.C. § 185(a)]."  Id.  "Although the text of § 301 contains only a jurisdictional grant, the Supreme Court has interpreted it to compel the complete preemption of state law claims brought to enforce collective bargaining agreements."  Id.  In addition, "the Supreme Court has expanded § 301 preemption to include cases the resolution of which 'is substantially dependent upon analysis of the terms of [a collective bargaining agreement].'"  Id. (citing Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220 (1985) (alterations in original)).

"Nonetheless, the Supreme Court has repeatedly admonished that § 301 preemption is not designed to trump substantive and mandatory state law regulation of the employee-employer

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

relationship . . . ." Id. at 1076 (internal quotation marks omitted). "In particular, the Court has sought to preserve state authority in areas involving minimum labor standards." Id. "Thus, in order for complete preemption to apply, the need to interpret the CBA must inhere in the nature of the plaintiff's claim. If the claim is plainly based on state law, § 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense." Id. (internal quotation marks omitted).

In the present case, Plaintiff's first cause of action is for wrongful termination in breach of contract. Compl. ¶ 13. Although Plaintiff avoids mention of any collective bargaining agreement in his Complaint, he concedes that at the time of his termination he was a member of the ILWU Local 6 union and that his employment was governed by a written contract. Compl. ¶¶ 7, 11. As a preliminary matter, therefore, the Court addresses the issue of the purported collective bargaining agreement ("CBA") that Defendants assert existed between Bayer and the Union, the terms of which allegedly covered Plaintiff's employment with Bayer.

Bayer has attached copies of the CBA to a declaration in support of removal and to a request for judicial notice. See Russey Decl.,[1] Docket No. 5, Ex. A; Request for Judicial Notice ("RJN"), Docket No. 14. The CBA states, on its face, that it is an agreement between Bayer and the ILWU Local 6, effective

---

[1]  Bob Russey is the Labor Relations Manager at the Bayer Berkeley site where Plaintiff formerly worked. Russey Decl., Docket No. 9, ¶ 2.

**United States District Court**
For the Northern District of California

1    September 7, 2005, through August 21, 2008.   <u>Id.</u>

2        Plaintiff did not attach a copy of the CBA to his Complaint.

3    Plaintiff therefore argues that the Court cannot consider the CBA

4    in ruling on Defendants' Motion.  Opp'n at 6.  Specifically,

5    although he acknowledges the existence of the CBA at the time he

6    was terminated, Plaintiff argues that because "Defendants present

7    no evidence that the CBA was ever given to Plaintiff, or that he

8    was ever a party to the agreement, and the agreement facially

9    states it was only between Bayer and the Union, no aspect of the

10    CBA should be considered by the Court in ruling on Defendants'

11    motion to dismiss."   <u>Id.</u>

12        "When ruling on a 12(b)(6) motion to dismiss, if a district

13    court considers evidence outside the pleadings, it must normally

14    convert the 12(b)(6) motion into a Rule 56 motion for summary

15    judgment, and it must give the nonmoving party an opportunity to

16    respond."  <u>United States v. Ritchie</u>, 342 F.3d 903, 907 (9th Cir.

17    2003) (citing Fed. R. Civ. P. 12(b)).  "A court may, however,

18    consider certain materials--documents attached to the complaint,

19    documents incorporated by reference in the complaint, or matters

20    of judicial notice--without converting the motion to dismiss into

21    a motion for summary judgment."  <u>Id.</u> at 908.  Thus, "[e]ven if a

22    document is not attached to a complaint, it may be incorporated by

23    reference into a complaint if the plaintiff refers extensively to

24    the document or the document forms the basis of the plaintiff's

25    claim."  <u>Id.</u>  "The defendant may offer such a document, and the

26    district court may treat such a document as part of the complaint,

27    and thus may assume that its contents are true for purposes of a

28                                6

**United States District Court**
For the Northern District of California

1    motion to dismiss under Rule 12(b)(6)."  <u>Id.</u>  This "incorporation

2    by reference doctrine" has been extended "to situations in which

3    the plaintiff's claim depends on the contents of a document, the

4    defendant attaches the document to its motion to dismiss, and the

5    parties do not dispute the authenticity of the document, even

6    though the plaintiff does not explicitly allege the contents of

7    that document in the complaint."  <u>Knievel v. ESPN</u>, 393 F.3d 1068,

8    1076 (9th Cir. 2005).

9         In the present case, the incorporation by reference doctrine

10   permits the Court to consider the CBA.  Although Plaintiff does

11   not specifically reference the CBA by name in his Complaint, he

12   nonetheless refers to a written contract that governed his

13   employment with Bayer; states that the contract only provided

14   termination for cause; concedes that he was a Union member at the

15   time he was terminated; admits that the Union initiated, at his

16   behest, a grievance on behalf of his termination; and acknowledges

17   that the Union later withdrew this grievance after determining

18   that its grievance policies and procedures did not extend to the

19   matters implicated by the firing.  <u>See</u> Compl. ¶¶ 7-11.

20        Moreover, although Plaintiff raises a host of arguments why

21   the Court should not consider the CBA, Plaintiff does not contest

22   the attached CBA's authenticity.  Rather, Plaintiff argues that he

23   was not a party to the CBA, that he was not aware that it existed

24   and that he never consented to be bound by a CBA.  <u>See</u> Opp'n.

25   These arguments, however, are contradicted by the facts that

26   Plaintiff was a Union member and that he does not allege that any

27   other individual contract existed between him and Bayer.  Thus,

28                                    7

according to Plaintiff's Complaint, the only written contract that could have existed between him and Bayer at the time of his termination was the CBA.

Plaintiff's attempt to plead around the CBA appears to be an example of "artful pleading." "Collective bargaining agreements customarily provide for grievance and arbitration procedures, and unless an employee can show that he was not fairly represented by his union, grievance and arbitration is the employee's exclusive remedy for a breach of the agreement." Olguin v. Inspiration Consol. Copper Co., 740 F.2d 1468, 1472 (9th Cir. 1984) (overruled on other grounds by Lueck, 471 U.S. at 220. "To escape this exclusivity employees frequently attempt to avoid federal law by basing their complaint on state law, disclaiming any reliance on the provisions of the collective bargaining agreement." Id. "Nevertheless, many of these cases are in fact section 301 suits and as such are governed by federal law." Id. In such cases the 'artful pleading' doctrine requires that the state law complaint be recharacterized as one arising under the collective bargaining agreement." Id.

For the reasons stated above, the Court concludes that federal jurisdiction exists. Furthermore, the Court concludes that consideration of the CBA is appropriate in evaluating Defendants' Motion to Dismiss.

**B.   Merits of Motion**

1.   Wrongful Termination In Breach of Contract

As should be clear from the preceding discussion, Plaintiff's first cause of action for wrongful termination in breach of

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

contract is premised on an alleged breach of the CBA.  Because
this claim requires the Court to interpret provisions of the CBA,
such as those regarding termination for cause, the claim is
preempted by the LMRA.  See <u>Lueck</u>, 471 U.S. at 220-21 (stating
"when resolution of a state-law claim is substantially dependent
upon analysis of the terms of an agreement made between the
parties in a labor contract, that claim must either be treated as
a § 301 claim . . . or dismissed as pre-empted by federal labor-
contract law"); <u>see also</u> <u>Young v. Anthony's Fish Grottos, Inc.</u>,
830 F.2d 993, 997 (9th Cir. 1987) (stating that in an action for
breach of contract, where the plaintiff's "complaint [did] not
reveal that her employment [was] governed by a collective
bargaining agreement," the "district court properly looked beyond
the face of the complaint to determine whether the contract claim
was in fact a section 301 claim for breach of a collective
bargaining agreement 'artfully pleaded' to avoid federal
jurisdiction").

        To the extent that this claim is asserted against Panvelle,
it fails as a matter of law, as Plaintiff has failed to allege the
existence of any contract between himself and Panvelle, his
supervisor.

                2.   <u>Wrongful Termination in Violation of Public Policy</u>
        Plaintiff's second cause of action alleges wrongful
termination in violation of public policy.  Specifically,
Plaintiff alleges that his termination "by way of trickery and
entrapment violates long-established public policy, and
constitutes a wrongful termination in violation of public policy."

9

1    Compl. ¶ 17.

2        In analyzing whether this state-law right is preempted by the

3    LMRA, the Court must focus on whether the tort action for wrongful

4    termination in violation of public policy "as applied here confers

5    nonnegotiable state-law rights on employers or employees

6    independent of any right established by contract, or, instead,

7    whether evaluation of the tort claim is inextricably intertwined

8    with consideration of the terms of the labor contract." <u>Lueck</u>,

9    471 U.S. at 213. "If the state tort law purports to define the

10   meaning of the contract relationship, that law is pre-empted."

11   <u>Id.</u>

12       "The key to determining the scope of preemption is not how

13   the complaint is cast, but whether the claims can be resolved only

14   by referring to the terms of the collective bargaining agreement."

15   <u>Young</u>, 830 F.2d at 999. Moreover, "[s]ection 301 does not preempt

16   every public policy claim brought by an employee covered by a

17   collective bargaining agreement." <u>Id.</u> at 1001. Thus, "[w]here

18   the conduct underlying a plaintiff's claims gives rise to causes

19   of action regardless of the existence of a CBA, those claims are

20   not preempted." <u>Emrick v. Fujitec Am., Inc.</u>, No. 04-4514, 2005 WL

21   162235, at *3 (N.D. Cal. Jan. 24, 2005). Accordingly, claims

22   based on genuine state public policies are not preempted, as they

23   further state interests "in protecting the public transcending the

24   employment relationship." <u>Young</u>, 830 F.2d at 1001; <u>see also id.</u>

25   at 1001-02 (collecting cases); <u>Emrick</u>, 2005 WL 162235 at *4

26   (holding that because the plaintiff's "wrongful termination claim

27   rest[ed] upon California Government Code section 12960 and

28                                    10

California Labor section 1102.5," it existed independently of the CBA and was therefore not preempted). Where, however, a plaintiff "fails to identify any state statute or other relevant public policy," a claim alleging wrongful termination in violation of public policy is preempted. <u>Young</u>, 830 F.2d at 1002.

In the present case, the purported public policy identified by Plaintiff is one against "trickery and entrapment." Compl. ¶ 17. Although trickery and entrapment are, needless to say, antithetical to the functioning of a just and honest society, the Court is aware of no stated public policy in California against them. <u>See</u> <u>Gantt v. Sentry Ins.</u>, 1 Cal. 4th 1083, 1095 (1992) (abrogated on other grounds by <u>Green v. Ralee Eng'g Co.</u>, 19 Cal. 4th 66, 80 n.6 (1998) (stating that "courts in wrongful discharge actions may not declare public policy without a basis in either constitutional or statutory provisions"). For these reasons, Plaintiff's wrongful termination claim against Bayer is preempted.

To the extent that this claim is alleged against Panvelle, it is precluded as a matter of law. <u>See</u> <u>Reno v. Baird</u>, 18 Cal. 4th 640, 664 (1998) (holding that plaintiff may not sue her supervisor "individually for wrongful discharge in violation of public policy").

       3.  <u>Negligence</u>

Because Plaintiff's third cause of action for negligence is difficult to understand, the Court repeats it here.

> Third Cause of Action for Negligence
> Panvelle and Bayer were bound by California Civil Code section 1708, without contract, to abstain from injuring Plaintiff, or infringing upon

        any of his rights.
            Panvelle breached his duty owed
Plaintiff by tricking and entrapping
Plaintiff into the alleged procedural
violation incident of July 11, 2007[,]
described above.
            Panvelle breached his duty owed
Plaintiff by terminating Plaintiff based
on his above-described instance of
trickery and entrapment.
            Bayer breached its duty owed
Plaintiff by failing to properly
investigate the matter of Panvelle's
entrapment of Plaintiff and by ratifying
Plaintiff's wrongful termination of
employment. . . .

Compl. ¶¶ 19-22.

"The elements of a negligence cause of action are (1) the existence of a duty to exercise due care, (2) breach of that duty, (3) causation, and (4) damages." Cohen v. NuVasive, Inc., 164 Cal. App. 4th 868, (Ct. App. 2008).

For the following reasons, Plaintiff's negligence claim against Bayer is preempted. The CBA states that employee complaints that Bayer "unfairly exercised its responsibility to determine an employee's ability to perform work" are to be taken up through the grievance process. CBA Art. I, § 11. "If the state tort law purports to define the meaning of the contract relationship, that law is pre-empted." Lueck, 471 U.S. at 213. Because Plaintiff's negligence claim against Bayer attempts to do just that, it is preempted by the LMRA. See Ward v. Circus Circus Casinos, Inc., 473 F.3d 994, 999 (9th Cir. 2007) (stating "[s]tate law negligence claims are preempted if the duty relied on is created by a collective bargaining agreement and without existence independent of the agreement") (internal quotation marks omitted).

United States District Court

For the Northern District of California

1    With respect to Plaintiff's claim for negligence against

2  Panvelle, Plaintiff alleges that Panvelle breached a duty to

3  Plaintiff by tricking and entrapping him into making a procedural

4  mistake and then by firing him for the same mistake.  Compl. ¶¶

5  19-24.  As an initial matter, Defendants argue that any claim by

6  Plaintiff against Panvelle is barred because individual

7  supervisors cannot be sued in connection with personnel actions.

8  In support of this argument, Defendants cite a number of cases,

9  including Sheppard v. Freeman, 67 Cal. App. 4th 339 (Ct. App.

10 1998).  The court in Sheppard stated that "an employee or former

11 employee cannot sue individual employees based on their conduct,

12 including acts or words, relating to personnel actions."  Id. at

13 347.  The so-called "co-employee privilege" established by

14 Sheppard, however, has been criticized by several federal district

15 courts in California.  See, e.g., Smith v. SEIU United Healthcare

16 Workers West, No. 05-2877, 2006 WL 2038209, at *12-13 (N.D. Cal.

17 July 19, 2007); Graw v. Los Angeles Metro. Transp. Auth., 52 F.

18 Supp. 2d 1152, 1155-60 (C.D. Cal. 1999) (stating "[i]f manager's

19 acts were not done to benefit the company, the manager should not

20 . . . enjoy the privilege to interfere with the economic

21 relationship between the employee and the employer").  These cases

22 are in accord with Ninth Circuit caselaw dealing with a manager's

23 privilege regarding personnel decisions.  See McCabe v. Gen. Foods

24 Corp., 811 F.2d 1336, 1339 (9th Cir. 1987) (applying privilege "if

25 an advisor is motivated in part by a desire to benefit his

26 principal") (internal quotation marks omitted); Los Angeles

27 Airways, Inc. v. Davis, 687 F.2d 321, 328 (9th Cir. 1982) (same).

28

United States District Court

For the Northern District of California

In the present case, Plaintiff has alleged that Panvelle acted to save his own skin, rather than to benefit Bayer. This allegation alone removes Plaintiff's claim from any employee/manager privilege that may exist.

Defendants' arguments regarding LMRA preemption of this claim as asserted against Panvelle are also unpersuasive. It is undisputed that Plaintiff was fired for breaching Bayer's procedures on two separate occasions. Plaintiff alleges that Panvelle breached his duty to Plaintiff by allowing him to believe that it was proper to sign a checklist of a Bayer product sample before actually delivering the sample. See Compl. ¶¶ 9, 25, 26. Resolution of this issue will turn on whether Panvelle's actions were negligent, not on any interpretation of the CBA. In other words, this issue will depend on whether Panvelle's alleged act of asking Plaintiff to undertake a course of action that was in violation of Bayer's procedures was negligent. This inquiry will center on Panvelle's obligations as Plaintiff's supervisor, and not on any provisions of the CBA. For these reasons, Defendants' Motion to Dismiss Plaintiff's third cause of action as alleged against Panvelle is DENIED.[2]

Plaintiff also seeks punitive damages in his negligence claim. As "[s]imple negligence cannot support an award of punitive damages," Jackson v. Johnson, 5 Cal. App. 4th 1350, 1354 (Ct. App. 1992), Plaintiff's request for punitive damages under

---

[2]  Whether Plaintiff's allegations also give rise to a claim against Panvelle for intentional interference with contract and business relations, Sprewell v. Golden State Warriors, 266 F.3d 979, 990-91 (9th Cir. 2001), is an issue not before the Court.

1    his negligence claim is STRICKEN.

2         4.   Fraud

3         Plaintiff's fourth cause of action alleges fraud against both

4    Panvelle and Bayer.  In order to establish a cause of action for

5    fraud, a plaintiff must allege the following elements:

6    misrepresentation, knowledge of falsity, intent to induce

7    reliance, justifiable reliance, and resulting damages.  Conrad v.

8    Bank of Am., 45 Cal. App. 4th 133, 156 (Ct. App. 1996).

9         Whether a plaintiff's "fraud claims are preempted depends on

10   whether resolution of the claims would require an interpretation

11   of the terms of the CBA."  Aquilera v. Pirelli Armstrong Tire

12   Corp., 223 F.3d 1010, 1016 (9th Cir. 2000).  In the present

13   action, Plaintiff alleges that Panvelle fraudulently deceived him

14   into believing it was proper to sign a checklist of a Bayer

15   product sample before actually delivering the sample.  See Compl.

16   ¶¶ 9, 25, 26.  It is undisputed that what Plaintiff actually did

17   was contrary to Bayer policy.  The issue, therefore, is whether

18   Panvelle deceived him into believing that what Plaintiff did was

19   acceptable.  Contrary to Defendants' arguments, such an allegation

20   would not require an interpretation of the CBA's 'termination for

21   just cause' provision.  Rather, Plaintiff's fraud claim presents a

22   fairly straightforward factual question of whether Panvelle

23   induced Plaintiff to breach Bayer's operating procedures.  For

24   these reasons, the Court concludes that Plaintiff's fraud

25   allegation against Panvelle is not preempted and Defendants'

26   Motion to Dismiss this claim as asserted against Panvelle is

27   DENIED.

28
                                15

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    In regards to Plaintiff's allegation of fraud against Bayer,

2    not only has Plaintiff failed to allege sufficient factual

3    allegations to state a claim under Rule 12(b)(6), but Plaintiff

4    has also failed to satisfy the heightened pleading standard of

5    Rule 9(b), which states: "In allegations of fraud or mistake, a

6    party must state with particularity the circumstances constituting

7    fraud or mistake." Fed. R. Civ. P. 9(b). Courts have interpreted

8    this rule as requiring that fraud claims include the "who, what,

9    when, where, and how" of the alleged misconduct. <u>See</u>, <u>e.g.</u>,

10   <u>Cooper v. Pickett</u>, 137 F.3d 616, 627 (9th Cir. 1997). Such claims

11   must be "specific enough to give defendants notice of the

12   particular misconduct . . . so that they can defend against the

13   charge and not just deny that they have done anything wrong."

14   <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1106 (9th Cir. 2003)

15   (internal quotation marks omitted, alterations in original).

16   Plaintiff alleges that Bayer is guilty of fraud because it

17   "ultimately learned of the trickery and entrapment of Plaintiff .

18   . . but ratified the wrongful termination of Plaintiff . . . ."

19   <u>Id.</u> ¶ 28. These allegations against Bayer fall far short of the

20   pleading requirement of Rule 9(b) and fail to allege the necessary

21   elements of fraud. <u>See Conrad</u>, 45 Cal. App. 4th at 156.

22   "As with Rule 12(b)(6) dismissals, dismissals for failure to

23   comply with Rule 9(b) should ordinarily be without prejudice."

24   <u>Vess</u>, 317 F.3d at 1108. Plaintiff's claim for fraud against Bayer

25   is therefore DISMISSED without prejudice. Plaintiff may amend

26

27

28

1    within 30 days.[3]

2

3    **V.    FAILURE TO EXHAUST**

4        Finally, Defendants assert that Plaintiff failed to exhaust

5    the exclusive grievance and arbitration procedure created by the

6    CBA.  Thus, according to Defendants, Plaintiff is barred from

7    bringing the present action.  See, e.g., Truex v. Garret

8    Freightlines, Inc., 784 F.2d 1347, 1353 (9th Cir. 1985) (stating a

9    "bargaining unit employee may not bring an action for breach of a

10   collective bargaining agreement unless he has exhausted the

11   contracted grievance procedures"); id. (holding "[t]his rule

12   prevents employees from sidestepping available grievance

13   procedures when a dispute involves an interpretation of the

14   collective bargaining agreement").

15       Defendants' argument fails for two reasons.  First, as

16   discussed above, those claims that require interpretation of the

17   CBA are preempted.  Only those claims that are premised on

18   independent state law grounds survive, and these claims, because

19   they are not governed by the CBA, are likewise outside of the

20   CBA's exclusive arbitration provision.  Second, Plaintiff has

21   alleged that he pursued the grievance procedures as far as he

22   could and that he initiated this suit only after being told by the

23   Union that it was no longer able to pursue his claims.  Thus,

24   construing the allegations in the Complaint in a light most

25

26       [3]  Because LMRA preemption of a fraud claim against Bayer will
     necessarily depend on Plaintiff's specific allegations, such an
27   analysis would be premature at this stage.

28

favorable to Plaintiff and assuming that all properly pleaded factual allegations are true, <u>Jenkins</u>, 395 U.S. at 421, the Court cannot conclude at this time that Plaintiff has failed to exhaust the exclusive remedies under the CBA.

**VI.   <u>CONCLUSION</u>**

For the reasons stated above, Plaintiff's first and second causes of action are preempted under the LMRA and are therefore DISMISSED WITH PREJUDICE.  Plaintiff's third cause of action for negligence is preempted as alleged against Bayer and is DISMISSED WITH PREJUDICE.  As against Panvelle, Plaintiff's claim for negligence may proceed.  Plaintiff's fourth cause of action as alleged against Bayer is DISMISSED without prejudice and may be amended within 30 days.  As against Panvelle, Plaintiff's fourth cause of action may proceed.

IT IS SO ORDERED.

Dated: August 12, 2008

_____

UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California

18